UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RALPH M. WATSON, an individual,<br><br>    Plaintiff,<br><br> -against-<br><br>NY DOE 1, an individual; NY DOE 2, an individual; NY DOE 3, an individual; NY DOE 4, an individual; ILLINOIS DOE 1, an individual; DOE COMPANY, an unknown business entity; and DOES 1 through 50, whose true names and capacities are unknown,<br><br>    Defendants. | Case No. 1:19-cv-533<br><br>**COMPLAINT FOR DEFAMATION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; CIVIL CONSPIRACY; TORTIOUS INTERFERENCE WITH CONTRACT; TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; AND NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br><br>**DEMAND FOR JURY TRIAL** |

## Jurisdiction

1.  This court has jurisdiction under 28 U.S.C. § 1332 because of diversity of citizenship and an amount in controversy greater than $75,000.

## Venue

2.  Venue is proper pursuant to 28 U.S.C. § 1391 because the events giving rise to this complaint happened in this district.

## Parties

3.  Plaintiff RALPH M. WATSON ("Plaintiff" or "Watson") is a citizen of the State of California.

4.  Defendant NY DOE 1 is an individual and a citizen of the State of New York. Plaintiff is aware of the real identity of NY DOE 1, but is suing under an anonymous name to protect the privacy of the individual until a suitable protective order is reached by the parties and approved by the Court. Defendant will be served by his or her real name, with the proof of service being redacted and/or filed under seal.

5. Defendant NY DOE 2 is an individual and a citizen of the State of New York. Plaintiff is aware of the real identity of NY DOE 2, but is suing under an anonymous name to protect the privacy of the individual until a suitable protective order is reached by the parties and approved by the Court. This Defendant will be served by his or her real name, with the proof of service being redacted and/or filed under seal.

6. Defendant NY DOE 3 is an individual and a citizen of the State of New York. Plaintiff is aware of the real identity of NY DOE 3, but is suing under an anonymous name to protect the privacy of the individual until a suitable protective order is reached by the parties and approved by the Court. Defendant will be served by his or her real name, with the proof of service being redacted and/or filed under seal.

7. Defendant NY DOE 4 is an individual and a citizen of the State of New York. Plaintiff is aware of the real identity of NY DOE 4, but is suing under an anonymous name to protect the privacy of the individual until a suitable protective order is reached by the parties and approved by the Court. This Defendant will be served by his or her real name, with the proof of service being redacted and/or filed under seal.

8. Defendant ILLINOIS DOE 1 is an individual and a citizen of the State of Illinois with sufficient minimum contacts to the State of New York as a result of his or her involvement in the events giving rise to this Complaint. Plaintiff is aware of the real identity of ILLINOIS DOE 1, but is suing under an anonymous name to protect the privacy of the individual until a suitable protective order is reached by the parties and approved by the Court. This Defendant will be served by his or her real name, with the proof of service being redacted and/or filed under seal.

9. Plaintiff is informed and believes that DOE COMPANY is a Delaware business entity of unknown organization with its principal place of business being in New York. Plaintiff is further informed and believes DOE COMPANY is not a resident of California.

10. Defendant DOES 1 through 50, inclusive, are sued herein under fictitious names, their true names and capacities being unknown to Plaintiff at this time. DOE Defendants are

necessary because all Defendants have been actively hiding their identities, and Plaintiff will need discovery to identify the individuals that directly engaged in or assisted in the wrongful acts alleged herein. None of DOES 1 through 50 are citizens of the State of California. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged and that such Defendants proximately caused Plaintiff's damages. NY DOE 1, NY DOE 2, NY DOE 3, NY DOE 4, ILLINOIS DOE 1, DOE COMPANY and DOES 1 through 50 are collectively referred to as "Defendants."

## Statement of Facts

11. On January 18, 2018, Plaintiff was the Chief Creative Officer of the advertising agency Crispin, Porter & Bogusky LLC ("CP+B") in Boulder, Colorado. He had been in this position since late April of 2014 and had been an exemplary performer at all times.

12. Plaintiff is informed and believes that Diet Madison Avenue ("DMA") is a collective of at least seventeen (17) anonymous individual Defendants, who were responsible for publishing written and visual content on various social media platforms, including the Instagram account Diet Madison Avenue (@*dietmadisonave*), with the stated purpose of "exposing sexual harassment & discrimination in ad agencies since Oct 2017, cuz HR won't. Stories researched and confidential." On or around January of 2018, the DMA Instagram account had approximately 7,500 followers, and at their peak in May of 2018 had over 25,000 followers.

13. Plaintiff is informed and believes that at least an additional forty-two individuals have provided assistance to Diet Madison Avenue. All of the individual Defendants running and/or assisting Diet Madison Avenue are doing so anonymously and are actively hiding their identities.

14. In early January of 2018, the DMA Instagram account published a list of men on the site that it alleged, without any supporting evidence, were sexual harassers. This list included the names of thirteen (13) men working in the advertising industry. Plaintiff was not included on this list at this time.

15. However, on or around January 19, 2018, the collective published a series of knowingly false statements on their DMA Instagram account that wrongfully accused Plaintiff of being a sexual predator.

16. Specifically, the DMA collective, using Instagram Stories (a feature that disappears off the site after 24 hours), published the following false and unprivileged statements to their approximately 7,500 followers (at that time) about Plaintiff: "Ralph Watson. The women that you targeted & groomed (like all predators do), because they were young & just starting out their careers . . . the women that you assumed would stay quiet are stronger than you ever gave them credit for. And their voices have created a timeline. Going back years. Corroborated stories. Spanning across multiple agencies. And even continents."

17. Almost immediately after these false statements were published, Plaintiff was contacted by multiple colleagues and friends, asking whether he was aware of the DMA Instagram postings, and that they were being widely shared and discussed throughout the advertising industry.

18. Obviously concerned about the seriousness of the inflammatory and false statements, Plaintiff immediately contacted CP+B's Human Resources Director, to determine what the source of the false rumors could be. He was assured that CP+B had received no credible complaints and/or evidence of sexual harassment against Plaintiff at that time.

19. Because of the uproar caused by the Diet Madison Avenue allegations, CP+B held a Town Hall meeting on or around January 25, 2018, to both address the toxic social media environment and to discuss the agency's point of view and response thereto.

20. At that Town Hall meeting, CP+B management stated that they would not fire anyone over rumors, and that they were unaware of any credible and/or substantiated claims of any sexual harassment at CP+B at that time.

21. On the same day as CP+B's Town Hall (January 25, 2018), DMA published (via Instagram Stories) a further highly inflammatory and false statement of fact concerning Plaintiff to their approximately 7500 followers: "Apparently during the @cpbgroup townhall today, they

claimed to support the Me Too campaign . . . Are they letting go of Ralph AKA the unrepentant serial predator?"

22. On or around the same date (January 25, 2018), the collective published another post accusing the CP+B leadership group of engaging in a cover-up by not immediately firing Plaintiff.

23. On February 2, 2018, and as a direct result of Defendants' false statements, pressure and interference, Plaintiff was terminated from CP+B "for cause," despite being an exemplary performer during his entire tenure with the agency.

24. Shortly thereafter, Plaintiff's name, crossed out in red to indicate that he had been fired, was added to a published spreadsheet that included 16 other well-known advertising industry males that DMA had targeted as sexual harassers.

25. All of the Defendants' statements concerning Plaintiff are <u>patently false</u> because Plaintiff has never sexually harassed anyone and/or created a hostile work environment while employed with CP+B, or at any other advertising agency or other employer.

26. Further, other than his wrongful termination from CP+B, Plaintiff has never been disciplined for any type of improper behavior, including sexual harassment and/or for creating a hostile work environment, at any employer at any time, has never been involved in any settlement (confidential or otherwise) of any of these types of claims.

27. In fact, Plaintiff has been a strong supporter of equal rights in the workplace and has a long history of promoting women to positions of leadership based on their merit alone.

28. Defendants intentionally, recklessly and maliciously published the false statements against Plaintiff without any credible or substantiated evidence that they were true. Further, no one from Diet Madison Avenue has provided even a scintilla of evidence supporting any allegations of harassment or other sexual misconduct, because no such evidence exists. In addition, he has never interviewed as part of any investigation, has never seen any investigation file against him, and has not been provided with any admissible evidence to support a "for cause" termination.

29. Evidence that there was no cause for his termination is provided by the fact that a high-level executive at CP+B actively recruited Plaintiff to work with CP+B on various projects <u>after</u> he was wrongfully terminated "for cause". This work only fell through after Plaintiff sued CP+B in the United States District Court, District of Colorado on June 29, 2018, Case No. 1:18-cv-1658.

30. Defendants' false statements are defamatory per se because they have falsely accused Plaintiff of repeated acts of moral turpitude that have destroyed his reputation, caused him to suffer shame, and have wholly interfered with his ability to perform his trade, profession and/or occupation.

31. On May 22, 2018, Plaintiff sued Diet Madison Avenue and some of the anonymous individuals that he is informed and believe are citizens of the State of California, in Los Angeles Superior Court, Case No. BC 707278.

32. On or around May 24, 2018, the DMA Instagram account posted a further inflammatory and retaliatory statement falsely claiming that Plaintiff allegedly "raped" some anonymous individual: "Gloves are off. I don't care if the industry knows he raped me." The statement is <u>categorically false</u> because Plaintiff has never sexually harassed or sexually assaulted any person, at any time, ever. The apparent "message" of the retaliatory post was to threaten and intimidate Plaintiff from pursuing his just-filed litigation.

33. Almost immediately after the above defamatory rape allegation was posted, Plaintiff was again contacted by numerous friends and colleagues, who informed him that they understood the false allegations to be about him.

<u>Claim I</u>

**Defamation**

**(By Plaintiff Against All Defendants)**

34. The allegations of paragraphs 1 through 33 are re-alleged and incorporated herein by reference.

35. As set forth above, Defendants published highly inflammatory false statements of fact about Plaintiff on at least three separate dates on or around January 19th, January 25th, and May 24th of 2018, which falsely and maliciously accused Plaintiff of being an "unrepentant sexual predator" and

"rapist". In addition, Defendants included Plaintiff's on a "hit list" of men in the advertising industry that it claimed were sexual harassers.

36. More specifically, on or around January 19, 2018, Defendants published the following false and unprivileged statements of fact to their approximately 7,500 followers (at the time) about Plaintiff: "Ralph Watson. The women that you targeted & groomed (like all predators do), because they were young & just starting out their careers . . . the women that you assumed would stay quiet are stronger than you ever gave them credit for.  And their voices have created a timeline. Going back years.  Corroborated stories.  Spanning across multiple agencies.  And even continents."

37. On or around January 25, on the same day as CP+B's Town Hall meeting, Defendants published a further highly inflammatory, false and unprivileged statement of fact in connection with Plaintiff: "Apparently during the @cpbgroup townhall today, they claimed to support the Me Too campaign . . . Are they letting go of Ralph AKA the unrepentant serial predator?"

38. On or around May 24, 2018, the Defendants posted a further inflammatory and retaliatory statement that appears to be falsely claiming that Plaintiff "raped" some anonymous individual: "Gloves are off. I don't care if the industry knows he raped me."

39. The above statements, and Plaintiff's inclusion on the later "hit list," falsely accuse Plaintiff by name of being a "sexual predator" and "rapist" and are defamatory per se by maliciously imputing that he is guilty of committing acts of moral turpitude and is unfit and/or unqualified to be employed in his profession and/or occupation.

40. Plaintiff is also informed and believes that Defendants have engaged in other written and oral defamation of Plaintiff that he has not discovered because he does not have access to the Diet Madison Avenue Instagram account, but which will be revealed through discovery.

41. All of Defendants' false statements are <u>patently false</u> because Plaintiff has never created a hostile work environment and/or sexually harassed or assaulted anyone, while employed with CP+B, or at any other advertising agency or other employer.  Further Plaintiff has never engaged in any type of behavior that could in any way be considered in connection with an "unrepentant serial predator" or "rapist." All of these baseless allegations are <u>categorically false</u>.

42. Defendants intentionally, knowingly and maliciously published the false statements against Plaintiff without providing <u>any</u> supporting facts or evidence, despite expressly stating in the January 19th post that they have multiple "corroborated stories . . . spanning across multiple agencies."

43. As set forth above, however, Defendants have not, and cannot, provide any "corroboration" of their false statements, because no credible and substantiable evidence of Plaintiff being a "sexual predator" or "rapist" exists, because he has never engaged in, or been disciplined for any such behavior.

44. On February 2, 2018, just days after the January 25th post, Plaintiff was wrongfully terminated from his job at CP+B for cause, despite being an exemplary performer who received every performance bonus that he was eligible to receive.

45. On the same day, February 2nd, Diet Madison Avenue posted: "We are getting word that Ralph Watson was fired from Crispin. Can anyone confirm?"

46. Plaintiff is informed and believes that Defendants informed Adweek, a publication that covers the advertising industry, of his termination on the same day he was fired, because Adweek immediately published an article titled "CP+B Fires Chief Creative Officer Ralph Watson" (published on February 2, 2018). That article, and the "hit list" published by Diet Madison Avenue shortly thereafter, linked him to other high-profile advertising executives' terminations that were allegedly because of sexual harassment, further damaging Plaintiff's reputation and ability to work in the advertising agency. No one at Adweek contacted Plaintiff to interview him or allow him to comment on the article.

47. As a direct and proximate cause of Defendants' intentional and malicious smear campaign, Plaintiff was wrongfully terminated from his employment and has had his life destroyed solely on the basis of Defendants' patently false statements.

48. To date, no one from Diet Madison Avenue or CP+B has provided <u>any</u> credible evidence to substantiate a finding of any sexual harassment and/or other sexual misconduct.

49. As a proximate result of Defendants' defamation, Plaintiff has suffered the loss of salary, benefits, and additional amounts of money he would have received had he not been terminated

from his position. As a result of this defamation, Plaintiff has suffered such damages in an amount according to proof.

50. As a further proximate result, Plaintiff has largely been unable to secure any work in the advertising industry since his termination, solely because of the damage to his reputation and/or fear of retaliation by DMA or its supporters.

51. Defendants' false statements have further proximately caused Plaintiff to suffer shame and disgrace at being falsely accused of being a "serial predator" and "rapist" and he has, and continues, to suffer severe emotional distress from having his highly successful career destroyed by a malicious and reckless campaign of rumor and innuendo.

52. Defendants' false statements have further proximately caused Plaintiff to incur expenses as a result of the defamatory statements and in an amount according to proof.

53. The above-mentioned actions of Defendants were done with malice, fraud or oppression, and in reckless disregard of the Plaintiff's reputation, and Plaintiff seeks an award of punitive and exemplary damages in an amount according to proof.

### Claim II

### Intentional Infliction of Emotional Distress

### (By Plaintiff Against All Defendants)

54. The allegations of paragraphs 1 through 33 and 35 through 53 are re-alleged and incorporated herein by reference.

55. As set forth above, Defendants intentionally and recklessly published highly inflammatory false statements of fact about Plaintiff on at least three separate dates on or around January 19th, January 25th, and May 24th of 2018, which wrongfully and maliciously accused Plaintiff of being an "unrepentant sexual predator" and "rapist". In addition, Defendants included Plaintiff on a "hit list" of men in the advertising industry that it claimed were sexual harassers.

56. More specifically, on or around January 19, 2018, Defendants published the following false and unprivileged statements of fact to their approximately 7,500 followers (at the time) about Plaintiff: "Ralph Watson. The women that you targeted & groomed (like all predators do), because

they were young & just starting out their careers . . . the women that you assumed would stay quiet are stronger than you ever gave them credit for. And their voices have created a timeline. Going back years. Corroborated stories. Spanning across multiple agencies. And even continents." (See Ex. 1)

57. On or around January 25, on the same day as CP+B's Town Hall meeting, Defendants published a further highly inflammatory, false and unprivileged statement of fact in connection with Plaintiff: "Apparently during the @cpbgroup townhall today, they claimed to support the Me Too campaign . . . Are they letting go of Ralph AKA the unrepentant serial predator?" (See Ex. 2.)

58. On or around May 24, 2018, the Defendants posted a further inflammatory and retaliatory statement that appears to be falsely claiming that Plaintiff "raped" some anonymous individual: "Gloves are off. I don't care if the industry knows he raped me."

59. All of these malicious and false statements are extreme and outrageous actions by Defendants that were intentionally and/or recklessly taken with an intent to destroy Plaintiff's career and cause him severe emotional distress.

60. Defendants intentionally, knowingly and maliciously published the outrageous and false statements against Plaintiff without providing any supporting facts or evidence, despite expressly stating in the January 19th post that they have multiple "corroborated stories . . . spanning across multiple agencies."

61. As set forth above, however, Defendants have not, and cannot, provide any "corroboration" of their false statements, because no credible and substantiable evidence of Plaintiff being a "sexual predator" or "rapist" exists, because he has never engaged in, or been disciplined for any such behavior.

62. On February 2, 2018, just days after the January 25th post, Plaintiff was wrongfully terminated from his job at CP+B, despite being an exemplary performer who received every performance bonus that he was eligible to receive.

63. Plaintiff is informed and believes that Defendants informed Adweek, a publication that covers the advertising industry, of his termination on the same day he was fired, because Adweek immediately published an article titled "CP+B Fires Chief Creative Officer Ralph Watson" (on

February 2, 2018). That article, and the "hit list" published by Diet Madison Avenue shortly thereafter, linked him to other high-profile advertising executives' terminations that were allegedly because of sexual harassment, further damaging Plaintiff's reputation and ability to work in the advertising agency. No one at Adweek contacted Plaintiff to interview him or allow him to comment on the article.

64. As a direct and proximate cause of Defendants' intentional and malicious smear campaign, Plaintiff was wrongfully terminated from his employment and has had his life destroyed solely on the basis of Defendants' patently false statements.

65. To date, no Defendant has provided <u>any</u> credible evidence to substantiate a finding of any sexual harassment and/or other sexual misconduct by Plaintiff against anyone.

66. Defendants' outrageous actions have proximately caused Plaintiff to suffer shame and disgrace at being falsely accused of being a "serial predator" and "rapist" and he has, and continues, to suffer severe emotional distress from having his highly successful career destroyed by a malicious and reckless campaign of rumor and innuendo.

67. The above-mentioned actions of Defendants were done with malice, fraud or oppression, and in reckless disregard of the Plaintiff's reputation, and Plaintiff seeks an award of punitive and exemplary damages in an amount according to proof.

### Claim III

### Civil Conspiracy

### (By Plaintiff Against All Defendants)

68. The allegations of paragraphs 1 through 33, 35 through 53 and 55 through 67 are re-alleged and incorporated herein by reference.

69. As set forth above, Defendants intentionally and recklessly published highly inflammatory false statements of fact about Plaintiff on at least three separate dates on or around January 19th, January 25th, and May 24th of 2018, which wrongfully and maliciously accused Plaintiff of being an "unrepentant sexual predator" and "rapist". In addition, Defendants included Plaintiff on a "hit list" of men in the advertising industry that it claimed were sexual harassers.

70. In publishing these false statements, Defendants agreed, planned and conspired to destroy Plaintiff's reputation and get him terminated from his position and make it almost impossible for him to get any further work in his profession.

71. At the time Defendants made their unlawful plan, they knew that they had no credible or reliable evidence of any improper behavior of any kind by Plaintiff, and could not have undertaken a fair and unbiased investigation, because as set forth more fully above, no evidence of any type of misconduct exists because Plaintiff has never sexually harassed anyone and/or created a hostile work environment while employed with CP+B, any other employer, or at any time outside the employment context.

72. As a proximate result of the Defendants' conspiracy, Plaintiff has suffered the loss of salary and other benefits he would have received had he not been defamed and wrongfully terminated from his position, in an amount according to proof.

73. As a further proximate and foreseeable result of the Defendants' defamatory statements, Plaintiff has largely been unable to secure any other work in the advertising industry since his termination and appears be permanently unhireable because of the damage to his reputation.

74. As a further proximate result of the Defendants' conspiracy, Plaintiff has suffered shame and disgrace at being falsely accused of being a sexual harasser, and has suffered and continues to suffer, severe emotional distress in an amount according to proof.

75. The above actions of the Defendants were done with malice, fraud and oppression, and in reckless disregard of the Plaintiff's reputation and need to earn a living, and Plaintiff is entitled to an award of punitive and exemplary damages in an amount according to proof.

### Claim IV

**Tortious Interference with Contract**

**(By Plaintiff Against All Defendants)**

76. The allegations of paragraphs 1 through 33, 35 through 53, 55 through 67 and 69 through 75 are re-alleged and incorporated herein by reference.

77. At the time all of the above-described false statements were made by Defendants in January of 2018, they were aware that Plaintiff was employed with CP+B in its Boulder Colorado office, and their specific intent in publishing the false statements was to get Plaintiff terminated.

78. Specifically, Defendants' false claims on January 19th that Plaintiff was a "predator" and their January 25th statements directed at CP+B management on whether they were "letting go of Ralph AKA the unrepentant serial predator," were solely intended to disrupt the employment contract between CP+B and Plaintiff, by specifically pressuring the agency to terminate Plaintiff.

79. These and other false statements and pressure did in fact cause CP+B to terminate its employment contract with Plaintiff on February 2, 2018.

80. As a proximate result of Defendants' intentional interference, Plaintiff has suffered the loss of salary, benefits, and additional amounts of money he would have received had he not been terminated. As a result of this intentional interference, Plaintiff has suffered such damages in an amount according to proof.

81. As a further proximate result, Plaintiff has largely been unable to secure any work in the advertising industry since his termination, including losing a highly lucrative freelance engagement, because of the damage to his reputation and/or the real fear of retaliation by DMA or its supporters.

82. Defendants' false statements and intentional interference have further proximately caused Plaintiff to suffer shame and disgrace at being falsely accused of being a "serial predator" and he has suffered and continues to suffer severe emotional distress from having his highly successful career destroyed by a malicious and reckless smear campaign.

83. The above-mentioned actions of Defendants were done with malice, fraud or oppression, and in reckless disregard of the Plaintiff's reputation and need to earn a living, and Plaintiff seeks an award of punitive and exemplary damages in an amount according to proof.

## Claim V

### Tortious Interference with Prospective Economic Advantage

### (By Plaintiff Against All Defendants)

84. The allegations of paragraphs 1 through 33, 35 through 53, 55 through 67, 69 through 75 and 77 through 83 are re-alleged and incorporated herein by reference.

85. At the time all of the above-described false statements were made by Defendants in January of 2018, they were aware that Plaintiff was employed with CP+B in their Boulder Colorado office, and their specific intent in publishing the false statements was to get Plaintiff terminated.

86. Defendants further intended that their false statements would interfere with Plaintiff's ability to obtain future employment in the advertising industry, and/or knew that the false statements were substantially likely to interfere with Plaintiff's ability to obtain future employment.

87. Specifically, DMA's false claims on January 19th that Plaintiff was a "predator" and their January 25th statement directed at CP+B management on whether they were "letting go of Ralph AKA the unrepentant serial predator," were solely intended to pressure CP+B to terminate Plaintiff, and/or to disrupt Plaintiff's ability to obtain any other comparable future employment.

88. These and other false statements and pressure did in fact cause CP+B to terminate its employment contract with Plaintiff on February 2, 2018.

89. These false statements and the later May 24 false and retaliatory "rapist" accusation also caused Plaintiff to lose other economic opportunities, including, but not limited to, a highly lucrative freelance advertising campaign in or around early May of 2018.

90. As a proximate result of Defendants' intentional interference, Plaintiff has suffered the loss of salary, benefits, and additional amounts of money he would have received had he not been terminated from his position. As a result of this intentional interference, Plaintiff has suffered such damages in an amount according to proof.

91. As a further proximate result, Plaintiff has largely been unable to secure any work in the advertising industry since his termination, recently losing a highly lucrative freelance engagement, because of the damage to his reputation and/or real fear of retaliation by DMA or its supporters.

92. Defendants' false statements have further proximately caused Plaintiff to suffer shame and disgrace at being falsely accused of being a "serial predator," and "rapist" and he has, and continues, to suffer severe emotional distress from having his highly successful career destroyed by a malicious and reckless campaign of rumor and innuendo.

93. The above-mentioned actions of Defendants were done with malice, fraud or oppression, and in reckless disregard of the Plaintiff's reputation and need to earn a living, and Plaintiff seeks an award of punitive and exemplary damages in an amount according to proof.

## Claim VI

### Negligent Interference with Prospective Economic Advantage

### (By Plaintiff Against All Defendants)

94. The allegations of paragraphs 1 through 33, 35 through 52, 55 through 66, 69 through 75, 77 through 82 and 85 through 92 are re-alleged and incorporated herein by reference.

95. At the time all of the above-described false statements were made by Defendants in January of 2018, they were aware that Plaintiff was employed with CP+B, and that Plaintiff and CP+B had an economic relationship which was certain and/or reasonably probable to provide Plaintiff with future economic benefit.

96. Defendants further knew, or should have known, that their false statements would interfere with Plaintiff's ability to obtain future employment in the advertising industry, and/or knew, or should have known, that their false statements were substantially likely to interfere with Plaintiff's ability to obtain future employment and reasonably probable economic benefit.

97. Defendants had a duty to act with reasonable care prior to making its inflammatory statements against Plaintiff, so as to not injure Plaintiff's reputation, occupation and/or financial interests.

98. Defendants failed to act with reasonable care when they made their false claims on January 19th that Plaintiff was a "predator," their January 25th statement directed at CP+B management on whether they were "letting go of Ralph AKA the unrepentant serial predator," and their retaliatory May 24 "rapist" accusation, in that they did not take any reasonable steps to

substantiate any anonymous allegations (if any were made) of sexual impropriety against Plaintiff, because no such acts exist. In addition, Defendants also failed to exercise reasonable care when it included Plaintiff on a "hit list" of men in the advertising industry that it claimed were sexual harassers.

99. As set forth above, Plaintiff has never committed and/or been disciplined for any type of improper behavior, including sexual harassment and/or for creating a hostile work environment, at any employer at any time, and has never been involved in any settlement (confidential or otherwise) of any of these types of claims.

100. Further, Defendants have failed to identify any alleged accuser, or provide even a scintilla of evidence or proof supporting any allegations of harassment or other sexual misconduct.

101. In failing to exercise reasonable care to verify the truth or falsity of any anonymous allegations, Defendants' false statements directly caused his termination on February 2, 2018, just a few days after publishing that he was an "unrepentant serial predator."

102. As a proximate result of Defendants' wrongful conduct, Plaintiff has suffered the loss of salary, benefits, and additional amounts of money he would have received had he not been terminated from his position. As a result of this intentional and/or negligent interference, Plaintiff has suffered such damages in an amount according to proof.

103. As a further proximate result, Plaintiff has largely been unable to secure any work in the advertising industry since his termination, recently losing a highly lucrative freelance engagement, because of the damage to his reputation and/or fear of retaliation by DMA, or its supporters.

104. Defendants' false statements have further proximately caused Plaintiff to suffer shame and disgrace at being falsely accused of being a "serial predator," and he has, and continues, to suffer severe emotional distress from having his highly successful career destroyed by a malicious and reckless campaign of rumor and innuendo.

## Request for Relief

WHEREFORE, Plaintiff respectfully demands judgment against Defendants as follows:

1. For a public retraction and apology;

2. For lost wages and other monetary relief in an amount according to proof;

3. For compensatory damages, including general and special damages in an amount according to proof, but in the event of default, not less than $10,000,000;

4. For punitive damages according to proof, but in the event of default, not less than $10,000,000;

5. For interest on the sum of damages awarded, including prejudgment interest;

6. For costs of suit;

7. For reasonable attorney's fees as permitted by law; and

8. For such other and further relief that Plaintiff is entitled to that the court may deem proper.

### Demand for Jury Trial

Plaintiff hereby requests a jury trial on all issues raised in the Complaint.


Dated: January 17, 2019        Respectfully submitted,

/s/ Michael W. Ayotte

_____

*Michael W. Ayotte*
LAW OFFICES OF MICHAEL W. AYOTTE
2629 Manhattan Ave., Suite 144
Hermosa Beach, CA 90254
Telephone: (310) 343-1864
Email: mayotte@clientfirstlegalsolutions.com

Attorneys for Plaintiff
RALPH M. WATSON