UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------X
RALPH M. WATSON, an individual,

                                                                  Case No. 1:19-cv-533
                                Plaintiff,                      (JGK)

        -against-

NY DOE 2, an individual, NY DOE 3, an individual,
NY DOE 4, an individual, ILLINOIS DOE 1, an individual;
DOE COMPANY, an unknown business entity; DOE 1, an
individual; and DOES 2 through 100, whose true names and
capacities are unknown,

                                  Defendants.

-------------------------------------------------------------------------------X

**DEFENDANT DOE 1'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

Errol F. Margolin, Esq.
Margolin & Pierce, LLP
110 West 40th Street, Suite 303
New York, NY 10018
Tel: 212-247-4844
*margolinandpierce@gmail.com*

*Counsel for Defendant Doe 1*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS ............................................................................... 1

PROCEDURAL HISTORY ............................................................................. 4

ARGUMENT .................................................................................................. 5

    I.    DEFAMATION AND THE FIRST AMENDMENT ........................... 6

    II.   DEFAMATION AS TO DOE 1 .......................................................... 9

    III.  INTENTIONAL INFLICTION EMOTIONAL DISTRESS ............... 12

    IV.  INTERFERENCE WITH CONTRACT AND ECONOMIC ADVANTAGE..... 13

    V.   CIVIL CONSPIRACY ...................................................................... 15

CONCLUSION .............................................................................................. 16

## TABLE OF AUTHORITIES

Cases                                    **Page**

*Abacus Fed. Sav. Bank v Lim*,
   75 AD3d 472 (1st Dept. 2010)...................................................................... 15

*Ahmed v. Gekfand*,
   160 F. Supp. 2d 408, 416 (EDNY 2001) ........................................................ 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................. 5, 16

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................ 5, 6, 16

*Bishop v. Porter*,
   No. 02 Civ. 9542, 2003 WL 21032011 (S.D.N.Y. 2003) .............................. 15

*Carvel Corp. v. Noonan*,
   350 F.3d 6, 17 (2nd Cir. 2003)................................................................... 14

*Chandok v. Klessig*,
   632 F.3d 803, 814 (2nd Cir. 2011)........................................................ 10, 16

*Chapadeau, Appellant, v. Utica Observer-Dispatch, Inc.*,
   38 NY2d 196 (1975) .................................................................................... 8

*County Vanlines Inc., v. Experian Information Solutions, Inc.*,
   317 F.Supp.2d 383 (S.D.N.Y 2004) .............................................................. 9

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
   472 U.S. 749, (1985).................................................................................. 6, 7

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*,
   194 F. Supp. 3d 263 (S.D.N.Y. 2016) ........................................................ 17

*Fleming v. Laakso*,
   18-CV-1527 (RA) (BCM), (S.D.N.Y. 2019)................................................. 8

*Friedman v. Self Help Cmty. Servs., Inc.*,
   647 F. App'x 44 (2d Cir. 2016) .................................................................. 12

*Hengjun Chao v. Mount Sinai Hosp.*,
   476 F. App'x 892 (2nd Cir. 2012)............................................................... 14

*Howell v. New York Post Co.*,
    81 N.Y.2d 115, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993)..........................................12

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388, 401 (2nd Cir. 2006)......................................................................13, 15

*Konikoff v. Prudential Ins. Co. of America*,
    234 F.3d 92 (2nd Cir. 2000)......................................................................................8

*Krepps v. Reiner*,
    588 F.Supp.2d 471, (S.D.N.Y. 2008)........................................................................14

*Lama Holding Co. v. Smith Barney Inc.*,
    88 N.Y.2d 413, 668 N.E.2d 1370, 646 N.Y.S.2d 76 (1996)..........................................13

*Lee Dodge, Inc. v Sovereign Bank, NY*,
    148 AD3d 1007, (2nd Dept. 2015) .........................................................................15

*Lokai Holdings LLC v. Twin Tiger USA LLC*,
    306 F. Supp. 3d 629 (S.D.N.Y. 2018) .....................................................................15

*Morrison v. Nat'l Broad. Co.*,
    280 N.Y.S.2d 641, (N.Y. 1967) .............................................................................14

*NY Times Co. v. Sullivan*,
    376 U.S. 254, (1964).............................................................................................7

*Pasqualini v. MortgageIT, Inc.*,
    498 F. Supp. 2d 659 (S.D.N.Y. 2007) .....................................................................14

*Perez v. Lopez*,
    97 AD3d 558, (2nd Dept 2012) ..............................................................................15

*Perez v. Violence Intervention Program*,
    116 AD3d 601 (1ˢᵗ Dept 2014)...............................................................................12

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*,
    507 F.3d 117 (2nd Cir. 2007).................................................................................16

*Pusey v. Bank of Am., N.A.*,
    No. 14-CV- 04979 FB LB, 2015 WL 4257251, (E.D.N.Y. July 14, 2015).................14

*Restis v. Am. Coal. Against Nuclear Iran, Inc.*,
    53 F. Supp. 3d 705, (S.D.N.Y. 2014) ......................................................................14

*Rich v. Fox News Network, LLC*,
    322 F. Supp. 3d 487 (S.D.N.Y. 2018) .....................................................................13

*Thai v. Cayre Group, Ltd.*,
  726 F. Supp. 2d 323, (S.D.N.Y. 2010) .......................................................................... 9

*Thorsen v. Sons of Norway*,
  996 F. Supp. 2d 143 (E.D.N.Y. 2014) ................................................................ 10, 11

## PRELIMINARY STATEMENT

Plaintiff Ralph Watson ("Plaintiff" or "Watson") commenced this action against the moving defendant, Doe 1, as well as over 100 other defendants alleging defamation, emotional infliction of emotional distress, interference with contract, interference with prospective economic advantage and civil conspiracy, claiming damages of 10 million dollars in compensatory damages and 10 million dollars in punitive damages, all stemming from a series of anonymous social media posts.

Plaintiff's Amended Complaint consists entirely of vague allegations that utterly fail to state a cognizable cause of action against any defendant, the allegations against Doe 1 being particularly deficient, warranting dismissal.

## STATEMENT OF FACTS

According to the Amended Complaint, the Plaintiff was the subject of three online posts to a private account named Diet Madison Avenue ("DMA" herein) on the social media platform Instagram by an account run by anonymous individual(s) seeking to expose sexual harassment, misconduct and discrimination in the advertising industry by male executives and encouraging victims to report such misconduct. See Amended Complaint (Exhibit A hereto) at ¶ 14.

Plaintiff alleges the posts on the DMA account were false and defamatory, and seeks to impose liability on Doe 1 without any actual factual allegations in support of any of his causes of action as to Doe 1. Plaintiff's claim against Doe 1 is based solely upon the bald assertion that the defendants all conspired to damage his reputation resulting in his being fired from his position as chief creative officer at Crispin Porter & Bogusky LLC.,

1

("CP+B") on February 2, 2018 and that he was allegedly unable to secure work within the industry thereafter. *Id* at ¶¶ 22, 89- 96. CP+B asserts that Watson was fired for cause after an internal investigation. *Id* at ¶ 38.

According to the Amended Complaint, the first allegedly defamatory statement was posted on the private DMA Instagram account on or about January 19, 2018. That post read "Ralph Watson. The women that you targeted and groomed (like all predators do), because they were young & just starting out in their careers . . . the women that you assumed would stay quiet are stronger than you ever gave them credit for. And their voices have created a timeline. Going back years. Corroborated stories. Spanning across multiple agencies. And even continents." At ¶ 22. Seemingly in response to this allegation CP+B then held a company-wide "town hall" meeting on or about January 25, 2018. *Id.* ¶ 30.

The next allegedly defamatory post is alleged to have been posted on the same day as the town hall meeting stating that human resources at CB+P had received reports of Watson's behavior in the past and speculating as to whether CB+P would take action and calling Watson a "unrepentant serial predator". *Id* at ¶ 27-29.

Plaintiff alleges that these posts were knowingly false and that CB+P fired him as a direct result of these posts knowing they were false, despite the fact that CB+P fired him "for cause" after a "3- 4 day internal investigation" (*Id* at ¶ 34) and despite Watson's admission of having been the subject of a complaint of sexual harassment and assault that predates the Instagram posts, which by his own admission, he was made aware of in October of 2018 by CP+B attorneys. *Id* at ¶ 38.

Plaintiff further alleges another post by DMA months later in May of 2018, which did not name him, inexplicably was understood by people who know him to be about him,

stated "[g]loves are off. I don't care if the industry knows he raped me." Amended Complaint at ¶ 44.

Plaintiff makes a slew of other allegations regarding posts allegedly made by other defendants or against other men in the industry, the existence of which of some are alleged upon "information and belief" and the content do not even arguably defame him such as the alleged sharing of a "GoFundMe" webpage to raise money for DMA's legal defense by Illinois Doe 1 together with a statement that it "is the next best thing to giving money directly to the victims", and a post by DMA stating the group's support for victims which Watson claims relates somehow to NY DOE 2. In any event, none of these other posts, and moreover, none of the posts *at all* are attributed to DOE 1. Her liability is apparently premised on her association with other defendants, which is verily denied.

The Amended Complaint repeats the same vague and unsupportable allegations in support of additional causes of action for intentional infliction of emotional distress, tortious interference with contract, tortious interference with prospective economic advantage and negligent interference with prospective economic advantage.

The allegations against Doe 1 are in their entirety, as follows:

> Plaintiff is informed an believes that at least an additional forty-two individuals have provided assistance to Diet Madison Avenue. All of the individual Defendants running and/or assisting Diet Madison Avenue are doing so anonymously and are actively hiding their identities. However, at least one of these individuals, Doe 1, who until recently, worked for Droga5, has been identified by a credible witness as having provided assistance to DMA, including connecting DMA with student researchers at NYU.

Amended Complaint at ¶ 17.

> All of the Defendants, including but not limited to the individually named Defendants NY DOE 2, NY DOE 3, NY DOE 4, ILLINOIS DOE 1 and DOE 1, are jointly and severally responsible for all of the damages incurred by Plaintiff that were proximately caused by their tortious actions, because they all agreed, planned, engaged in and/or aided and abetted an ongoing

conspiracy with each other to destroy Plaintiff's reputation and get him terminated from his potion, regardless of whether they were the individual(s) who actually published any false statement about Plaintiff.

Amended Complaint at ¶¶ 48 and 89.

## PROCEDURAL HISTORY

On May 22, 2018 Watson filed a lawsuit in Los Angeles Supreme Court (Case No. BC 707278) against DMA and 100 Doe defendants claiming defamation and related torts. In this case Watson sought discovery from Instagram, Facebook and Gmail regarding the identities of those behind DMA. The judge granted a limited subpoena permitting Watson to obtain only the information regarding the identities of the individual(s) that posted the January posts and specifying that Watson is not entitled to subpoena the identities of any individuals not directly behind publishing those posts in January. Plaintiff having apparently come up short, he now asserts that he has moved to expand the dates permitted under the initial subpoena for dates outside of the alleged defamatory postings.

On June 29, 2018 Watson filed a suit against CP+B in Colorado alleging he was fired without cause, age discrimination and reverse sex discrimination. That case has been administratively closed pending the resolution of a petition filed in the Southern District of New York by CP+B compelling arbitration pursuant to the parties' contract which is currently pending before Judge Vernon S. Broderick.

On January 17, 2019, Plaintiff filed this action and on July 8, 2019, this Court held a pre-motion conference in which it allowed Watson to address the various deficiencies in his Complaint by filing an Amended Complaint. Order, ECF No. 43. On July 19, 2019 the Plaintiff filed the Amended Complaint herein, alleging the same claims. The Amended Complaint is annexed hereto as Exhibit A.

## ARGUMENT

Plaintiff's now Amended Complaint still strains to make a plausible connection between the defendants and the vague allegations of wrongdoing and fails entirely to state any allegations which connect Doe 1.

In order to survive a motion to dismiss the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, (2009 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). A claim has "facial plausibility" when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This "plausibility" standard is "not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The Supreme Court has specifically indicated that determining whether a complaint states a plausible claim for relief under this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The Amended Complaint fails to connect Doe 1 with any of the statements which are the basis for each of his causes of action. Watson does not allege that Doe 1 made any statement or that s/he directly or indirectly control or even had the ability to post anything on the DMA Instagram account. The allegations against Doe 1 in the Amended Complaint are entirely legal conclusions, which although "can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, (2009).

Plaintiff does not allege he has ever met, worked with or otherwise known Doe 1 in any capacity. He does not allege that Doe 1 had any role in writing or publishing the posts at issue to the Diet Madison Avenue Instagram account, or that Doe 1 republished

the content, nor therefore can he allege that Doe 1 did so with the malice required. In fact, he fails to allege any act on the part of this defendant that would be actionable under any of his theories, if true. Watson alleges only a hearsay statement that Doe 1 may have introduced an unnamed person to other people.

Upon information and belief, Doe 1's very vague connection to this case is based entirely upon an alleged witness' claim that someone with an Instagram handle that involves the same first name as Doe 1 allegedly commented on a Diet Madison Avenue post.

The facts as alleged by the Plaintiff are sheer speculation that even if true would only amount to an allegation of Doe 1's association with members of DMA which is clearly not actionable. *See generally, Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Here, the vague facts as alleged in the Amended Complaint do not begin to state a claim which is "detailed enough to afford the defendant sufficient notice" to enable them to mount a defense and must therefore be dismissed. *Ahmed v. Gekfand*, 160 F. Supp. 2d 408, 416 (EDNY 2001).

## I.    DEFAMATION AND THE FIRST AMENDMENT

Plaintiff seeks to do in this case what he cannot do in California because of California's AntiSlapp laws, which is to chill the free speech of those who speak out about a public interest by forcing those that do so to defend baseless lawsuits such as this. Despite the current lack of effective AntiSlapp legislation in New York, First Amendment protections are applicable to the alleged statements made in this case. The U.S. Supreme Court in *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, (1985), discussed the factors considered in the analysis of whether allegedly defamatory speech is

matter of "public concern" entitling it to heightened First Amendment protections in the

context of *NY Times v. Sullivan[1]*. The Court considered whether the communication was a

public issue, as the First Amendment explicitly protects against the threat to the free and

robust debate of public issues, and whether the plaintiff was a public figure, stating that the

reasoning behind that consideration is because private individuals generally lack effective

opportunities for rebutting such statements". Here, plaintiff falls short on both prongs.

> The First Amendment was fashioned to assure unfettered interchange of
> ideas for the bringing about of political and social changes desired by the
> people.' *Roth* v. *United States*, 354 U.S. 476, 484 (1957); *New York
> Times Co.* v. *Sullivan*, 376 U.S. 254, 269 (1964). `[S]peech concerning
> public affairs is more than self-expression; it is the essence of self-
> government.' *Garrison* v. *Louisiana*, 379 U.S. 64, 74-75 (1964).
> Accordingly, the Court has frequently reaffirmed that speech on public
> issues occupies the `highest rung of the hierarchy of First Amendment
> values,' and is entitled to special protection. *NAACP* v. *Claiborne
> Hardware Co.*, 458 U.S. 886, 913 (1982); *Carey* v. *Brown*, 447 U.S. 455,
> 467 (1980).

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, (1985). It is submitted,

that allowing victims of sexual abuse to speak out publicly, and particularly in the

workplace is "one of the major public issues of our time", if not *the* major issue of our

time, and as held in *NY Times v. Sullivan*, "debate on public issues should be uninhibited,

robust, and wide-open." *NY Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

    In addition to the sound arguments made by NY Doe 2 in support of their motion

to dismiss (See page 13 of the memorandum of law in support), regarding Watson making

himself a limited public figure by virtue of his speaking publicly about the disputed issues,

the qualified common interest privilege applies to this public controversy and the Plaintiff

has the burden to prove these posts were made with actual malice and without a good faith

---

[1] *NY Times Co.* v. *Sullivan*, 376 U.S. 254, 269 (1964).

belief of their truth. In *Chapadeau, Appellant, v. Utica Observer-Dispatch, Inc.*, an article was published regarding the arrest of a school teacher who was allegedly found in possession of heroin which the plaintiff claimed was untrue. Nonetheless, the Court of Appeals in *Chapadeau,* found it too obvious to state an explanation as to why this was a legitimate public concern and that the plaintiff had failed to allege the requisite gross irresponsibility on the part of the defendant. The Court went on to articulate what is now the standard: "[W]here the content of the article is arguably within the sphere of legitimate public concern, which is reasonably related to matters warranting public exposition... [the plaintiff] must establish, by a preponderance of the evidence, that the publisher acted in a grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties." *Chapadeau, Appellant, v. Utica Observer-Dispatch, Inc.*, 38 NY2d 196 (1975); *see also Konikoff v. Prudential Ins. Co. of America*, 234 F.3d 92 (2nd Cir. 2000). Here too it is obvious that sexual harassment and abuse in the workplace is a matter of public concern and the Plaintiff has not met the applicable pleading standard.

> Because the absence of an applicable privilege is an element of the cause of action in New York, a plaintiff must affirmatively allege that the defamatory statement was not privileged...
>
> The 'qualified common interest privilege,' [] applies 'when the defamatory statement is made between persons who share a common interest in the subject matter.' *Fuji Photo Film USA., Inc., v. McNulty,* 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009). 'Such statements are protected for the common convenience and welfare of society, that is, the recognition that on certain occasions the good that may be accomplished by permitting an individual to make a defamatory statement without fear of liability . . . outweighs the harm that may be done to the reputation of others.' *Qureshi v. St. Barnabas Hosp. Ctr.,* 430 F. Supp. 2d 279, 290-91 (S.D.N.Y. 2006) (quoting *Garson v. Hendlin*, 141 A.D.2d 55, 532 N.Y.S.2d 776, 780 (2d Dep't 1988)).

*Fleming v. Laakso*, 18-CV-1527 (RA) (BCM), at *18-19 (S.D.N.Y. Feb. 5, 2019).

8

> At the pleadings stage, a plaintiff can overcome the common interest privilege by alleging that the defamatory statement was motivated solely by [common law or constitutional] malice. 'Common-law malice mean[s] spite or ill will, and will defeat the privilege only if it is the one and only cause for the publication.' 'Constitutional or actual malice means publication with [a] high degree of awareness of [the publication's] probable falsity or while the defendant in fact entertained serious doubts as to the truth of [the] publication.' 'Mere conclusory allegations, or charges based upon surmise, conjecture, and suspicion are insufficient to defeat the claim of qualified privilege.'

*Thai v. Cayre Group, Ltd.*, 726 F. Supp. 2d 323, (S.D.N.Y. 2010). In this case the Plaintiff's conclusory statements that the alleged statements made by DMA were made with malice is plainly insufficient. *See County Vanlines Inc., v. Experian Information Solutions, Inc.*, 317 F.Supp.2d 383 (S.D.N.Y 2004). Moreover, it is not alleged that this defendant made any statement at all rather their liability is premised upon their alleged association with DMA, which is not actionable.

Assuming arguendo the singular allegation that Doe 1 introduced someone allegedly associated with a group of people whose mission it was to advocate for victims of sexual harassment and abuse, to student researchers, for no purpose stated, is woefully insufficient. Against this Constitutional backdrop and considering the social climate and stated purpose of the posts by DMA which the Plaintiff has not overcome with credible allegations of requisite malice, together with the lack of allegations that this defendant had anything to do with publishing the statements at all, as will be discussed herein, the Amended Complaint utterly fails to state a cause of action against Doe 1.

## II.    DEFAMATION AS TO DOE 1

Plaintiff's cause of action for defamation as against Doe 1 fails as a matter of law as he has failed to allege facts that satisfy *any* of the elements of the cause of action. To

state a claim for defamation under New York law, a plaintiff must allege (1) a false and unprivileged statement made by the defendant about the plaintiff, (2) published to a third party (3) with the applicable level of fault (4) a resultant injury to the plaintiff. *Chandok v. Klessig,* 632 F.3d 803, 814 (2nd Cir. 2011). Here, plaintiff has alleged no statement attributable to Doe 1.

Plaintiff, in his opposition to NY Doe 2's motion to dismiss points out that New York State's pleading requirements do not apply to a case in Federal Court citing *Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143 (E.D.N.Y. 2014) and concluding that all is required is a "short and plain statement of the claim showing that the pleader is entitled to relief". However, the Plaintiff does not discuss the court's ensuing discussion of what does satisfy that standard before holding that the standard was not met in that case dismissing the complaint, for the same reasons it is not met here as against the moving defendant. In *Thorsen v. Sons of Norway*, *Id* at 163, the court held in particular that although the defendant may have taken some action allegedly furthering the false statement of another, the plaintiffs "failed to allege any actionable statement" made by the defendant.

Similarly, to the facts at bar, the court found in *Thorson*, that the plaintiff did not allege actual statements made by the individual defendants but basically claimed the defendants' actions were in line with and therefore adopted as fact the statements made by other parties. The court, in dismissing the claims, in essence recognized that there is no such thing as defamation by association. That is, defamation is not something that can to be implied by action in furtherance of a third party's alleged defamation. The court held:

> To adequately plead a claim for defamation under New York law, the plaintiff must 'identif[y] the purported communication, and an indication of who made the communication, when it was made, and to whom it was

communicated.' *Fuji Photo Film U.S.A., Inc. v. McNulty,* 669 F.Supp.2d 405, 411 (S.D.N.Y.2009) (citations omitted); *see also Arsenault v. Forquer,* 197 A.D.2d 554, 602 N.Y.S.2d 653 (2d Dep't 1993) ('[T]he specifics of all three component parts of the publication, *i.e.,* its time, manner, and audience, must be alleged in order for a cause of action sounding in libel to succeed.'); N.Y.C.P.L.R. § 3016(a).

i. *Making of a False Statement*

The Thorsens fail to adequately allege that SON made a false statement concerning them. The Thorsens allege that SON made a false statement by 'paying or causing a third-party to pay the bond claim filed by the Nansen Lodge against the New Leaders concerning the hiring and payment of Fox Rothschild, [SON] adopted as fact the defamatory statements made by Nansen Lodge Members.' (Dkt. 1 ¶ 146.) Causing a bond claim to be paid manifestly does not constitute an oral or written *published statement. See Salvatore v. Kumar,* 45 A.D.3d 560, 563, 845 N.Y.S.2d 384 (2d Dep't 2007) (citing *Dillon v. City of New York,* 261 A.D.2d 34, 38, 704 N.Y.S.2d 1 (1st Dep't 1999)) (requiring 'a false *statement, published* without privilege or authorization to a third party' in a defamation claim) (emphasis added). The Thorsens point to no authority for that expansive and novel proposition, because none exists. Although a party may 'adopt' a statement as its own by republishing a defamatory statement, causing a bond claim to be paid clearly is not the same as republishing a statement. *See Long v. Marubeni Am. Corp.,* 406 F.Supp.2d 285 (S.D.N.Y.2005) ('[O]ne who republishes a defamatory statement [originally made by another] 'adopts' it as his own and is liable in equal measure.') (citing *Sack on Defamation* § 7.1). Plaintiffs have not alleged that SON republished an allegedly defamatory statement, nor have Plaintiffs identified a third party to whom SON published a statement.

Accordingly, Plaintiffs have failed to allege any actionable statement made by SON, and their defamation claims must be dismissed on that basis.

*Thorsen v. Sons of Norway,* 996 F. Supp. 2d 143, 163-64 (E.D.N.Y. 2014). Here also the

Plaintiff has failed as against Doe 1 to allege any alleged defamatory statement was made.

Plaintiff's other tort causes of action also fail, as the singular allegation against Doe

1 is simply insufficient to begin to satisfy the elements of each and is moreover, each claim

is indistinguishable and therefore duplicative of his failing defamation claim. Dismissal is

appropriate where the additional causes of action "allege no new facts and seek no distinct

11

damages from the defamation claim." *Perez v. Violence Intervention Program,* 116 AD3d

601 (1st Dept 2014).

### III.   INTENTIONAL INFLICTION EMOTIONAL DISTRESS

To state a claim for intentional infliction of emotional distress under New York

law, a plaintiff must adequately allege: "(1) extreme and outrageous conduct, (2) intent to

cause severe emotional distress, (3) a causal connection between the conduct and the injury,

and (4) severe emotional distress." *Friedman v. Self Help Cmty. Servs., Inc.* ,647 F. App'x

44 (2d Cir. 2016). The conduct must be "so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious,

and utterly intolerable in a civilized society." *Howell v. New York Post Co.* , 81 N.Y.2d

115, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993).

> This 'standard ... is 'rigorous, and difficult to satisfy.' *'Conboy v. AT & T Corp,* 241 F.3d 242, 258 (2d Cir. 2001) (quoting *Howll,* 596 N.Y.S.2d 350, 612 N.E.2d at 702 ); see also *DiRuzza v. Lanza* , 685 F. App'x 34, 36 (2d Cir. 2017) ('A claim for [IIED] must satisfy an 'exceedingly high legal standard' ' and is available' only as a last resort"). 'Actions 'likely [to] be considered reprehensible by most people' are not sufficient.' *DiRuzza* , 685 F. App'x at 37 (citation omitted); see also *Ponticelli v. Zurich Am. Ins. Grp.* , 16 F.Supp.2d 414, 441 (S.D.N.Y. 1998) ('[C]onduct [that is] undoubtedly unprofessional, distasteful, and improper, does not rise to the level of extreme and outrageous behavior required for an IIED claim in New York.') Indeed, of all the IIED claims the New York Court of Appeals has considered, 'everyone has failed because the alleged conduct was not sufficiently outrageous.' *'DiRuzza*, 685 F. App'x at 37 (quoting *Chanko v. Am. Broad. Cos.*, 27 N.Y.3d 46, 29 N.Y.S.3d 879, 49 N.E.3d 1171, 1179 (2016) ) (alterations and omission in original)…
>
> ('[C]ourts in this Circuit have recognized[ ] [that] defamatory statements generally cannot constitute the extreme and outrageous behavior required for an [IIED] claim.'). Moreover, 'it is well established that where the crux of [a] complaint sounds in defamation, court[s] will refuse to allow a cause of action for emotional distress,' because a plaintiff cannot 'circumvent[ ] the restrictions on defamation claims' by styling his claim as one for IIED. *Croskey v. Med. & Tech. Servs., Inc.*, No. 05 Civ. 6641 (LMM), 2006

WL 2347816, at *3 (S.D.N.Y. Aug. 10, 2006) (citing *Wilson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 111 A.D.2d 807, 490 N.Y.S.2d 553, 555 (2d Dep't 1985). Similarly, 'courts have held that false statements or misrepresentations—even if intentionally made—do not rise to the level of extreme and outrageous conduct.' *Baraliu v. Vinya Capital, L.P.*, No. 07 Civ. 4626 (MHD), 2009 WL 959578, at *12 (S.D.N.Y. Mar. 31, 2009) (citations omitted).

*Rich v. Fox News Network, LLC*, 322 F. Supp. 3d 487 (S.D.N.Y. 2018). The Plaintiff has failed to allege any extreme and outrageous conduct on the part of any defendant. That a publication was intentionally false is insufficient to meet his bar. *Id.* Here, as discussed, the Plaintiff has failed to allege *any* statement attributable to this defendant at all, but instead alleges only that Doe 1 introduced someone to student researchers. This conduct if true would be wholly insufficient to meet the high burden necessary to recover for intentional infliction of emotional distress.

## IV.    INTERFERENCE WITH CONTRACT AND ECONOMIC ADVANTAGE

Under New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-2 (2d Cir. 2006), *Lama Holding Co. v. Smith Barney Inc.*,88 N.Y.2d 413, 668 N.E.2d 1370, 646 N.Y.S.2d 76 (1996). Similarly, the elements to state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or

improper means; and (4) the defendant's interference caused injury to the relationship." *Carvel Corp. v. Noonan,* 350 F.3d 6, 17 (2nd Cir. 2003).

The Plaintiff has failed to allege any conduct on the part of this defendant that could amount to a cause of action for interference with contract or economic advantage. Each of these causes of action is premised by the Plaintiff upon the making of the allegedly false statements resulting in his being fired from CP+B, but the Amended Complaint does not attribute any of the statements to Doe 1 but instead seeks impermissibly to charge Doe 1 with the behavior of others based solely on her alleged association with them. Moreover, claims for tortious interference are dismissed as duplicative of defamation claims where such claims are premised on the same "'factual allegations ... [as] the facts underlying [a] defamation claim.'" *Restis v. Am. Coal. Against Nuclear Iran, Inc.*, 53 F. Supp. 3d 705, (S.D.N.Y. 2014) (*citing Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892 (2nd Cir. 2012)); *Pusey v. Bank of Am., N.A.*, No. 14-CV- 04979 FB LB, 2015 WL 4257251, at *4 (E.D.N.Y. July 14, 2015); see also *Krepps*, 588 F. Supp. 2d at 485 ("Plaintiff is not permitted to dress up a defamation claim as a claim for intentional interference with a prospective economic advantage." (*citing Pasqualini v. MortgageIT, Inc.*, 498 F. Supp. 2d 659 (S.D.N.Y. 2007).

New York courts treat harm stemming from injury to reputation as sounding in defamation, and do not recognize separate torts as additional causes of action. *See Morrison v. Nat'l Broad. Co.*, 280 N.Y.S.2d 641, (N.Y. 1967); see, e.g., *Krepps v. Reiner*, 588 F.Supp.2d 471, (S.D.N.Y. 2008), *Pasqualini v. MortgageIT, Inc.*, 498 F. Supp. 2d 659 (S.D.N.Y. 2007). ("New York Courts have consistently ruled that a claim which is ostensibly based upon the intentional torts of interference with advantageous or contractual relations, but which alleges injury to reputation, is a disguised defamation claim. . . .")

Finally, the causes of action for negligent interference with prospective economic relations does not exist in New York and similarly must be dismissed. *Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629 (S.D.N.Y. 2018); *See, e.g., Bishop v. Porter,* No. 02 Civ. 9542, 2003 WL 21032011, at *12 (S.D.N.Y. May 8, 2003).

## V.     CIVIL CONSPIRACY

Under New York law, "[i]n order to properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement." *Perez v. Lopez*, 97 AD3d 558, (2nd Dept 2012); *Abacus Fed. Sav. Bank v Lim*, 75 AD3d 472 (1st Dept. 2010). Where the underlying tort is properly dismissed, the cause of action alleging civil conspiracy is also properly dismissed, since it stands or falls with the underlying tort. *See Lee Dodge, Inc. v Sovereign Bank, NY*, 148 AD3d 1007, (2nd Dept. 2015).

As discussed, each tort alleged is insufficient on its face and Doe 1's liability for each of the independent torts is entirely premised upon the bald allegation without any facts in support that all of the defendants were part of a conspiracy to commit them.

The Plaintiff has failed state any facts of an agreement or unlawful objective reached between Doe 1 and any other defendant, nor then does he plead an overt act to achieve the same, and has further failed to state causes of action for any of the torts underlying the alleged conspiracy, thus he necessarily fails to state an actionable claim for civil conspiracy and the Amended Complaint as against this defendant should be dismissed. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2nd Cir. 2006).

## CONCLUSION

It is respectfully submitted that the Plaintiff does not have a good faith basis for naming Doe 1 in this action but did so to bully him/her into exposing information he mistakenly believes Doe 1 knows about other individuals' involvement. There is no clarity to be found in the sole factual allegation against Doe 1, which again, in its entirety alleges that Doe 1, upon information and belief, "provided assistance to DMA, including connecting DMA with student researchers at NYU."

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117 (2nd Cir. 2007) (*citing Twombly*, 550 U.S. at 555). *See Chandok v. Klessig*, 632 F.3d 803, 814 (2nd Cir. 2011). The Amended Complaint is not only lacking a plausible claim against Doe 1 but moreover, it is devoid of any indication as to what the Plaintiff's 20 million dollar claim against Doe 1 is premised upon at all, and Plaintiff's assertions that discovery may reveal the facts he needs to support his claims "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009):

> Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* '[R]ather, the complaint's *[f]actual* allegations must be enough to raise a right to relief above the speculative level, *i.e.*, enough to make the claim plausible.' *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir.2010) (quoting *Twombly*, 550 U.S. at 555, 570, 127 S.Ct. 1955) (internal quotation marks omitted) (emphasis in *Arista Records*). A complaint is properly dismissed where, as a matter of law, 'the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief.' *Twombly*, 550 U.S. at 558, 127 S.Ct. 1955.

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F. Supp. 3d 263 (S.D.N.Y. 2016). If the one direct allegation against Doe 1 were true, which Doe 1 denies, it would not amount to a cognizable claim.

For the foregoing reasons, Doe 1 respectfully asks the Court to grant his/her motion to dismiss all claims as against Doe 1 with prejudice and costs.

Dated: New York, New York
    October /5 , 2019

MARGOLIN & PIERCE, LLP

By: _____
    Errol F. Margolin, Esq., 2530
    110 W 40 Street, Suite 303
    New York, NY 10018

*Attorneys for Doe 1*

## CERTIFICATION REGARDING FONT AND WORD COUNT

I hereby certify to this Court's Individual Rule 2.D that this brief complies with all formatting requirements, and that the total number of words in this brief, inclusive of point headings and footnotes and exclusive of the cover page, certification of compliance, table of contents and table of authorities is 5,504.

Dated: New York, New York
       October/5, 2019

By: Errol F. Margolin, Esq., 2530
MARGOLIN & PIERCE, LLP
110 W 40 Street, Suite 303
New York, NY 10018
Phone (212) 247-4844
errolmargolin@aol.com

*Attorneys for Doe 1*

## CERTIFICATE OF SERVICE

I hereby certify that on October 15, 2019, I electronically filed the foregoing with

the Clerk of the Court, to be served on all parties of record via the CM/ECF system.

Dated: New York, New York
      October , 2019

By: Errol F. Margolin, Esq., 2530
MARGOLIN & PIERCE, LLP
110 W 40 Street, Suite 303
New York, NY 10018
Phone (212) 247-4844
errolmargolin@aol.com

*Attorneys for Doe 1*