**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------

**RALPH WATSON,**

                    **Plaintiff,**              **19cv533 (JGK)**

          **- against -**                 **OPINION & ORDER**

**NY DOE 1 et al.,**

                    **Defendants.**
--------------------------------

**JOHN G. KOELTL, District Judge:**

The plaintiff, Ralph Watson, brings this diversity action
for defamation and other common law torts under New York law
against Doe defendants related to alleged statements by the
defendants to the effect that the plaintiff had committed acts
of workplace sexual misconduct. The accusations allegedly led to
the plaintiff's termination from the advertising agency Crispin,
Porter & Bogusky ("CP+B"). Four defendants – Illinois Doe 1, NY
Doe 2, Doe 1, and NY Doe 3 – now move to dismiss the Amended
Complaint (the "Complaint"). For the reasons that follow, the
motions are **granted in part** and **denied in part**.

                              **I.**

In deciding a motion to dismiss pursuant to Rule 12(b)(6),
the allegations in the complaint are accepted as true, and all
reasonable inferences must be drawn in the plaintiff's favor.
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.
2007). The Court's function on a motion to dismiss is "not to

1

weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id. at 678. When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

II.

The following facts are taken from the Complaint, exhibits incorporated by reference in the Complaint, and documents of which this Court may take judicial notice. The facts are accepted as true for the purposes of deciding this motion.

Beginning in April 2014, the plaintiff was the Chief Creative Officer of the advertising agency, CP+B, and worked in Boulder, Colorado. Am. Compl. ¶ 20. The plaintiff alleges that, as early as October 2017, NY Doe 3 began compiling a private list of alleged male harassers in the advertising industry. Id. at ¶¶ 12, 14. Also in October 2017, NY Doe 3 allegedly helped form a group that called itself Diet Madison Avenue ("DMA") whose stated purpose was "exposing sexual harassment & discrimination in ad agencies since Oct 2017, cuz HR won't. Stories researched and confidential." Id. at ¶ 14. As part of these efforts, DMA set up Instagram, Facebook, Twitter, Snapchat, GoFundMe, Wordpress, and Gmail accounts which were allegedly jointly operated by twenty individual members including twelve people from the advertising industry, four Ph.D students, two professors, and two lawyers. Id. at ¶¶ 14-16. The Instagram account, from which many of the alleged defamatory statements at issue in this case were made, was allegedly operated by the twelve people working in the advertising industry. Id. at ¶ 14.

3

In October 2017, NY Doe 3 allegedly began providing the list of alleged harassers to the operators of the DMA accounts; the list included about 150 names which at the time did not include the plaintiff's name. Id. at ¶ 15. Beginning in December 2017, the group allegedly began publicly naming men that had been subjected to DMA's alleged internal vetting process in which a "name is only released after a minimum of 6 corroborated stories." Id. at ¶¶ 15, 18.[1] DMA would then publish certain names through its social media platforms allegedly labeling men as "serial predators and rapists, attaching pig noses to pictures of the men, and repeatedly calling for their immediate firing by their employers." Id. at ¶ 18. In January 2018, the DMA Instagram account published a list of thirteen people working in the advertising industry who were alleged sexual harassers which did not include the plaintiff's name. Id. at ¶ 19. On or around January 15, 2018, DMA actively began seeking anonymous complaints of sexual harassment at specific advertising agencies, including CP+B. Id.

On January 19, 2018, DMA published an Instagram story[2] viewable by its roughly 7,500 followers that stated: "Ralph

---

[1] The Complaint states that DMA began publicly posting in "late December 2018," which appears to be a typo and should read "late December 2017" in order for the timeline of events laid out in the Complaint to make sense.

[2] Instagram Stories is a feature by which a message or photo can be viewed by followers for a period of 24 hours, after which the Story disappears. Am. Compl. ¶ 22.

4

Watson. The women that you targeted & groomed (like all predators do), because they were young & just starting out their careers . . . the women that you assumed would stay quiet are stronger than you ever gave them credit for. And their voices have created a timeline. Going back years. Corroborated stories. Spanning across multiple agencies. And even continents." Id. at ¶ 22.

Immediately following the publication of this statement on Instagram on January 19, 2018, the plaintiff contacted CP+B's human resources director in order to inquire about the source of the rumors and to assure CP+B that there was no credible evidence of sexual harassment by the plaintiff. Id. at ¶ 24. On January 25, 2018, CP+B held a "Town Hall meeting" to address the various issues raised by virtue of the publication of the January 19, 2018 Instagram story. Id. at ¶ 25. Immediately following the Town Hall meeting, at which CP+B allegedly stated that there were no credible claims of sexual harassment and that no one would be fired over the rumors, DMA published the following message by means of an Instagram Story: "Apparently during the @cpbgroup townhall today, they claimed to support the Me Too campaign . . . Are they letting go of Ralph AKA the unrepentant serial predator?" Id. at ¶¶ 26-27. On the same day, January 25, 2018, DMA allegedly published an additional post stating as follows: "FYI – HR has all the reports. The things

stated aren't rumors. They literally have every single report . . . In other words they are lying . . . So yeah, keep digging a bigger hole guys . . . clearly nobody has learned a lesson." Id. at ¶¶ 28-29.

Sometime prior to February 2, 2018, NY Doe 2 lodged a complaint with the CB+P human resources department alleging that the plaintiff had sexually harassed her when she was employed at CB+P. Id. at ¶ 38. The plaintiff alleges that NY Doe 2's statement was made to the human resources department in retaliation for an incident that occurred some years before when the plaintiff had allegedly placed NY Doe 2 on probation for unsatisfactory job performance after her "unwanted and unreturned advance on Plaintiff," including an unexpected and nonconsensual kiss. Id. at ¶ 39. In October 2018, CP+B allegedly provided the plaintiff's attorney with the contents of NY Doe 2's unsworn statement. Id. at ¶ 38. The plaintiff alleged that NY Doe 2 made the statements even though the statements were categorically false. Id. at ¶ 40.

On February 2, 2018, CB+P terminated the plaintiff, allegedly for cause; the plaintiff claims he had been "an exemplary performer during his entire tenure with the agency and [had] no prior complaints of sexual impropriety lodged against him at any time." Id. at ¶ 30. The plaintiff's termination came after an alleged three-or-four-day investigation in which the

6

plaintiff was allegedly never presented with the identities of his accusers, any specific instances of misconduct, or any supporting evidence. <u>Id.</u> at ¶ 34.

Shortly after the plaintiff's termination, DMA posted the following by means of an Instagram story: "Ralph Watson, Chief Creative Officer of @cpbgroup has been fired. To the nine particular women who shared painful stories with us. We support you all so much. You are incredibly strong & brave. None of you deserved what happened to you." <u>Id.</u> at ¶ 41; Dorny Decl., Ex. C. Around this time, Illinois Doe 1, an alleged member of DMA, published the "nine particular women" post as a public Facebook comment on another public Facebook account's post that had shared an Adweek news article reporting the plaintiff's termination. Am. Compl. ¶ 42. Specifically, in response to comments made on the post of the Adweek article in which various commenters speculated on the plaintiff's termination – "I worked for Ralph at Goodby. I'd be surprised if it was sexual harassment," "I worked with him as well and agree," and "This would be a terrible time to get fired quietly for creative differences" – Illinois Doe 1 interjected that "9 women reported him." Dorny Decl., Ex. C. Shortly thereafter, Illinois Doe 1 posted a screenshot of DMA's "nine particular women" Instagram story. <u>Id.</u> Around the same time, several private text messages between women assisting DMA allegedly discussed the plaintiff's

termination, stated that DMA was responsible, and stated that "NY Doe 3 must be dancing." Am. Compl. ¶ 42.

On May 22, 2018, the plaintiff sued DMA and anonymous individuals, who are not defendants in this case, in Los Angeles, California Superior Court, Case No. BC 707278, for defamation and related torts. Id. at ¶ 43; Leinwand Decl., Ex. F.[3] The next day, the plaintiff made a public statement in the form of an open letter published through his attorney addressing the allegations against him. Leinwand Decl., Ex. G. The California lawsuit and the open letter were picked up by news outlets on May 24, 2018 and the following weeks. Leinwand Decl., Exs. H, K, L, M.[4] In response to the filing of the California

---

[3] The plaintiff sought discovery in the California litigation from Facebook, Instagram, and Gmail regarding the identities of those behind DMA. The court granted a limited subpoena to obtain identifying information of those who actually published the January Instagram stories. In addition to the California action, the plaintiff has also filed a case in federal court in the District of Colorado on June 29, 2018 against CP+B and some of its officers for a variety of claims related to the plaintiff's termination including breach of contract, age discrimination, reverse sex discrimination, defamation, and other related torts. Watson v. Crispin Porter & Bogusky LLC, No. 18-cv-1658 (D. Colo.). On August 22, 2018, CP+B filed a case in the Southern District of New York against the plaintiff seeking to compel arbitration of the Colorado claims and to dismiss or stay the Colorado litigation. On October 10, 2019, Judge Broderick granted the motion to compel arbitration, and denied the motion to dismiss or stay the Colorado litigation. Crispin Porter & Bogusky LLC v. Watson, No. 18-mc-384, 2019 WL 5079916, at *5 (S.D.N.Y. Oct. 10, 2019). On November 18, 2019, the Colorado court enforced Judge Broderick's order and granted the defendants' motion to dismiss in that case. Watson, No. 18-cv-1658, Dkt. No. 36 (D. Colo. Nov. 18, 2019). That case is now pending before an arbitrator.

[4] In a defamation case, "the Court can take judicial notice of the existence of articles written by and about [the plaintiff], though not for the truth of the matter asserted in the documents themselves." Biro v. Conde Nast, 963 F. Supp. 2d 255, 271 n.9 (S.D.N.Y. 2013), aff'd, 807 F.3d 541 (2d Cir. 2015) & 622 F. App'x 67 (2d Cir. 2015).

lawsuit, NY Doe 2 allegedly posted the following on May 24, 2018 from the DMA account: "Gloves are off. I don't care if the industry knows he raped me." Am. Compl. ¶ 44. Then, on May 25, 2018, DMA's private accounts were turned off, although the Instagram account reappeared shortly thereafter as a public account with fewer followers than before. Id. at ¶ 46.

Allegedly in response to the Los Angeles action, on May 25, 2018, DMA started a GoFundMe paged titled "Diet Madison Avenue Legal Defense Fund" with the stated purpose of raising "funds to defend our team members and volunteers against false accusations." Id. at ¶ 47. On that same day, Illinois Doe 1 shared the GoFundMe account on social media and commented that "@DietMadisonAvenue needs our help to fight Ralph Watson's defamation law suit. All donations can be made anonymously. I figure it's the next best thing to giving money directly to his victims." Id. at ¶ 48; Dorny Decl., Ex. D.

On January 17, 2019, the plaintiff filed this action. The plaintiff brings a cause of action for defamation against all defendants based on the series of statements preceding and following the plaintiff's termination. The plaintiff further brings causes of action for intentional infliction of emotional distress, tortious interference with contract, and both tortious and negligent interference with prospective economic advantage based on the same factual allegations that underly the

defamation claims. Finally, the plaintiff alleges that the defendants were part of a civil conspiracy by which all the defendants are jointly and severally liable for damages incurred by the plaintiff as a result of all conduct alleged in the Complaint.

### III.

### A.

"The elements of a cause of action for defamation are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation per se." Kamchi v. Weissman, 1 N.Y.S.3d 169, 180 (App Div. 2014) (internal quotation marks omitted). In order to state a claim for defamation, a complaint must "identify adequately who actually made the allegedly [defamatory] statements, when they were made and to whom they were communicated." Mahmud v. Bon Secours Charity Health Sys., 289 F. Supp. 2d 466, 476 (S.D.N.Y. 2003). At the motion to dismiss stage, a complaint "does not necessarily rise or fall in its entirety" and "the Court may dismiss the claims based on the nonactionable statements and allow the claims based on the actionable statements to go forward." Biro v. Conde Nast, 883 F. Supp. 2d 441, 457 (S.D.N.Y. 2012). "Whether particular words are defamatory presents a legal question to be resolved by the court

10

in the first instance." <u>Germain v. M&T Bank Corp.</u>, 111 F. Supp.
3d 506, 534 (S.D.N.Y. 2015) (internal quotation marks and
alterations omitted).

In this case, the plaintiff alleges the following
defamatory statements: (1) the January 19, 2018 Instagram story;
(2) the first January 25, 2018 Instagram story, "Apparently
during the @cpbgroup townhall today, they claimed to support the
Me Too campaign . . . Are they letting go of Ralph AKA the
unrepentant serial predator?"; (3) the second January 25, 2018
Instagram story, "FYI – HR has all the reports. The things
stated aren't rumors. They literally have every single
report . . . In other words they are lying . . . So yeah, keep
digging a bigger hole guys . . . clearly nobody has learned a
lesson"; (4) the February 2, 2018 Facebook comments posted by
Illinois Doe 1; (5) the May 24, 2018 Instagram story allegedly
posted by NY Doe 2; (6) the May 25, 2018 post made by Illinois
Doe 1 in connection with the GoFundMe page; and (7) the
complaint allegedly lodged by NY Doe 2 with CB+P human resources
prior to the plaintiff's termination. Each of the four moving
defendants' defamation liability will be addressed in turn.

**1.**

The allegations with respect to Illinois Doe 1 are as
follows: Illinois Doe 1 was a member of DMA; On February 2, 2018
Illinois Doe 1 made a comment that "9 women reported" the

plaintiff and also posted a screenshot of the "nine particular women" Instagram story in connection with a discussion in the comments of a Facebook post about the reason for the plaintiff's termination; and on May 25, 2018, Illinois Doe 1 shared DMA's GoFundMe account with a comment that included the phrase "I figure [donating] is the next best thing to giving money directly to his victims."

Illinois Doe 1 argues that these comments are "republications" of the comments of others and that therefore she cannot have liability for defamation for merely republishing the statements of others. However, under New York law, "[a] speaker who repeats another's defamatory statements is not made immune from liability for defamation merely because another person previously made the same demeaning claim." Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC, 194 F. Supp. 3d 263, 287 (S.D.N.Y. 2016) (collecting cases); see also Cianci v. New Times Publ'g Co., 639 F.2d 54, 60-61 (2d Cir. 1980) (discussing the "black-letter rule that one who republishes a libel is subject to liability just as if he had published it originally, even though he attributes the libelous statement to the original publisher, and even though he expressly disavows

the truth of the statement.") (quotation marks and citation omitted).[5]

Illinois Doe 1 is therefore potentially liable for her statements, notwithstanding the fact that some of the statements, specifically the screenshot of the Instagram story on February 2, 2018 and the GoFundMe account shared on May 25, 2018, are alleged to be republications of the statements of others.

The plaintiff can state a claim for defamation if Illinois Doe 1's statements "are potentially defamatory," meaning that they "tend to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." Qureshi v. St. Barnabas Hosp. Ctr., 430 F. Supp. 2d 279, 287 (S.D.N.Y. 2006). In making the determination whether a statement is actionable, the Court must "look to the over-all context in which the assertions were made

---

[5] The cases cited by Illinois Doe 1 for the proposition that Illinois Doe 1 should not be liable for these "republications" concern New York's "single publication" rule, which provides that the statute of limitations for a claim of defamation begins to run when a finished product is released by the publisher even if the item is sold in multiple copies, in multiple places, and at various times. See Biro v. Conde Nast, No. 154663/2017, 2018 WL 2938361 (Sup. Ct. 2018); Martin v. Daily News L.P., 990 N.Y.S.2d 473 (App. Div. 2014); Haefner v. New York Media, LLC, 918 N.Y.S.2d 103 (App. Div. 2011). The single publication rule has no application in this case because there is no dispute that the case was filed within the statute of limitations period on January 17, 2019. See C.P.L.R. § 215(3) (statute of limitations for libel or slander is one year). At the argument of the current motions, Illinois Doe 1 disclaimed any reliance on the "single publication" rule.

and determine on that basis 'whether the reasonable reader would
have believed that the challenged statements were conveying
facts about the libel plaintiff.'" See Brian v. Richardson, 660
N.E.2d 1126, 1131 (N.Y. 1995) (quoting Immuno AG v. Moor-
Jankowski, 567 N.E.2d 1270, 1281 (N.Y. 1991)). "Courts are not
to render statements actionable by giving them a strained or
artificial construction, nor are they to interpret potentially
defamatory statements in their mildest and most inoffensive
sense to hold them nonlibelous." Qureshi, 430 F. Supp. 2d at 287
(quotation marks and internal citations omitted).

The plaintiff does not allege that the Facebook comments
made by Illinois Doe 1 on February 2, 2018 are literally false
because it was untrue that nine women "reported" the plaintiff.
Rather, the plaintiff argues that the Facebook comments were
false because they conveyed the false inference that the
plaintiff had sexually abused nine women who reported that
abuse. Statements may be actionable where "the language of the
communication as a whole can be reasonably read both to impart a
defamatory inference and to affirmatively suggest that the
author intended or endorsed that inference." Tannerite Sports,
LLC v. NBCUniversal Media LLC, 135 F. Supp. 3d 219, 232
(S.D.N.Y. 2015) (quoting Stepanov v. Dow Jones & Co., 987
N.Y.S.2d 37, 38 (App. Div. 2014)), aff'd, 864 F.3d 236 (2d Cir.
2017).

In the context of the communication as a whole, Illinois Doe 1's Facebook comments on February 2, 2018 can reasonably be read to suggest that Illinois Doe 1 intended to endorse the alleged defamatory statement that the plaintiff sexually assaulted women. Illinois Doe 1 made two comments in response to speculation by others on Facebook that the plaintiff was not terminated for reasons related to sexual harassment. Illinois Doe 1's responsive statements that "9 women reported him" and the follow-up screenshot of the Instagram post celebrating the "nine particular women who shared painful stories with us" are defamatory because they tend to give a reader the impression that the plaintiff sexually assaulted women and that Illinois Doe 1 endorsed that impression. See Partridge v. State, 100 N.Y.S.3d 730, 737 (App. Div. 2019) (finding defamation by implication when the placement of a photo by State Police of the claimant imparted the viewer with a reasonable belief that the claimant had committed sex crimes against children and that the State Police endorsed that belief).

The motion to dismiss the claim for defamation against Illinois Doe 1 with respect to the February 2, 2018 Facebook statements is therefore **denied.**

Illinois Doe 1's GoFundMe post on May 25, 2018, specifically the statement that "I figured [donating is] the next best thing to giving money directly to his victims," is

15

also susceptible of a defamatory meaning because it asserts that the plaintiff had "victims." "When considered in the context of the entire communication and of the circumstances in which they were spoken, the statements may be reasonably understood as assertions of provable fact about" the plaintiff, namely that he had "victims." Greenberg v. Spitzer, 62 N.Y.S.3d 372, 388 (App. Div. 2017). Thus, the plaintiff has alleged sufficiently that Illinois Doe 1 defamed him on May 25, 2018 with her comment in connection with the GoFundMe page.

The motion to dismiss the defamation claims against Illinois Doe 1 with respect to her February 2, 2018 statements and the May 25, 2018 statement is therefore **denied.**

There is, however, no specific allegation that Illinois Doe 1 was personally involved in any of the other alleged defamatory statements on January 19, 2018, on January 25, 2018, or the ones attributed to NY Doe 2. See Mahmud, 289 F. Supp. 2d at 476. Therefore, Illinois Doe 1's motion to dismiss the defamation claim with respect to any other statements is **granted without prejudice.**

### 2.

The allegations supporting a claim for defamation with respect to NY Doe 2 are as follows: Around September 2016, the plaintiff complained to CP+B human resources and Head of Talent that NY Doe 2 had an unsatisfactory job performance and had made

16

an unwanted advance on the plaintiff; around February 2017, the plaintiff complained to human resources and Head of Talent that NY Doe 2 had tried to kiss the plaintiff unexpectedly without his consent; at some time prior to the plaintiff's termination, NY Doe 2 made a statement to the CB+P human resources department that the plaintiff had sexually assaulted her; at some point after the plaintiff's termination, CB+P prepared an unsworn affidavit based on NY Doe 2's complaint and shared it with the plaintiff's counsel in October 2018; and on May 24, 2018, NY Doe 2 allegedly made a statement that was reproduced on the DMA Instagram that "Gloves are off. I don't care if the industry knows he raped me." The plaintiff alleges that NY Doe 2's statements were knowingly false and made in retaliation for the plaintiff's prior complaints against NY Doe 2.

If proven to be false, NY Doe 2's two statements accusing the plaintiff of raping her, made to the CP+B human resources department and made on Instagram to all of DMA's followers on May 24, 2018, would constitute two separate counts of defamation per se. See Franco v. Diaz, 51 F. Supp. 3d 235, 244-45 (E.D.N.Y. 2014) ("The accusations of rape and assault made by plaintiff [in the counterclaim] charge Julio and Ada with serious crimes, and therefore defendants need not plead special damages.").

NY Doe 2 does not dispute that these statements are defamatory but argues that the plaintiff has not pleaded that NY

17

Doe 2 made the statements with the requisite degree of fault.
First, NY Doe 2 argues that the plaintiff is a limited purpose
public figure by virtue of injecting himself into the news on
May 23, 2018 through his public statements and that as a result
the plaintiff must allege that NY Doe 2 made her statements with
actual or constitutional malice.[6] Second, NY Doe 2 argues that
she had a qualified privilege to make her statements because NY
Doe 2 made them to persons having a common interest in the
subject matter of the statements. As a result, NY Doe 2 argues
that the plaintiff must allege that NY Doe 2 made the statements
with common law malice.[7] Finally, NY Doe 2 argues that her
statements about the plaintiff concern a private figure involved
in a public controversy and that as a result the plaintiff must
allege that NY Doe 2 was grossly irresponsible in making the
statements.[8]

---

[6] False statements about a public official or a public figure, including a
limited purpose public figure, are not actionable unless made with knowledge
of their falsity or serious subjective doubts about their falsity, a state of
mind that is sometimes referred to as "constitutional malice" or "actual
malice." See Liberman v. Gelstein, 605 N.E.2d 344, 349-50 (N.Y.1992)
(discussing constitutional or actual malice).

[7] False statements made to others sharing a common interest in the subject
matter of the communications are qualifiedly privileged and are not
actionable unless the defendant was motivated in making the alleged
defamatory statements by spite or ill-will, a state of mind that is referred
to as common law malice. See Foster v. Churchill, 665 N.E.2d 153, 157 (N.Y.
1996).

[8] When the contents of an alleged defamatory communication are related to
matters warranting public exposition, the plaintiff can recover only if the
defamer "acted in a grossly irresponsible manner without due consideration
for the standards of information gathering and dissemination ordinarily
followed by responsible parties." Chapadeau v. Utica Observer-Dispatch, 341
N.E.2d 569, 571 (N.Y. 1975).

At this time, there is no need to address whether the plaintiff is a limited public purpose figure, whether NY Doe 2 was qualifiedly privileged under the common interest privilege to make her statements, or whether NY Doe 2 was speaking on a matter of public controversy when she made her statements. Even assuming that the plaintiff is required to allege that NY Doe 2 made her statements with the requisite degree of fault, the plaintiff has done so.

The allegations in the Complaint are sufficient to infer that NY Doe 2 made her statements with constitutional or actual malice because the plaintiff alleges that NY Doe 2 made "false statements with knowledge of their falsity" when she accused him of raping her, both to the CB+P human resources department and in the May 24, 2018 Instagram story. Albert v. Loksen, 239 F.3d 256, 273 (2d Cir. 2001). This is a case where the alleged false statements were allegedly based on the direct knowledge of the alleged defamer that the plaintiff alleges is false. A fair inference from the Complaint is that NY Doe 2 knew that the plaintiff did not rape her but falsely made that accusation. Those circumstances are sufficient to infer actual or constitutional malice on the part of NY Doe 2 because she is alleged to have firsthand knowledge of whether the plaintiff did or did not rape her. See Biro v. Conde Nast, 807 F.3d 541, 545 (2d Cir. 2015) ("[W]hether actual malice can plausibly be

19

inferred will depend on the facts and circumstances of each case."). Whether the alleged defamatory comments attributed to NY Doe 2 are actually true cannot be decided on a motion to dismiss. The plaintiff has alleged sufficiently that NY Doe 2 made the defamatory statements with constitutional or actual malice.

The Complaint also contains sufficient allegations to infer that NY Doe 2 made her comments with common law malice. The plaintiff alleges that NY Doe 2 falsely accused the plaintiff of raping her, in retaliation for the plaintiff's previous complaints and initiation of disciplinary actions against NY Doe 2. The circumstances under which NY Doe 2 allegedly made her statements give rise to the plausible inference that NY Doe 2 made her statements with common law malice, that is "with a desire to injure" the plaintiff and as a result of "personal spite or ill will, or culpable recklessness or negligence." Herlihy v. Metro. Museum of Art, 633 N.Y.S.2d 107, 112 (App. Div. 1995) (internal quotation marks omitted).

Finally, the plaintiff has alleged sufficiently that NY Doe 2 was grossly irresponsible in publishing the defamatory statements for similar reasons that the plaintiff alleges sufficiently that NY Doe 2 made the statements with actual or constitutional malice; the plaintiff alleges that NY Doe 2 made the statements with full awareness of their falsity. See

20

Konikoff v. Prudential Ins. Co. of Am., 234 F.3d 92, 104 (2d Cir. 2000) ("Ordinarily a communication made with 'actual malice' is also made in violation of the Chapadeau standard because ordinarily it is grossly irresponsible to make a defamatory statement knowing that it is false or while highly aware that it is probably false."). This is not a case in which NY Doe 2 is a media defendant and could be found not to be grossly irresponsible, although acting with actual or constitutional malice, because she made the statement with "due consideration of the standards of information gathering and dissemination ordinarily followed by responsible parties under Chapadeau." Id. At the motion to dismiss stage, the plaintiff has alleged sufficiently that NY Doe 2 was grossly irresponsible in making the two defamatory statements by virtue of the fact that the plaintiff alleges NY Doe 2 made the statement with full knowledge of their falsity. See Goldman v. Reddington, -- F. Supp. 3d --, 2019 WL 4736803, at *8 (E.D.N.Y. Sept. 27, 2019) (finding allegations that the defendant knowingly and intentionally made false accusations that the plaintiff was a rapist satisfied the gross irresponsibility standard at the motion to dismiss stage).

Therefore, NY Doe 2's motion to dismiss the defamation claim against her with respect to the complaint made to the CP+B

human resources department and on May 24, 2018 on Instagram is **denied**.

There is, however, no specific allegation that NY Doe 2 was personally involved in other potentially defamatory statements, namely the statements made on January 19 and January 25, 2018, and the one attributed to Illinois Doe 1. See Mahmud, 289 F. Supp. 2d at 476. Therefore, NY Doe 2's motion to dismiss the defamation claim with respect to any other statements is **granted without prejudice**.

**3.**

The allegations in support of a claim for defamation against Doe 1 consist of the following: Doe 1, who worked, until sometime just before the filing of the Amended Complaint, for another advertising agency, Droga5, "provided assistance to DMA, including connecting DMA with student researchers at NYU." Am. Compl. ¶ 17. There is no allegation that Doe 1 actually made the allegedly defamatory statements, namely the Instagram Stories on January 19 and January 25, 2018, as well as the ones attributed to Illinois Doe 1 and NY Doe 2. See Mahmud, 289 F. Supp. 2d at 476. Therefore, Doe 1 has no direct liability for defamation and the motion to dismiss the claim for defamation against Doe 1 is **granted without prejudice**.

**4.**

The allegations in support of a claim for defamation against NY Doe 3 consist of the following: NY Doe 3 compiled the original list of alleged male harassers containing approximately 150 names beginning in October 2017, but notably not the plaintiff's name; NY Doe 3 was instrumental in forming DMA and eventually gave her list to the DMA defendants in this case, which again did not include the plaintiff's name; and after the plaintiff was terminated, text messages were allegedly sent between women assisting DMA that said, in reference to the plaintiff's termination, that "NY Doe 3 must be dancing." There is no allegation that NY Doe 3 actually made the allegedly defamatory statements, either on January 19 and January 25, 2018 or the ones attributed to Illinois Doe 1 and NY Doe 2. See Mahmud, 289 F. Supp. 2d at 476. Therefore, there is no plausible allegation that NY Doe 3 has direct liability for defamation and NY Doe 3's motion to dismiss the defamation claim is **granted without prejudice**.[9]

---

[9] NY Doe 3 also argues that the defamation claim, as well as all other claims in this case, should be dismissed against her because she is shielded by Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1). However, it is unnecessary to reach this issue because the claims are dismissed against NY Doe 3 on the grounds that she was not alleged to be directly involved in any of the alleged defamatory statements.

**B.**

The allegations giving rise to the claim for intentional infliction of emotional distress consist of the same allegations that give rise to the claims for defamation. Therefore, the intentional infliction of emotional distress claims should be **dismissed with prejudice** as to all defendants because they are duplicative of the defamation claims. See Brancaleone v. Mesagna, 736 N.Y.S.2d 685, 687 (App. Div. 2002); Ghaly v. Mardiros, 611 N.Y.S.2d 582, 583 (App. Div. 1994).

**C.**

To state a claim for tortious interference with contract, a plaintiff must allege "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." Kirch v. Liberty Media Grp., 449 F.3d 388, 401 (2d Cir. 2006) (quotation marks omitted).

For the same reasons that the motions to dismiss the defamation claims against Doe 1 and NY Doe 3 are granted, the motions to dismiss the tortious interference with contract claims against those two defendants are **granted without prejudice** because there is no allegation that those defendants intentionally procured CP+B's breach of its contract with the

plaintiff. See Lama Holding Co. v. Smith Barney Inc., 668 N.E.2d 1370, 1376 (N.Y. 1996).

The plaintiff has also failed to allege a claim for tortious interference with contract against Illinois Doe 1 because the statements attributable to her – the republication of the "nine women" post on February 2, 2018 and of the GoFundMe page with the corresponding comment on May 25, 2018 – postdated the alleged breach of contract that occurred when CB+P terminated the plaintiff on February 2, 2018.[10] Therefore, Illinois Doe 1 cannot be liable for tortious interference for her statements because an action that postdates a breach cannot be a but-for cause of the breach. See Burrowes v. Combs, 808 N.Y.S.2d 50, 53 (App. Div. 2006). The motion to dismiss the tortious interference with contract claim against Illinois Doe 1 is **granted without prejudice.**

This leaves the claim against NY Doe 2. The plaintiff has alleged sufficiently that NY Doe 2 was aware of a valid contract between CP+B and the plaintiff and that she made a statement to the CP+B human resources department with the intention of bringing about the plaintiff's termination. The plaintiff has alleged adequately that NY Doe 2 tortiously interfered with a

---

[10] A claim for tortious interference with contract based on statements that are alleged to be defamatory is analyzed independent of the claim for defamation. See, e.g., Kirch, 449 F.3d at 398-402.

contract when she made the defamatory statement to the CB+P
human resources department that allegedly led to the plaintiff's
termination. Therefore, the motion to dismiss the tortious
interference with contract claim against NY Doe 2 is **denied.**

### D.

The tort of intentional interference with prospective
economic advantage requires a plaintiff to allege "(1) the
existence of a profitable business relationship; (2) the
tortfeasor's interference with that relationship; (3) the
tortfeasor's use of dishonest, unfair, improper, or wrongful
means; and (4) damage to the business relationship." Lader v.
Delgado, 941 F. Supp. 2d 267, 272 (E.D.N.Y. 2013).

In this case, the plaintiff has failed to allege
sufficiently that any defendant directed any conduct at a third-
party that the plaintiff allegedly would have contracted with in
the future. See Carvel Corp. v. Noonan, 818 N.E.2d 1100, 1104-05
(N.Y. 2004). The lack of any allegations that the defendants
directed conduct at prospect third-party contracting parties
means that the motions to dismiss the tortious interference with
prospective economic advantage claim is **granted without
prejudice** as to all defendants.

### E.

The motions to dismiss the claims for negligent
interference with prospective economic advantage are **granted**

**with prejudice** because in New York there is no cause of action for negligent interference with prospective economic advantage. See Lokai Holdings LLC v. Twin Tiger USA LLC, 306 F. Supp. 3d 629, 643 (S.D.N.Y. 2018); R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp., No. 17-cv-441, 2018 WL 1010210, at *3 (N.D.N.Y. Feb. 20, 2018) (collecting cases), appeal docketed, (2d Cir. July 10, 2018) (No. 18-2018).

## IV.

The plaintiffs also allege a civil conspiracy between the defendants making them jointly and severally liable for all tortious conduct. "It is textbook law that New York does not recognize an independent tort of conspiracy. If an underlying actionable tort is established, however, the plaintiff may plead the existence of a conspiracy in order to demonstrate that each defendant's conduct was part of a common scheme." Gym Door Repairs, Inc. v. Young Equip. Sales, Inc., 206 F. Supp. 3d 869, 913 (S.D.N.Y. 2016) (internal quotation marks and alteration omitted). The plaintiff

> must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury.

World Wrestling Fed'n Entm't Inc. v. Bozell, 142 F. Supp. 2d 514, 532 (S.D.N.Y. 2001). In order to be liable for the acts of

others under a conspiracy theory, the defendant must "know the wrongful nature of the primary actor's conduct." Pittman v. Grayson, 149 F.3d 111, 123 (2d Cir. 1998) (quotation marks omitted). Because some statements may be actionable while others may not, see Biro, 883 F. Supp. 2d at 457, and because each defamatory statement and each act of publication gives rise to a distinct cause of action, see Barber v. Daly, 586 N.Y.S.2d 398, 400 (App. Div. 1992); Ewig v. Taub, 56 N.Y.S.2d 122, 123-24 (Sup. Ct. 1945), the liability of each defendant under a conspiracy theory must be alleged separately as to each defamatory statement and as to each separate tort.

    In this case, the only underlying tortious acts sufficiently alleged are two acts of defamation by Illinois Doe 1 corresponding to the February 2, 2018 Facebook comments and the May 25, 2018 GoFundMe post, two acts of defamation by NY Doe 2 corresponding to the complaint made to the CB+P human resources department and the Instagram post on May 25, 2018, and one act of tortious interference with contract by NY Doe 2 corresponding to her pre-termination statement to the CB+P human resources department. Only these tortious acts can form the object of a civil conspiracy because there are insufficient allegations to draw a plausible inference that any of the defendants conspired with unknown others to commit any other

28

tort or to make any other alleged defamatory statements such as the statements on January 19 and January 25, 2018.

However, there are no allegations in the Complaint that any defendant provided substantial encouragement to Illinois Doe 1 or NY Doe 2 on the specific days they made the defamatory statements directly attributable to them. There are no specific allegations that any defendants entered into any agreement with Illinois Doe 1 or NY Doe 2 to make the statements they made or had any prior knowledge that they would make those specific statements. The allegations that Doe 1 provided assistance to DMA by connecting DMA with student researchers at NYU and that NY Doe 3 compiled an original list of names and helped form DMA behind the scenes are insufficient to raise a plausible inference that Doe 1 or NY Doe 3 "had an agreement of understanding" with NY Doe 2 or Illinois Doe 1 when the latter two committed alleged tortious acts. Nat'l Westminster Bank USA v. Weksel, 511 N.Y.S.2d 626, 629 (App. Div. 1987). Further, there are no allegations that any other defendant committed a specific overt act with respect to the defamatory statements made by NY Doe 2 and Illinois Doe 1. See Ritchie Capital Mgmt., L.L.C. v. Gen. Elec. Capital Corp., 121 F. Supp. 3d 321, 339-40 (S.D.N.Y. 2015) (discussing the overt act requirement), aff'd, 821 F.3d 349 (2d Cir. 2016). There are therefore insufficient allegations to state a conspiracy. See Ulrich v. Moody's Corp.,

No. 13-cv-8, 2017 WL 1232709, at *19 (S.D.N.Y. Mar. 31, 2017) (finding insufficient allegations of conspiracy where there were no allegations of an agreement to commit a tortious act or that the defendant intentionally participated in a tortious plan), aff'd, 721 F. App'x 17 (2d Cir. 2018).

As a final point, allegations of mere membership in the DMA, which allegedly consisted of at least twelve persons, absent allegations that any particular member exercised control over the accounts on the days in which alleged defamatory statements issued from the accounts or that the member intended those statements to be made, do not give rise to a plausible inference that any member entered into an agreement to make the statements not directly attributable to that member and that there was some specific overt act in furtherance of that agreement. See MetLife Inv'rs USA Ins. Co. v. Zeidman, 734 F. Supp. 2d 304, 313 (E.D.N.Y. 2010) (conspiracy claim fails without facts showing an agreement to commit a particular act or an overt act in furtherance), aff'd sub nom., MetLife Inv'rs USA Ins. Co. v. Pratt, 442 F. App'x 589 (2d Cir. 2011).

The claims for conspiracy are therefore **dismissed without prejudice.**

## V.

The plaintiff also requests additional discovery in order to learn the identities of the publishers of some of the alleged

defamatory statements. The conclusory and threadbare allegations against the defendants, particularly against NY Doe 3 and Doe 1, that they were responsible for certain statements, does not "unlock the doors of discovery" for the plaintiff to undertake a fishing expedition. See Iqbal, 556 U.S. at 678-79. To the extent that the plaintiff wishes to conduct more discovery, those are matters to be taken up with the California court that has been overseeing a lengthy discovery process for almost two years.

### CONCLUSION

The Court has considered all the arguments of the parties. To the extent not specifically addressed, the arguments are either moot or without merit. The motions to dismiss are **granted in part** and **denied in part** as discussed above. If the plaintiff seeks to file an amended complaint, the plaintiff should file a motion to file such a complaint and explain how it cures any defects noted above. The Clerk is directed to close Docket Nos. 54, 57, 74, 79, 84, and 91.

**SO ORDERED.**

Dated:    **New York, New York**
          **February 11, 2020**           **/s/ John G. Koeltl**
                                      **John G. Koeltl**
                          **United States District Judge**