# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RALPH M. WATSON, an individual,<br><br>       Plaintiff,<br><br>  -against-<br><br>NY DOE 2, an individual; ILLINOIS DOE 1, an individual; DOE COMPANY, an unknown business entity; and DOES 2 through 100, whose true names and capacities are unknown,<br><br>       Defendants. | Case No. 1:19-cv-533-JGK-DCF |

## PLAINTIFF AND COUNTERCLAIM DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS DEFENDANT AND COUNTERCLAIMANT NY DOE 2'S COUNTERCLAIM

### (ECF 205)

Michael W. Ayotte
LAW OFFICES OF MICHAEL W. AYOTTE
2629 Manhattan Ave., Suite 144
Hermosa Beach, CA 90254
Telephone: (310) 343-1864
Email: mayotte@clientfirstlegalsolutions.com

Counsel for Plaintiff and Counterclaim Defendant
RALPH M. WATSON

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ………………………………………………………  1

STATEMENT OF RELEVANT FACTS ……………………………………………...  2

    A.    NY Doe 2's Counterclaim …………………………........................................  2

        1.    The Counterclaim Selectively Cites to Only Portions of the
Evidence Produced in Discovery and Mischaracterizes that
Evidence …………………………………………………………  2

        2.    The Objective Evidence that Clearly Establishes that Watson Did Not
Sexually Harass or Assault NY Doe 2………………………………..  3

            a.    The Alleged Finkel & Garf Incident………………………….  4

                i.    NY Doe 2's Version of Events………………………..  4

                ii.    The Objective Evidence that No Harassment Took
Place on the Finkel & Garf Night……………………..  4

            b.    The Alleged Rape………………………………………………...  6

                i.    NY Doe 2's Version of Events………………………..  6

                ii.    The Objective Evidence that NY Doe 2 was Not
Sexually Assaulted………………………………..  7

RELEVANT PROCEDURAL BACKGROUND………................................................  8

STANDARD OF REVIEW ……………………………………………………………...  9

    A.    Motion to Dismiss Pursuant to Rule 12(b)(6) …………………………….  9

    B.    Motion to Dismiss Pursuant to New York State Anti-SLAPP Law …………..  10

ARGUMENT ……………………………………………………………………………  11

    A.    NY Doe 2's Counterclaim Fails as a Matter of Law Because Watson's
Lawsuit Against Her has a Substantial Basis in Fact and Law………………..  11

        1.    The Applicable Actual Malice Standard for False Accusations of
Rape……………………………………………………………………  12

2.    Watson's Own Sworn Denials that He Did Not Sexually Harass or Assault NY Doe 2 Provide a Substantial Basis in Fact and Law Alone…………………………………………………………………   13

3.    The Counterclaim Fails to State a Plausible Claim Because Watson Has an Obvious Alternative Explanation for Bringing His Action Against NY Doe 2……………………………………………………   13

4.    The Counterclaim Ignores or Misstates the Substantial Evidence that NY Doe 2 Fabricated Her Allegations Against Watson…………   15

a.    All the Objective Evidence Demonstrates that Watson Did Not Sexually Assault NY Doe 2 in April 2017………………   15

b.    An Unbiased Eyewitness Has Provided Sworn Testimony Directly Contradicting NY Doe 2's Account of the Finkel & Garf Night……………………………………………………   17

c.    Many of the Allegations in NY Doe 2's Counterclaim are Irrelevant and Should be Disregarded by the Court………   18

B.    NY Doe 2's Counterclaim is an Impermissible SLAPP and Should be Dismissed Because it was Brought Without a Substantial Basis in Fact and Law………………………………………………………………………   18

C.    Watson is Entitled to his Attorney's Fees, Costs and Other Damages …….   19

CONCLUSION…………………………………………………………………………..   20

# TABLE OF AUTHORITIES

**Cases:** **Page:**

*Albert v. Loksen*,
  239 F.3d 256 (2d Cir. 2001) …………………………………………… 11

*Allen v. WestPoint-Pepperell, Inc.*,
  945 F.2d 40 (2d Cir. 1991) ………………………………………….. 9

*Ashcroft v. Iqbal ("Iqbal")*,
  556 U.S. 662 (2009) ………………………………………………… 2, 9, 13, 14

*ATSI Comms., Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ………………………………………….. 9

*Bell Atlantic Corp. v. Twombly ("Twombly")*,
  550 U.S. 544 (2007) ……………………………………………….. 2, 9, 13, 14

*Biro v. Conde Nast*,
  807 F.3d 541 (2d Cir. 2015) …………………………………………. 12

*Goldman v. Reddington*,
  2019 WL 4736803 (E.D.N.Y. Sept. 27, 2019) ……………………………. 12

*I. Meyer Pincus Assoc. v. Oppenheimer Co.*,
  936 F.2d 759 (2d Cir. 1991) ………………………………………... 10, 15

*In re J.P. Jeanneret Associates, Inc.*,
  769 F.Supp.2d 340 (S.D.N.Y. 2011) ……………………………………….. 10, 15

*Kramer v. Pollock-Krasner Foundation*,
  890 F.Supp. 250 (S.D.N.Y. 1995) …………………………………………. 14

*Liberman v. Gelstein*,
  80 N.Y.2d 429 (N.Y. 1992) ……………………………………………………. 12

*New York Times Co. v. Sullivan*,
  (1964) 376 U.S. 254 ………………………………………………………... 12

*Palin v. New York Times Co.*,
  510 F.Supp.3d 21, 25, 2020 WL 7711593, (JSR) (S.D.N.Y. Dec. 29, 2020) …… 10, 19

*Project Veritas v. N.Y. Times Co.*,
  Index No. 63921/2020 (N.Y. Sup. Ct. 2021) ……………………….............. 10, 11

*Rolon v. Hennenman,*
    517 F.3d 143 (2d Cir. 2008) …………………………………………………………...     9, 13

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.,*
    75 F.3d 801 (2d Cir. 1996) ………………………………………………………….     9

**Statutes:**

CPLR 3211(g) ……………………………………………………………………………     10, 11, 20

Federal Rule of Civil Procedure 12(b)(6) …………………………………….................     9

N.Y. Civ. Rights Law §§ 70-a ………………………………………………………...     19

N.Y. Civ. Rights Law §§ 70-a.1(a) …………………………………………………....     19

N.Y. Civil Rights Law § 76-a.1 …………………………………………………….....     19

N.Y. Civ. Rights Law § 76-a.2 ………………………………………………………     12

U.S. Const. amends. I …………………………………………………………………     18

U.S. Const. amends. VII ………………………………………………………………     18

U.S. Const. amends. XIV ………………………………………………………………     18

**Treatises:**

5 C. Wright A. Miller, *Federal Practice Procedure* § 1327 ………………………….     10

Plaintiff and Counterclaim Defendant RALPH M. WATSON ("Watson" or "Plaintiff") respectfully submits this Memorandum of Law in support of his motion to dismiss Defendant NY DOE 2's Counterclaim filed against him with prejudice and to award him his reasonable attorney fees and costs for bringing this motion.  ECF 205.

## PRELIMINARY STATEMENT

The basis of NY Doe 2's Counterclaim against Watson rests on her frivolous contention that his underlying claims against her, for defamation and intentional interference with contract, were brought without a substantial basis in fact and law and solely for the purpose to harass and punish her.  It is undisputed that NY Doe 2 has publicly accused him of sexually harassment and sexual assault.  Watson has categorically denied under oath that he sexually harassed or raped her and her motion to dismiss these same defamation claims has already been denied, with the Court ruling against her on her substantially similar argument that Watson cannot establish that she acted with actual malice, if the statements are proven false.

Thus, the sole basis of her counterclaim, *i.e.,* that Watson brought his action solely to harass and punish her and that no evidence exists that demonstrates "any shred of actual malice," is frivolous and without merit.  Watson has a fundamental constitutional right to petition the courts to seek redress for the damages he alleges he has incurred as a direct result of the defamatory statements made by NY Doe 2.  Even if he had no evidence other than his own testimony that he did not sexually harass or assault NY Doe 2, that testimony alone would be sufficient for him to prevail on his defamation claims against NY Doe 2, if a jury found that he was more credible than NY Doe 2.

Of course, Watson has uncovered substantial objective evidence through discovery, including NY Doe 2's own testimony and actions, that clearly and convincingly establishes that Watson did and does have a substantial basis in law and fact to bring his lawsuit against NY Doe 2.  Further, this objective evidence, as well as his own testimony, provide an "obvious alternative explanation" for the motivation behind his lawsuit against NY Doe 2, as opposed to NY Doe 2's strained allegations that his lawsuit was brought solely to harass and punish her.  The United

1

States Supreme Court has held that allegations of wrongdoing will be deemed "implausible" if there is an "obvious alternative explanation" for the facts alleged indicating lawful conduct, instead of the unlawful conduct plead by a claimant. *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 566-567 (2007)

## STATEMENT OF RELEVANT FACTS

### A.   NY Doe 2's Counterclaim.

NY Doe 2's counterclaim alleges that "Watson has made allegations to and brought claims in this Court that lack any factual or legal basis, for the purpose of using the levers of litigation to silence NY Doe 2's First Amendment protected speech and to harass and punish her for it." CC at ¶ 39. She admits to making the statement that "Gloves are off. I don't care if the industry knows he raped me," but claims that her rape allegation was protected by the First Amendment. CC at ¶ 45. She admits that she published this statement and other statements accusing Watson of sexual harassment and assault to the Instagram account Diet Madison Avenue (who published her comment to thousands of their followers) and his former employer, CP+B. CC ¶ 3.



CC at ¶ 20.

*Id.*

CC at ¶¶ 18, 23, 25. Watson has categorically denied that he sexually harassed or assaulted NY Doe 2 at any time, either while she was employed with CP+B, or after.

#### 1.   The Counterclaim Selectively Cites to Only Portions of the Evidence Produced in Discovery and Mischaracterizes that Evidence.

The Counterclaim also makes numerous conclusory allegations referencing the evidence produced to date in the case, including documentary evidence and the sworn testimony of the

parties, that she claims support her allegation that Watson brought his lawsuit without a substantial basis in law and fact.  She alleges that "Watson commenced this litigation based on numerous allegations that Watson knew or should have known were false at the time of filing" and that "discovery in this action has confirmed that the material allegations Mr. Watson made against NY Doe 2 are false . . . [but] Mr. Watson nonetheless commenced and continued this retaliatory and harassing lawsuit knowing there exists no substantial basis in fact and law for his claims."  CC at ¶ 9.  ████████████████████████

████████████████████████████████████████████

███████████████████████████  CC at ¶ 16.  ████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████  CC at ¶ 31.  ████████████████████████

███████████████████████████████████████

████████████████████████████████████████████████

███████████████████████  CC at ¶ 34.d.

      **2.**     **The Objective Evidence that Clearly Establishes that Watson Did Not Sexually Harass or Assault NY Doe 2.**

NY Doe 2's counterclaim simply avoids and/or presents a highly slanted version of the evidence that has been produced through discovery in this case and which is integral to her baseless claim that Watson brought his action against her "without a substantial basis in fact and law." [1]

---

[1] Because extensive discovery has been conducted in this case, and NY Doe 2's selective and misleading reading of this integral evidence, this Court is permitted to consider other material and pertinent evidence presented by Watson in attacking the pleading.  *See* Standard of Review, Section A. below, citing *In re J.P. Jeanneret Associates, Inc*., 769 F.Supp.2d 340, 355 (S.D.N.Y. 2011) and *I. Meyer Pincus Assoc. v. Oppenheimer Co*., 936 F.2d 759, 762 (2d Cir. 1991).

a.       **The Alleged Finkel & Garf Incident.**

i.       **NY Doe 2's Version of Events**.

In September of 2016, Watson placed NY Doe 2 on probation for admitted performance problems.[2]  *See* Ayotte Decl. ¶ 3, Ex. A (Oct. 2018 St.) at 1; ███████    After not being taken off probation, NY Doe 2 opted to voluntarily resign from CP+B in December of 2016, and personally gave Plaintiff her two-week notice.  Ex. A at 2.  To "smooth things over," Plaintiff offered to buy NY Doe 2 a drink after work at Finkel & Garf.  *Id*.

NY Doe 2 alleges that while at the brewery, "Mr. Watson put his hand on my thigh in a sexually suggestive manner, and leaned in and kissed me on the mouth."  *Id*. at 3.  Plaintiff has testified that this is categorically false and that it was NY Doe 2 who inappropriately kissed him.  Ayotte Decl. ¶ 4; Ex. B (Pl. Depo.) at 97-100.  NY Doe 2 then stated that Plaintiff offered to drive her and another friend home to her place and that she was afraid "to be alone with him."  Ex. A at 3.  She stated that did not want to offend him and "frantically searched the brewery for [someone] that could help me get out of the situation."  *Id*.  She stated she did find a friend to accompany her and Watson to her home and claims she "secretly sent text messages to [the] friend, explaining what Mr. Watson had done previously…"  *Id*.  She then alleges that when they arrived at her house, Plaintiff "invited himself inside" and made her extremely uncomfortable.  *Id*.

ii.       **The Objective Evidence that No Harassment Took Place on the Finkel & Garf Night.**

Watson has denied NY Doe 2's allegations and has stated that it was NY Doe 2 who inappropriately tried to kiss him and made him feel extremely uncomfortable on the night in question.  Ex. B (Pl. Depo.) at 97-100 and 106-109.  Watson's version of the night has been fully

---

[2] At her January 25, 2018 interview by Jan Jensen at CP+B, ███████████████████████
███████████████████████████████████████████████ *See* Ayotte
Decl. ¶ 7; Ex. E at 1.



corroborated by an unbiased eyewitness, *i.e.*, the friend who accompanied NY Doe 2 and Watson to NY Doe 2's apartment.

Ayotte Decl. ¶ 5; Ex. C (Eyewitness St.) at ¶¶ 2-4.

*Id.* at ¶ 6.

At her deposition taken by NY Doe 2,

Ayotte Decl. ¶ 6, Ex. D (Eyewitness Depo.) at 147

and 153

5

b.    **The Alleged Rape.**

i.    **NY Doe 2's Version of Events.**

███████████████████████████████████████████████████

CC at ¶ 19.  ██████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████  ; Ex. A (Oct. 2018 St.) at 3-4.  █████████████████

███████████████████████████████████████  *Id*.  At the end of the

evening, NY Doe 2, Watson and another former employee, all took a cab together.  Ex. A at 4.

NY Doe 2 then alleges that when she tried to exit the cab at the first stop, Watson "quickly

closed the cab door . . . not allowing [NY Doe 2] a chance to exit" the cab.  *Id*.  Watson has

testified that it was he who was surprised when NY Doe 2 failed to get out of the cab and

continued to his hotel.  Ex. B (Pl. Depo.) at 199-202.

At his hotel, Watson and NY Doe 2 toured the area where the advertising competition

was taking place before heading to Watson's hotel room.  Ex. A (Oct. 2018 St.) at 4.  NY Doe 2

then alleges she remembers "entering Mr. Watson's room, but because of my intoxicated state, I

do not recall precisely what happened thereafter. What I do know, however, is that Mr. Watson

raped me."  *Id*.; ████████[3]  Watson has categorically denied under oath that he sexually

assaulted or raped NY Doe 2.  Ex. B (Pl. Depo.) at 210-216.  NY Doe 2 further stated that she

was "terrified" when she woke up naked in the hotel room and "did not remember how [she] had

gotten there."  Ex. A at 4.  She stated that as soon as Plaintiff left the hotel room, she "got

dressed and left as quickly as possible."  *Id*. at 5.

At her January 25, 2018 CP+B interview,  ██████████████████████████

█████████████████████████████████████████████████████

---

[3] In her October 2018 statement, NY Doe 2 gives internally inconsistent accounts about how much she drank that night.  At one point in her statement, she claims she was "highly intoxicated."  Ex. A at 2, ¶ 2-4. Later in the same statement, she states she "had only had a couple drinks."  *Id*. at ¶ 4.)

6

████████████████████   Ayotte Decl. at ¶ 7, Ex. E (Jan. 2018 CP+B Int.) at 2.   In her later October 2018 statement prepared by her counsel, she made similar accusations, adding that upon awaking, she was "confused and scared" and that she "got dressed and left as quickly as possible" after Plaintiff left the hotel room.   Ex. A at 4-5.   At her deposition, she testified that at the time of the alleged incident, she "knew what had happened was wrong" and that she was "[d]eeply upset."  Ayotte Decl. ¶ 8; Ex. F (NYD2 Depo., at 69-70).  She further testified that she spent the entire day after the alleged rape at her office, where she "watched Netflix while I cried for the rest of the day."  *Id* at 73.

### ii.     The Objective Evidence that NY Doe 2 was Not Sexually Assaulted.

However, in a complete contradiction to her statements that she was terribly upset the morning after the alleged incident and "got dressed and left as quickly as possible," she admitted at her deposition that she had in fact ordered room service and watched a movie in Plaintiff's hotel room after he left for his conference.  Ex. F, at p. 42.  On the morning after the alleged rape, at a time she was supposed to be traumatized and crying all day, she posted a picture of the New York City skyline (allegedly taken from Watson's hotel room) on her Instagram account with the caption "I LOVE NY."  Ayotte Decl. ¶ 9; Ex. G.  In the next few days, she invited Plaintiff and others to brunch, liked multiple of his Instagram posts, and twice invited him out to drinks with her alone.  Ayotte Decl. ¶¶ 10-11; Ex. H-I.  After he left New York, they continued to have normal interactions via text messages.  Ex. H at 11-13.  Five months after the alleged rape, she texted him that she felt "rejected," and then laughingly attempted to FaceTime him with a friend late at night.  Ex. H at 12.  In late November of 2017, she texted him "Happy Thanksgiving" and included a funny picture of the cast of "Friends."  Ex. H at 12-13.

## **RELEVANT PROCEDURAL BACKGROUND**

Watson filed this action against NY Doe 2, Illinois Doe 1 and others on January 17, 2019, alleging, that he was defamed in January of 2018 through May of 2018, when DMA posted false allegations calling him an "unrepentant serial predator" and a rapist.  ECF 1, 47; Am. Compl. ¶¶ 38-40, 44, 50.  The sole source of these false allegations has now been revealed to be NY Doe 2. Ayotte Decl. at ¶ 2.  NY Doe 2 moved to dismiss Watson's claims against her on August 16, 2019.  ECF 57-59.  This court denied her motion as to the two defamatory statements concerning the December 2016 Finkle & Garf night and the more serious April 2017 false rape accusation, finding that an allegation of rape, if proved to false, would be considered as a matter of law to have been made with actual malice under any applicable standard of fault.  ECF 99, pp. 19-22. NY Doe 2 filed her Answer on February 25, 2020 and the parties have been engaged in extensive discovery.  ECF 102.

On June 24, 2021, more than two and a half years after the initial complaint and after extensive discovery, NY Doe 2 filed a pre-motion conference letter, requesting leave to amend its answer and for leave to file an anti-SLAPP counterclaim against Watson based on the recent amendments to the New York's anti-SLAPP statutes.  ECF 167.  Watson opposed, arguing NY Doe 2 had no evidence to support its legal conclusions that Watson brought his action without a substantial basis in fact and law and that any counterclaim would itself be an impermissible SLAPP action against Watson.  ECF 174-175.  At the scheduled hearing, the Court allowed NY Doe 2 to file an amended answer and/or counterclaim, but expressly warned counsel to carefully consider their Rule 11 obligations prior to bringing a counterclaim.  Minute Entry on 7/1/21.

On October 8, 2021, NY Doe 2 filed her amended answer and counterclaim alleging Watson's lawsuit against her violated New York's newly amended anti-SLAPP statutes.  ECF

205. ███████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████.

## STANDARD OF REVIEW

### A.    Motion to Dismiss Pursuant to Rule 12(b)(6).

To survive a motion to dismiss made under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The party must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  When evaluating whether a claim meets this standard, the Court must accept all factual allegations as true and draw all reasonable inferences in the pleading party's favor.  *ATSI Comms., Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007).

The Court is not, however, obligated to accept as true legal conclusions couched as factual allegations.  *Rolon v. Hennenman*, 517 F.3d 143, 148-49 (2d Cir. 2008); *see also Iqbal*, 556 U.S. at 678.  In determining the adequacy of a claim under Rule 12(b)(6), a Court is generally limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated into the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc*., 945 F.2d 40, 44 (2d Cir. 1991).  A Court may, however, consider the full text of documents that are cited in, incorporated by reference, or are integral to the complaint.  *San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc*., 75 F.3d 801, 809 (2d Cir. 1996); *see also In re J.P.*

*Jeanneret Associates, Inc*., 769 F.Supp.2d 340, 355 (S.D.N.Y. 2011) ("Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim – and that they apparently most wanted to avoid – may not serve as a means of forestalling the district court's decision on the motion"; see also *I. Meyer Pincus Assoc. v. Oppenheimer Co*., 936 F.2d 759, 762 (2d Cir. 1991) (when a pleader "fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading," quoting 5 C. Wright A. Miller, *Federal Practice Procedure* § 1327, at 489 n. 15).

### B.   Motion to Dismiss Pursuant to New York State Anti-SLAPP Law.

New York anti-SLAPP law provides that a motion to dismiss an action that involved public petition and participation (as defined by N.Y. Civil Rights Law § 76-a) shall be granted "unless the party responding to the motion demonstrates that the cause of action has a substantial basis in law . . ." *Project Veritas v. N.Y. Times Co*., Index No. 63921/2020, at *10 (N.Y. Sup. Ct. 2021); CPLR 3211(g).   Numerous courts in this circuit have ruled that New York's recently amended anti-SLAPP statutes apply in federal court.  *See, e.g*., *Palin v. New York Times Co*., 510 F.Supp.3d 21, 25, 2020 WL 7711593, at *3, (JSR) (S.D.N.Y. Dec. 29, 2020).

The *Project Veritas* court cautioned that the recent amendments to the anti-SLAPP laws have "turned the original purpose of the Anti-SLAPP law upside down" and "allowed one of the largest newspapers in the world," the New York Times, to claim protections from a very small "upstart competitor;" a situation the court compared to granting unheard of protections to "a Goliath against a David." *Id*. at *10-11.  The identical situation is occurring in this case. Plaintiff is an individual who has had his life and career destroyed by the NY Doe 2's defamation.  And while NY Doe 2 is also an individual, her fees are being paid by the Goliath ██████████████████████.

Importantly, the anti-SLAPP statutes *shift the standard burden for a motion to dismiss from the moving party to the claimant* to "demonstrate that the cause of action has a substantial basis in fact and law." *Project Veritas*, at *12, citing CPLR 3211(g). Thus, to survive Watson's motion to dismiss, NY Doe 2 must demonstrate that *her* counterclaim is not a SLAPP and has a substantial basis in fact and law. Her conclusory pleadings, which are directly contradicted by the actual evidence revealed through the extensive discovery to date, do not remotely meet this burden.

## **ARGUMENT**

Watson's lawsuit against NY Doe 2 is now based on the two specific defamatory statements made by NY Doe 2 that survived her motion to dismiss: (1) that she defamed him when she falsely accused him of sexual harassment at Finkel & Garf in December of 2016; and (2) her accusation that he raped her in April of 2017. NY Doe 2 does not dispute that she made these statements. ████████████████; ECF 99 at 19-22. To prevail at trial on his defamation claim against NY Doe 2, Watson must prove that either of these two defamatory statements are false. Even if NY Doe 2's statements privileged, that privilege would be forfeited if her defamatory statements were made with "actual malice," as noted by the Court in denying NY Doe 2's motion to dismiss as to these two statements. ECF 99 at 19-22, citing among others, *Albert v. Loksen*, 239 F.3d 256, 273 (2d Cir. 2001).

### A.     NY Doe 2's Counterclaim Fails as a Matter of Law Because Watson's Lawsuit Against Her has a Substantial Basis in Fact and Law.

NY Doe 2's anti-SLAPP counterclaim against Watson fails to state a valid cause of action because it rests solely on the conclusory legal conclusion that Watson commenced his action against her "without a substantial basis in fact and law" for the sole purpose to "threaten, harass and intimidate NY Doe 2 for her free speech." CC at ¶¶ 7-10; 39, 46. The faulty

11

foundation she rests her claim on is her unsupported and erroneous conclusion that Watson has no evidence demonstrating that NY Doe 2 made either statement with "actual malice," ███████

███████████████████████████████████████████████████████████████████████████████████

████  This conclusionary allegation is categorically false because all the *objective* evidence in this case establishes, at a minimum, that Watson had a substantial basis in fact and law to bring his lawsuit against NY Doe 2 to seek redress for her false accusations that have destroyed his life and career.

       **1.**     **The Applicable Actual Malice Standard for False Accusations of Rape.**

Under New York's newly amended anti-SLAPP law, to prevail at trial in any action involving "public petition and participation," a party must establish by clear and convincing evidence "that any communications which gives rise to the action was made with knowledge of its falsity *or with reckless disregard of whether it was false*, where the truth or falsity of such communication is material to the cause of action at issue."  N.Y. Civil Rights Law § 76-a.2 (emphasis added); *see also Liberman v. Gelstein,* 80 N.Y.2d 429, 437-438 (N.Y. 1992).

As discussed by the Court in its prior ruling discussing this same argument in NY Doe 2's motion to dismiss, Watson can demonstrate NY Doe 2 acted with actual malice if her statements are proven to be false at trial, because she had "firsthand knowledge of whether the plaintiff did or did not rape her."  ECF 99, p. 19-22, citing *Biro v. Conde Nast,* 807 F.3d 541, 545 (2d Cir. 2015) and *Goldman v. Reddington*, 2019 WL 4736803, at *8 (E.D.N.Y. Sept. 27, 2019) (finding allegations that defendant knowingly and intentionally made false accusations that the plaintiff was a rapist satisfied the gross irresponsibility standard at the motion to dismiss stage); *see also Liberman v. Gelstein*, 80 N.Y.2d 429, 437 (N.Y. 1992), citing *New York Times Co. v. Sullivan* (1964) 376 U.S. 254, 279-280 ("actual malice" standard for cases governed by the First

Amendment requires "knowledge that [the statement] was false").  Because NY Doe 2 has firsthand knowledge of her accusations, if those accusations are proven false, it necessarily follows that Watson will have proven that NY Doe 2 acted with the actual malice.

> ### 2. Watson's Own Sworn Denials that He Did Not Sexually Harass or Assault NY Doe 2 Provide a Substantial Basis in Fact and Law Alone.

It is undisputed that there were no witnesses to what occurred in Plaintiff's hotel room on the night of April 7, 2017.  NY Doe 2's accusations that she was sexually assaulted are based solely on her testimony.  She has provided no other evidence, other than her everchanging story that she relayed to others.  Importantly for the purposes of this motion to dismiss, Watson's own testimony denying that he sexually harassed or assaulted NY Doe 2, even in the absence of any other evidence, would be sufficient evidence to prevail at trial on his defamation claims against her, if the jury found his testimony more credible than NY Doe 2's.  *See, e.g.*, Ex. B at 97-100, 106-109, 199-202 and 210-216.  It necessarily follows, that if Watson's testimony would be sufficient to prevail at trial, it also would suffice, as a matter of law, that Watson's claims had a substantial basis in fact and law when he brought his claims against her.  Watson, of course, does now have substantial objective documentary evidence establishing that he did not sexually harass or assault NY Doe 2.

> ### 3. The Counterclaim Fails to State a Plausible Claim Because Watson Has an Obvious Alternative Explanation for Bringing His Action Against NY Doe 2.

To plead a plausible claim in federal court, a party must plead more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *See Twombly*, 550 U.S. at 555.  A court is not obligated to accept as true legal conclusions couched as factual allegations.  *Rolon v. Hennenman*, 517 F.3d 1430, 148-49 (2d Cir. 2008); *see also Iqbal*, 556 U.S. at 678.

Importantly, allegations of wrongdoing will be deemed "implausible" if there is an "obvious alternative explanation" for the facts alleged indicating lawful conduct, instead of the unlawful conduct plead by a claimant.  *Id*. at 682; *Twombly* at 566-567, citing *Kramer v. Pollock-Krasner Foundation*, 890 F.Supp. 250, 255-256 (S.D.N.Y. 1995) (while the plaintiff "may believe the defendants conspired . . ., the defendants' allegedly conspiratorial actions could equally have been prompted by lawful, independent goals which do not constitute a conspiracy").

Watson has an "obvious alternative explanation" for filing his lawsuit; he is pursuing his constitutional right to petition a court to seek redress against NY Doe 2 for the enormous damages he has incurred as a result of her false accusations that directly led to the destruction of his reputation and career.  In fact, it is NY Doe 2 who retaliated against Watson for exercising his constitutional right to petition the courts.  ███████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████  It is undisputed that her accusations of rape to DMA and CP+B led directly to Watson's termination and the destruction of his reputation and career.  Because Watson had been tried and convicted by social media and labeled an "unrepentant serial predator" based solely on NY Doe 2's false accusations, he chose, as is his constitutional right, to clear his name through the legal process, where evidence is required, rather than uncorroborated slanderous allegations.

14

4.      **The Counterclaim Ignores or Misstates the Substantial Evidence that NY Doe 2 Fabricated Her Allegations Against Watson.**

The counterclaim exhibits the exact disingenuous pleading tactics outlined in the *Jeanneret* and *I. Meyer Pincus* cases discussed above. *See* above, Standard of Review, Section A, citing *Jeanneret,* 769 F.Supp.2d at 355 and *I. Meyer Pincus*, 936 F.2d at 762. Those cases held that a party's failure to include matters they were aware of and were integral to their claim – matters they "most wanted to avoid" – may not serve as a means of forestalling a district court from dismissing an action. *Id.*

NY Doe 2's counterclaim summarily and erroneously cites to



CC at ¶ 34.d and 36. Of course, none of these damning documents were attached to the counterclaim, although the counterclaim grossly mischaracterizes the contents of the documents and Watson's testimony about the events in question.

a.      **All the Objective Evidence Demonstrates that Watson Did Not Sexually Assault NY Doe 2 in April 2017.**

NY Doe 2 alleges that she was drugged and raped by Plaintiff on the night of April 7, 2017, in his hotel room in New York while he was attending an advertising conference, a claim that Watson has categorically denied under oath in declarations and at his deposition. Ex. B (Pl. Depo. at 199-202, 210-216. As discussed more fully above, and because of conflicting facts revealed through discovery, NY Doe 2's initial version of the circumstances of the alleged rape have been proven to be false. At both the January 25, 2018 CP+B interview and in her later October 2018 statement, NY Doe 2 alleged that she felt at the time that "she was drugged and

15

raped" and that as soon as Plaintiff left the hotel room, she "got dressed and left as quickly as possible." Ex. E at 2 and Ex. A at 4-5. At her deposition she testified that she spent the entire day after the alleged rape at her office, where she "watched Netflix while I cried for the rest of the day." Ex. F at 73.

Yet at her deposition, and because of a different account she relayed to DMA in January of 2018, she admitted that she had in fact ordered room service and watched a movie (Die Hard) in Plaintiff's hotel room after he left for his conference. Ex. F at 42. That same morning, at a time she was supposed to be traumatized and crying all day, she posted a picture of the New York City skyline (allegedly taken from Watson's hotel room) on her Instagram account with the caption "I LOVE NY." Ex. G. These objective facts directly contradict NY Doe 2's earlier testimony, made months after the alleged incident at a time she had no idea her text messages would be discoverable, are strong proof that no sexual assault took place.

Rather than being traumatized by a sexual assault and avoiding Plaintiff, over the next few days, NY Doe 2 invited Plaintiff to brunch, liked multiple of his Instagram posts, and twice invited him out to drinks with her alone. Ex. H-I. After he left New York, they continued to have normal interactions via text messages. Ex. H at 11-13. Five months after the alleged rape, she texted him that she felt "rejected," and then laughingly attempted to FaceTime him with a friend late at night. Ex. H at 12-13. In late November of 2017, she texted him "Happy Thanksgiving" and included a funny picture of the cast of "Friends." *Id*. All this direct evidence of her own actual behavior ***clearly and convincingly*** establishes that NY Doe 2 was not sexually assaulted and/or raped by Watson, but instead maliciously made a false accusation of rape

against Watson that has ruined his career and life.[4]   At an absolute minimum, it establishes that

Watson had and has a substantial basis in fact and law to pursue his lawsuit against NY Doe 2.

> **b.      An Unbiased Eyewitness Has Provided Sworn Testimony
> Directly Contradicting NY Doe 2's Account of the Finkel &
> Garf Night.**

Plaintiff can also establish that NY Doe 2 lied about the Finkel & Garf incident in

December of 2016.  On that night, NY Doe 2 reported that Plaintiff gave her an unwanted kiss at a

local bar and followed her back to her apartment and made her extremely uncomfortable.  Ex. A

(Oct. 2018 St.) at 2.  Watson categorically denies NY Doe 2's account and has testified that NY

Doe 2 initiated an unwanted kiss and made him feel uncomfortable.  Ex. B at 97-100, 106-109.

Watson's version of the night has been corroborated by the friend who was present at the Finkel &

Garf night and who accompanied NY Doe 2 and Plaintiff to NY Doe 2's apartment.  As discussed

more fully above, this unbiased witness, who NY Doe 2 considered a friend, has provided both a

sworn witness statement and deposition testimony that ███████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████   Ex. C (Eyewitness St.) at ¶¶ 2-4, 6; Ex. D, 147 ████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ and

153 ████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████  ███████████████████████

████████████████████████████████████████████████████

---

[4] Despite the #MeToo movement's mantra to believe all women who make a sexual assault allegation, in
a court of law, such an allegation, while taken seriously, must be supported by actual evidence.

████████████ CC at ¶ 18.

All the above objective evidence establishes that NY Doe 2's allegations against Watson are not credible in that they are directly contradicted by both his and an eyewitness's testimony. At a minimum, this unbiased eyewitness testimony provided Watson with a substantial basis in fact and law to bring his action against NY Doe 2.

**c.      Many of the Allegations in NY Doe 2's Counterclaim
are Irrelevant and Should be Disregarded by the Court.**

Realizing the weakness of her argument that there is no evidence "evinc[ing] a shred of actual malice," NY Doe 2 pleads numerous allegations that are wholly irrelevant to the two statements at issue, and which should either be stricken by the Court or disregarded for the purposes of this motion to dismiss.  For instance, while Watson disputes NY Doe 2's characterization of various events, ████████████████████████████████ ████████████████████████████ CC ¶ 18.[5]

**B.      NY Doe 2's Counterclaim is an Impermissible SLAPP and Should be
Dismissed Because it was Brought Without a Substantial Basis in Fact and
Law.**

To the extent the courts of this circuit are retroactively applying the newly amended anti-SLAPP laws, that same retroactive application would apply to Watson's defamation lawsuit filed against NY Doe 2.  Watson has a constitutional right to petition the courts to seek redress for the defamation against him by NY Doe 2 and others.  *See* U.S. Const. amends. I, VII and XIV; *see*

---

[5] The complaints against Watson that NY Doe 2 is referring to were made by ████████, another CP+B employee who Watson had put on probation, who witnessed Watson making a bad joke to another female employee asking why a virgin would be on a dating app, which he has admitted was inappropriate. However, this stray comment, while inappropriate, does not even remotely raise to the level of actionable sexual harassment.  At this same time, ████ also complained to CP+B about the Finkel & Garf incident, *which he did not witness*, allegedly based on what NY Doe 2 had previously told him.  Watson further disputes that any disciplinary action was taken against him at this time.

18

*also* N.Y. Civ. Rights Law §§ 70-a.1(b) and 76-a.1.

The pre-amendment anti-SLAPP law was limited to cases initiated by individuals or business entities that were involved in controversies over a public application or permit. *Palin*, 510 F.Supp.3d 21, 25. The newly amended law has now expanded the scope of the law to include any "action involving public petition and participation" to include claims based upon "the exercise of a constitutional right of free speech in connection with an issue of public interest, *or in furtherance of the exercise of the constitutional right to petition*. *Id*., citing N.Y. Civil Rights Law § 76-a.1(a) (emphasis added).

Watson's lawsuit against NY Doe 2 easily meets this criterion. Watson's lawsuit is centered on the same issues of alleged sexual harassment and assault that NY Doe 2 argues make the newly amended anti-SLAPP laws applicable to her statements. To the extent NY Doe 2 can argue that her defamatory statements involving #MeToo issues constitute an "issue of public interest," Watson's case illuminates the dark side of the movement, where unsubstantiated allegations of sexual impropriety are enough to destroy an innocent individual's life and career, in a trial by social media, rather than a trial in a court of law, where due process and objective evidence are required. As discussed above, it is NY Doe 2 who retaliated against Watson after he filed his lawsuit against DMA (she was not a party) when she angrily allowed DMA to post the incendiary "Gloves are off" accusation, which was the first time that false rape charge was shared publicly with DMA's thousands of followers.

C.      **Watson is Entitled to his Costs, Attorney's Fees and Other Damages.**

Civil Rights Law § 70-a allows a party to recover its costs and attorney fee and other damages, if it can be shown that the applicant brought the action or continued it without a substantial basis in fact and law. *Id*.; N.Y. Civil Rights Law § 70-a.1(a) ("costs and attorney's

fees shall be recovered upon a demonstration, including an adjudication pursuant to [CPLR 3211(g)]").  Watson has made such a showing and provided NY Doe 2 with notice and the opportunity to retract her frivolous pleading.

## **CONCLUSION**

For the reasons set forth above, Plaintiff and Crossclaim Defendant respectfully requests this Court dismiss NY Doe 2's counterclaim with prejudice and award him his attorney's fees, costs and other applicable damages for bringing a counterclaim "without a substantial basis in law and fact."

Dated:  November 19, 2021        Respectfully submitted,

/s/ Michael W. Ayotte
_____
**_Michael W. Ayotte_**
LAW OFFICES OF MICHAEL W. AYOTTE
2629 Manhattan Ave., Suite 144
Hermosa Beach, CA 90254
Telephone: (310) 343-1864
Email: mayotte@clientfirstlegalsolutions.com

Attorneys for Plaintiff and Counterclaim Defendant
RALPH M. WATSON

## CERTIFICATION REGARDING WORD COUNT

I hereby certify pursuant to this Court's Individual Practices 2.D that this brief complies with all formatting requirements, and that the total number of words in the brief, not including the cover page, certification of compliance, table of contents and table of authorities, is 6914 words as calculated by Microsoft Word.

Dated:  November 19, 2021        /s/ Michael W. Ayotte

                                     _____

                                     ***Michael W. Ayotte***
                                     LAW OFFICES OF MICHAEL W. AYOTTE
                                     2629 Manhattan Ave., Suite 144
                                     Hermosa Beach, CA 90254
                                     Telephone: (310) 343-1864
                                     Email: mayotte@clientfirstlegalsolutions.com

                                     Counsel for Plaintiff and Counterclaim Defendant
                                     RALPH M. WATSON