## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

RALPH M. WATSON, an individual,

     Plaintiff,

     v.

NY DOE 2, an individual; NY DOE 3, an individual; NY DOE 4, an individual; ILLINOIS DOE 1, an individual; DOE COMPANY, an unknown business entity; DOE 1, an individual; and DOES 2 through 100, whose true names and capacities are unknown,

     Defendants.

Case No. 1:19-cv-533

## DEFENDANT-COUNTERCLAIM PLAINTIFF NY DOE 2'S OPPOSITION TO PLAINTIFF-COUNTERCLAIM DEFENDANT'S MOTION TO DISMISS NY DOE 2'S COUNTERCLAIM

Laura P. MacDonald
Rémi J.D. Jaffré
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
Tel.: (212) 891-1600
LMacDonald@jenner.com
RJaffre@jenner.com

*Counsel for Defendant NY Doe 2*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ....................................................................................................................2

I.   New York's Anti-SLAPP Laws. ....................................................................................2

II.  Factual and Procedural Background. ............................................................................4

LEGAL STANDARD..............................................................................................................9

ARGUMENT .......................................................................................................................9

I.   NY Doe 2 States a Claim Under N.Y. Civ. Rights Law § 70-a(1)(a)....................................10

   A.  Watson's Action Involves Public Petition and Participation. ............................................10

   B.  Watson Commenced and Continued This Action Without a Substantial Basis in
       Fact and Law...........................................................................................................13

   C.  Watson's "Obvious Alternative Explanation" Argument Lacks Merit. ............................15

II.  Rule 12(b)(6) Bars Consideration of Watson's Extrinsic Evidence. ......................................16

III. New York's Special Anti-SLAPP Motion to Dismiss Is Not Applicable in Federal Court. ...20

IV.  Watson's Motion Is Not a Proper Vehicle for a Request for Costs, Attorneys' Fees, or
     Damages..................................................................................................................22

CONCLUSION....................................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amerisource Corp. v. Rx USA Int'l Inc.*,
2010 WL 2160017 (E.D.N.Y. May 26, 2010) .........................................................................13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................................9, 16

*ATSI Comms., Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007).................................................................................................9, 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................................16, 21

*Coleman v. Grand*,
523 F. Supp. 3d 244 (E.D.N.Y. 2021) .............................................................................11, 12

*Columbia Cas. Co. v. Neighborhood Risk Mgmt. Corp.*,
2015 WL 3999192 (S.D.N.Y. June 29, 2015) .......................................................................18

*Concord Assocs., L.P. v. Entm't Props. Tr.*,
817 F.3d 46 (2d Cir. 2016)........................................................................................................9

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*,
2021 WL 3173804 (S.D.N.Y. July 27, 2021) ........................................................................22

*Elias v. Rolling Stone LLC*,
872 F.3d 97 (2d Cir. 2017).......................................................................................................13

*Global Network Commc'ns, Inc. v. City of New York*,
458 F.3d 150 (2d Cir. 2016)...............................................................................................18, 19

*Goel v. Bunge, Ltd.*,
820 F.3d 554 (2d Cir. 2016)...........................................................................................16, 17, 18

*Goldman v. Belden*,
754 F.2d 1059 (2d Cir. 1985)...................................................................................................16

*Goldman v. Reddington*,
2021 WL 4099462 (E.D.N.Y. Sept. 9, 2021) .........................................................................12

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
936 F.2d 759, 762 (2d Cir. 1991).............................................................................................18

*In re J.P. Jeanneret Assocs., Inc.*,
   769 F. Supp. 2d 340 (S.D.N.Y. 2011) .......................................................................18

*Kramer v. Pollock-Krasner Found.*,
   890 F. Supp. 250 (S.D.N.Y. 1995) ...........................................................................16

*La Liberté v. Reid*,
   966 F.3d 79 (2d Cir. 2020) ..................................................................................20, 21

*Mable Assets, LLC v. Rachmanov*,
   146 N.Y.S.3d 147 (2d Dep't 2021) .............................................................................2

*McCarthy v. Dun & Bradstreet Corp.*,
   482 F.3d 184 (2d Cir. 2007) .......................................................................................9

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ....................................................................................................3

*Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*,
   483 F. Supp. 3d 195 (S.D.N.Y. 2020) .....................................................................11

*Palin v. N.Y. Times Co.*,
   510 F. Supp. 3d 21 (S.D.N.Y. 2020) .......................................................................11

*Patane v. Clark*,
   508 F.3d 106 (2d Cir. 2007) .......................................................................................9

*Polanco v. NCO Portfolio Mgmt.*,
   23 F. Supp. 3d 363 (S.D.N.Y. 2014) .......................................................................18

*Reus v. ETC Hous. Corp.*,
   148 N.Y.S.3d 663 (Sup. Ct. 2021) ..........................................................................11

*Sackler v. Am. Broad. Cos.*,
   144 N.Y.S.3d 529 (Sup. Ct. 2021) ..........................................................................11

*Sweigert v. Goodman*,
   2021 WL 1578097 (S.D.N.Y. Apr. 22, 2021) .....................................................11, 21

*In re Thelen LLP*,
   736 F.3d 213 (2d Cir. 2013) .......................................................................................9

*Watson v. Crispin Porter & Bogusky LLC*,
   No. 1:18-cv-1658 (D. Colo.) .......................................................................................6

*Watson v. Diet Madison Avenue*,
   No. BC707278 (Cal. Super., L.A. Cty.) .....................................................................6

**Statutes**

N.Y. Civ. Rights Law § 70-a ........................................................................................... *passim*

N.Y. Civ. Rights Law § 76-a ........................................................................................... *passim*

2020 N.Y. Laws Chapter 250, § 2 ........................................................................................4

**Other Authorities**

CPLR 3211........................................................................................................................ *passim*

CPLR 3212.................................................................................................................................3

Fed. R. Civ. P. 12............................................................................................................. *passim*

Press Release, New York State Legislature, Senate and Assembly Majorities
    Advance Anti-SLAPP Legislation to Protect Free Speech (July 22, 2020) ...........................4

Press Release, Sen. Brad Hoylman, As Trump Attacks The Free Press, Legislature
    Passes Senator Hoylman And Assemblywoman Weinstein's Legislation To Crack
    Down On Frivolous "SLAPP" Lawsuits Used To Silence Critics (July 22, 2020)...........................4

*State Anti-SLAPP Laws,* Public Participation Project......................................................................2

Defendant-Counterclaim Plaintiff NY Doe 2 ("NY Doe 2"), by and through her undersigned attorneys, respectfully submits this memorandum of law in opposition to Plaintiff-Counterclaim Defendant Ralph M. Watson's ("Watson") Motion to Dismiss ("Motion" or "Mot.", ECF 234) NY Doe 2's Counterclaim ("Counterclaim" or "CC," ECF 204).

## PRELIMINARY STATEMENT

Watson, a decorated advertising executive with over 30 years' experience in the industry, sexually harassed NY Doe 2, a young woman decades his junior, while she was his subordinate at a prominent advertising firm.  Then, after NY Doe 2 left that employment, Watson sexually assaulted her in his hotel room while she was too intoxicated to consent.  Against the backdrop of the #MeToo movement, NY Doe 2 spoke out about the abuse she suffered to protect other women, despite her fears about how that would affect her career.  Watson's response was to sue his victim, NY Doe 2—and hundreds of others in suits across the country—for defamation and related torts.  New York, however, has enacted "anti-SLAPP" legislation to deter this abuse of the judicial process and to provide a cause of action to persons who have been sued without a substantial basis in law and fact for exercising their free speech rights.  NY Doe 2's Counterclaim asserts a single claim under that provision of New York's anti-SLAPP law.

The Motion barely attempts to attack the sufficiency of the Counterclaim.  Instead, Watson devotes his energies to portraying himself as the real victim, based on misleading descriptions of the evidence produced in discovery in this case.  But that tactic founders on the bedrock principle that a motion to dismiss is addressed only to the legal sufficiency of a pleading, not to evaluating the evidentiary record.  Moreover, even assuming that it was NY Doe 2, and not Watson, who was attempting to stifle free speech, as Watson claims, and that Watson's distortion of reality could somehow serve as a basis for dismissal, the anti-SLAPP "special motion to dismiss" procedural

1

device the Motion invokes conflicts with the Federal Rules of Civil Procedure and cannot be applied in federal court.

Finally, Watson's overheated rhetoric casting him as David against NY Doe 2's purported Goliath is absurd.  NY Doe 2—a junior employee in her twenties with no power in the advertising industry—did not initiate this lawsuit.  Rather, Watson filed this lawsuit to strip NY Doe 2 of her First Amendment right to free speech about issues of public interest and punish her for daring to speak out about her victimization to protect others.  This is exactly the behavior New York sought to address in revising and enhancing its anti-SLAPP statute.  The Court should deny the Motion.

## BACKGROUND

### I.    New York's Anti-SLAPP Laws.

New York is one of at least 30 states to have enacted legislation to dissuade so-called Strategic Lawsuits Against Public Participation ("SLAPP"),[1] that is, lawsuits "characterized as having little legal merit but . . . filed nonetheless to burden opponents with legal defense costs and the threat of liability and to discourage those who might wish to speak out in the future."  *Mable Assets, LLC v. Rachmanov*, 146 N.Y.S.3d 147, 149 (2d Dep't 2021) (quoting *600 West 115th Street Corp. v. Von Gutfeld*, 80 N.Y.2d 130, 137 n.1 (1992)).  Anti-SLAPP legislation is "aimed at broadening the protection of citizens facing litigation arising from their public petition and participation."  *Id.*

New York's anti-SLAPP legislation comprises several provisions designed to accomplish these goals:

---

[1] *See State Anti-SLAPP Laws*, Public Participation Project, https://anti-slapp.org/your-states-free-speech-protection/.

- A plaintiff bringing a SLAPP is held to a heightened standard of proof: he must establish "by clear and convincing evidence" that the defendant's communication giving rise to the SLAPP "was made with knowledge of its falsity or with reckless disregard of whether it was false." N.Y. Civ. Rights Law § 76-a(2). This mirrors the "actual malice" standard derived from federal constitutional case law. *See N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964).

- A defendant who is wrongfully named in a SLAPP is provided a cause of action against the plaintiff, and can recover costs and attorneys' fees incurred in defending against the SLAPP upon a demonstration that the SLAPP "was commenced or continued without a substantial basis in fact and law." N.Y. Civ. Rights Law § 70-a(1)(a). Additional compensatory damages and punitive damages are available if the SLAPP defendant demonstrates that the plaintiff acted "for the purpose" (or "sole purpose") "of harassing, intimidating, punishing or otherwise maliciously inhibiting the free exercise of speech, petition or association rights." *Id.* § 70-a(1)(b), (c).

- In New York State court, a SLAPP defendant can also avail herself of special procedural mechanisms to expedite dismissal of the SLAPP. These include special motions to dismiss under CPLR 3211(g) and for summary judgment under CPLR 3212(h), both of which shift the burden onto the SLAPP plaintiff to demonstrate that his claim "has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law." A state court deciding a special motion to dismiss under CPLR 3211(g) may consider affidavits

submitted by the parties, CPLR 3211(g)(2), and must stay discovery while the motion is pending, CPLR 3211(g)(3).

In November 2020, New York amended its anti-SLAPP laws to broaden the protections afforded to defendants facing SLAPPs. *See* 2020 N.Y. Laws ch. 250, § 2. Among other things, the amendments expanded the definition of "action involving public petition and participation," the category of claims to which the anti-SLAPP provisions apply. One purpose of this amendment was to protect victims of sexual harassment, abuse, and assault who speak publicly about their experiences and are "slapped" with defamation lawsuits by their abusers—a frequent tactic that came under particular scrutiny in the wake of the #MeToo movement.[2] The legislation's sponsor explained that the amendment was enacted, in part, to prevent "survivors of sexual abuse" from "being dragged through the courts on retaliatory legal challenges solely intended to silence them."[3]

## II.    Factual and Procedural Background.

Watson has held top creative roles at prominent advertising agencies and has received multiple awards for his work. At the time of the events at issue, ███████████████ ███████████████████████████████████████████████████ CC ¶ 15. ██████████████████████████████████████████████ *Id.* ███████████████████████████████████████████████

---

[2] Press Release, Sen. Brad Hoylman, As Trump Attacks The Free Press, Legislature Passes Senator Hoylman And Assemblywoman Weinstein's Legislation To Crack Down On Frivolous "SLAPP" Lawsuits Used To Silence Critics (July 22, 2020), https://www.nysenate.gov/newsroom/press-releases/brad-hoylman/trump-attacks-free-press-legislature-passes-senator-hoylman-and.

[3] Press Release, New York State Legislature, Senate and Assembly Majorities Advance Anti-SLAPP Legislation to Protect Free Speech (July 22, 2020), https://nyassembly.gov/Press/files/20200722a.php.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████ CC ¶¶ 16, 17. █████████████████

██████████████████████████████████ CC ¶¶ 16.b, 19.

█████████████████████████████████████████████ CC ¶ 19. ███████

███████████████████████████████████████████████████████

██████████████████████████████████ *Id.* ██████████████████

██████████████████████████████████████████████ CC ¶ 20. █████

███████████████████████████████████████████████████████

████████████████ *Id.* ███████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████ *Id.* █████████████████████

████████████████████████████████████████████████████████ *Id.*

████████████████████████████████████ *Id.*

███████████████████████████████████████████████

████████████████████████████████████ CC ¶ 21. ████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████ CC ¶ 22. ██

████████████████████████████████████ CC ¶ 23. ███████████████

████████████████████████████████████████ *Id.* ████████████████

██████████████████████████████████████████ CC ¶ 26.

5

████████████████████████████████████████████████████

████████████ CC ¶ 24. ████████████████████████████████

████████████████████████████████████████████████████

████████████████ *Id.* ████████████████████████████

████████████████████████████████████████████████████

██████████████████████████ CC ¶ 18. ██████████████████

████████████████████████████████████████████████████

██████████████████████████ CC ¶ 25. ██████████████████

████████████████████████████████████████ *Id.*

██████████████████████████████ CC ¶ 27. ████████████

████████████████████████████████████████████████ CC

¶ 28; *see Watson v. Diet Madison Avenue*, No. BC707278 (Cal. Super., L.A. Cty.). ████████████

████████████████████████████████████ CC ¶ 29. ██████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ *Id.* ████████████████████████████

████████████████████ *Id.*

████████████████████████████████████████████

████████ CC ¶ 30; *see Watson v. Crispin Porter & Bogusky LLC*, No. 1:18-cv-1658 (D. Colo.).

████████████████████████████████████████████████████

██████████████████████████████ CC ¶ 31. ██████████████

████████████████████████████████████████████████████

████████████████████████████████ *Id.* ████████████████████

████████████████████████████████████████ *Id.*

Watson commenced this action against NY Doe 2 and others on January 17, 2019, and filed an amended complaint on July 19, 2019. Watson alleges that NY Doe 2 and others made defamatory statements and committed related torts which resulted in the termination of his employment at CP+B. *See generally* ECF 47. On February 11, 2020, this Court granted in part NY Doe 2's motion to dismiss Watson's Amended Complaint, including dismissing four baseless claims, including, among others, his claim for negligent interference with prospective economic advantage (Claim VI) "because in New York there is no [such] cause of action." ECF 99 at 26–27. Watson's surviving claims against NY Doe 2 are for defamation (Claim I) and tortious interference with contract (Claim IV), both arising out of the same allegedly defamatory statements. Although Watson's complaint is not so limited, the Motion states that Watson's claims relate only to NY Doe 2's statements about his conduct towards her at a Boulder bar and on the night of the sexual assault in New York. Mot. 11.

The parties then engaged in discovery, during which over 800 documents were exchanged, and four fact witnesses and two expert witnesses were deposed. Fact discovery concluded on August 2, 2021 and expert discovery concluded on September 29, 2021. *See* ECF 190. ██████

██████████████████████████████████████ Watson made materially false allegations in his complaint regarding his history of sexual impropriety, including that he had no complaints of sexual misconduct against him, that he had never been interviewed as part of any investigation, that he was never disciplined for any type of improper behavior, and that there was no evidence supporting any allegations of harassment or other sexual misconduct by him. CC ¶¶ 9, 34.

Additionally, Watson has engaged in harassing conduct against NY Doe 2 throughout this litigation.  Shortly after filing this lawsuit, Watson's counsel threatened to publicly reveal NY Doe 2's identity as leverage for various demands, prompting the Court to issue a protective order.  CC ¶ 33.  Since then, Watson has on multiple occasions revealed confidential and identifying information in violation of the protective orders in three different pending matters.  *See, e.g.*, ECF 134, 141, 211.  ███████████████████████████████████████████ ████████████████████████████████████████  CC ¶ 35.

On June 24, 2021, NY Doe 2 requested leave to file a counterclaim under New York's amended anti-SLAPP laws.  ECF 167.  During a telephonic conference on July 1, 2021, the Court granted NY Doe 2 leave to amend her answer to assert additional affirmative defenses and counterclaims under the anti-SLAPP laws.  On October 8, 2021, NY Doe 2 filed her Counterclaim, which is the pleading at issue in Watson's Motion.

NY Doe 2 brings a single claim under N.Y. Civ. Rights Law §§ 70-a and 76-a.  Based on the events described above, NY Doe 2 alleges that she engaged in speech on issues of public interest, namely, sexual harassment, discrimination, sexual assault in the workplace and advertising industry, and protecting women from harassment and abuse, CC ¶¶ 43–45; and that,`in response, Watson commenced and continued a lawsuit against her without a substantial basis in fact and law, CC ¶¶ 46–49.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), NY Doe 2's Counterclaim must merely contain "factual content that allows the court to draw the reasonable inference that [Watson] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court must accept the Counterclaim's factual allegations as true and must draw all reasonable inferences in favor of NY Doe 2.  *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

A motion under Rule 12(b)(6) is addressed to the sufficiency of the relevant pleading. *Patane v. Clark*, 508 F.3d 106, 111–12 (2d Cir. 2007) (citation omitted).  Accordingly, courts generally cannot look beyond the four corners of the pleading in considering a motion to dismiss. *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  Courts have recognized only limited exceptions to this rule, for "any written instrument attached to the [pleading] as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the [pleading] heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013).  A court may also consider "matters of which judicial notice may be taken."  *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016).[4]

## ARGUMENT

NY Doe 2 more than adequately alleges the two elements of a claim under N.Y. Civ. Rights Law § 70-a(1)(a): that Watson's lawsuit falls within the statutory definition of "action involving public petition and participation," and that Watson commenced or continued the lawsuit "without

---

[4] Watson argues that his Motion should be considered under the standard applicable to the special motion to dismiss procedures set forth in CPLR 3211(g). *See* Mot. 10–11.  However, that standard is not applicable in federal court. *See infra* Part III.

a substantial basis in fact and law." Indeed, Watson's Motion barely challenges the sufficiency of NY Doe 2's allegations, but instead engages in a one-sided and misleading exegesis of the so-called "objective evidence" produced in discovery in an attempt to refute the truth of NY Doe 2's allegations. *See, e.g.*, Mot. 7, 12, 15. But, under Rule 12(b)(6), the Court must accept NY Doe 2's allegations as true and cannot consider Watson's cherry-picked evidence. Nor can Watson avail himself of the special motion to dismiss procedure in CPLR 3211(g), which under controlling Second Circuit precedent is inapplicable in federal court. Finally, a Rule 12(b)(6) motion to dismiss is not an appropriate vehicle for a request for damages or attorneys' fees.

## I. NY Doe 2 States a Claim Under N.Y. Civ. Rights Law § 70-a(1)(a).

N.Y. Civ. Rights Law § 70-a(1) provides: "A defendant in an action involving public petition and participation . . . may maintain an action, claim, cross claim or counterclaim to recover damages, including costs and attorney's fees, from any person who commenced or continued such action; provided that: (a) costs and attorney's fees shall be recovered upon a demonstration . . . that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law." Accordingly, to state a claim under § 70-a(1)(a), NY Doe 2 must allege that: (1) Watson's action against her is an "action involving public petition and participation"; and (2) the action was "commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law." The Counterclaim sufficiently alleges both elements.

### A. Watson's Action Involves Public Petition and Participation.

As amended in November 2020, New York's anti-SLAPP laws define "action involving public petition and participation" as any "claim based upon: (1) any communication in a place

open to the public or a public forum in connection with an issue of public interest; or (2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition."  N.Y. Civ. Rights Law § 76-a(1)(a).[5]  The definition further specifies: "'Public interest' shall be construed broadly, and shall mean any subject other than a purely private matter."  *Id.* § 76-a(1)(d).  As an initial matter, Watson does not dispute that his lawsuit against NY Doe 2 fits that definition.  That is sufficient to resolve the issue in NY Doe 2's favor.  *See Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*, 483 F. Supp. 3d 195, 206 n.6 (S.D.N.Y. 2020) ("Arguments not raised in a party's brief are deemed waived.").  But even setting that aside, the Counterclaim's allegations sufficiently establish that Watson's lawsuit against NY Doe 2 is an "action involving public petition and participation."

First, NY Doe 2's statements giving rise to Watson's claims plainly constitute communications or lawful conduct in furtherance of her exercise of her rights to free speech "in connection with an issue of public interest," namely, sexual harassment, discrimination, sexual assault in the workplace and advertising industry, and protecting women from harassment and abuse, as well as the ways in which perpetrators of sexual harassment and abuse use fear of public

---

[5] Several courts have held, and Watson does not dispute, that the amended definition applies retroactively to SLAPP lawsuits filed before the effective date of the amendment.  *See Sweigert v. Goodman*, 2021 WL 1578097, at *2 (S.D.N.Y. Apr. 22, 2021); *Coleman v. Grand*, 523 F. Supp. 3d 244, 258–59 (E.D.N.Y. 2021); *Palin v. N.Y. Times Co.*, 510 F. Supp. 3d 21, 26–28 (S.D.N.Y. 2020); *Reus v. ETC Hous. Corp.*, 148 N.Y.S.3d 663, 669 n.1 (Sup. Ct. 2021); *Sackler v. Am. Broad. Cos.*, 144 N.Y.S.3d 529, 532–33 (Sup. Ct. 2021).  In any event, merely "continu[ing]" a SLAPP lawsuit is actionable under § 70-a(1)(a), and Watson has plainly "continued" this lawsuit since the definition was amended.

exposure to intimidate their victims into silence.  *See* CC ¶¶ ███ 44–45.  Watson alleges that NY Doe 2 defamed him and tortiously interfered with his employment contract by making statements accusing him of sexual harassment and assault.  ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████  CC ¶ 21; *see Coleman*, 523 F. Supp. 3d at 259 (finding that "sexual impropriety and power dynamics in the music industry, as in others, were indisputably an issue of public interest" in the wake of the #MeToo movement).[6]

████████████████████████████████████████████████████████

██████████████████████████████CC ¶ 22, █████████████

██████████████████████████████  CC ¶ 25.  The broad statutory definition of "public interest" as reaching "any subject other than a purely private matter" easily covers NY Doe 2's statements about the harassment and abuse she suffered at the hands of a powerful man in her industry.

Further, NY Doe 2's "Gloves are off" statement was published on the DMA Instagram account, making it a communication in a place open to the public or a public forum in connection with one or more issues of public interest.  CC ¶ 45; *see Goldman v. Reddington*, 2021 WL 4099462, at *4 (E.D.N.Y. Sept. 9, 2021) (allegations of sexual assault posted on Facebook and LinkedIn were communications in public fora); *Coleman*, 523 F. Supp. 3d at 266 (Facebook is a public forum within the meaning of New York's anti-SLAPP law).

---

[6] Indeed, the sponsor of the bill that introduced the current statutory definition of "action involving public petition and participation" recognized that the purpose of the new definition was to protect "survivors of sexual abuse" from meritless lawsuits.  *See supra* at 4.

**B.      Watson Commenced and Continued This Action Without a Substantial Basis in Fact and Law.**

NY Doe 2 also sufficiently alleges the second element of a claim under § 70-a(1)(a): that Watson's claims against her lack a substantial basis in fact and law.  As an initial matter, Watson brought several claims against NY Doe 2 that were dismissed under Rule 12(b)(6), including a claim for negligent interference with prospective economic advantage that does not exist under New York law.  ECF 99 at 27.  More broadly, and critically, NY Doe 2 alleges that Watson's complaint contains numerous materially false allegations, that Watson knew or should have known numerous allegations were false at the time of filing, and that discovery in this action has confirmed that Watson knew or should have known numerous allegations were false at the time of filing.  *See, e.g.*, CC ¶¶ 9, ███████ 34.  Accordingly, NY Doe 2 sufficiently alleges Watson lacked a substantial basis in fact and law when he "commenced" this action.

NY Doe 2 also alleges Watson "continued" this action without a substantial basis in fact and law, which is sufficient to satisfy this element.  To prevail on his remaining claims, Watson must prove, among other things, that NY Doe 2's statements about his misconduct were false.  *See Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (falsity is element of claim for defamation); *Amerisource Corp. v. Rx USA Int'l Inc.*, 2010 WL 2160017, at *7 (E.D.N.Y. May 26, 2010) (tortious interference claim based on defamatory conduct requires proof of falsity).  Moreover, because Watson's claims meet the definition of an "action involving public petition and participation," Watson must prove by clear and convincing evidence that NY Doe 2 acted with actual malice, *i.e.*, that each allegedly defamatory statement was published with "with knowledge of its falsity or with reckless disregard of whether it was false."  N.Y. Civ. Rights Law § 76-a(2).

The Counterclaim, however, plainly alleges that Watson has no basis (let alone a "substantial basis") to prove either falsity or actual malice.  ████████████████████



*Id.*[7]  Accepting these allegations as true, as the Court must, *see ATSI Comms.*, 493 F.3d at 98, any claim based on NY Doe 2's statements describing Watson's conduct was necessarily commenced and continued without a substantial basis in law and fact.[8]

---

[7] Watson protests that "[b]ecause NY Doe 2 has firsthand knowledge of her accusations, if those accusations are proven false, it necessarily follows that Watson will have proven that NY Doe 2 acted with the [sic] actual malice." Mot. 13.  But Watson has not proven that the accusations were false, and on this motion the Court is required to accept NY Doe 2's allegations that her accusations were true.  Indeed, by Watson's logic, if NY Doe 2's allegations of sexual harassment and rape are proven to be *true* (which, in any event, is not her burden), it necessarily follows Plaintiff (who has firsthand knowledge of the conduct he is accused of) brought his suit without any substantial basis in law and fact.

[8] As discussed above, the Counterclaim also alleges that certain key factual allegations in Watson's complaint, including that he was never previously investigated or disciplined for sexual misconduct, were

Finally, the Counterclaim alleges that ███████████████████████████

██████████████████████████████████ CC ¶ 36, and that Watson

thus "will be unable to prove by clear and convincing evidence that NY Doe 2 made any statement

with actual malice," CC ¶ 49.  These allegations further plead that Watson has continued this action

without a substantial basis in fact and law.

Watson asserts, with no supporting case law, that his claims have a substantial basis

because he purportedly denied all wrongdoing under oath.  Mot. 13.  As explained below, *see infra*

Part II, the Court may not consider Watson's deposition testimony on this motion.  And in any

event, a SLAPP plaintiff like Watson cannot insulate himself from liability under § 70-a(1) simply

by making denials at a deposition.  The statute requires Watson's claims to have a substantial basis

in *fact*, and if the facts are as NY Doe 2 has alleged, Watson's claims plainly lack that basis.

### C.   Watson's "Obvious Alternative Explanation" Argument Lacks Merit.

Watson nevertheless argues that there is an "obvious alternative explanation" for his

conduct—namely, that he is legitimately seeking redress for false accusations against him.  Mot.

13–14.  That argument is nothing more than a request for the Court to disregard the Counterclaim's

allegations, in violation of Rule 12(b)(6).  As explained above, the Court must accept the

Counterclaim's allegations as true, not an "alternative explanation" that runs directly counter to

them.

Watson misreads the case law on which he relies.  As the Motion itself concedes, to be

credited at the motion to dismiss stage, the alternative explanation must be an explanation "for the

facts alleged," Mot. 14, not an explanation that is *inconsistent* with the facts alleged, as is

---

false, CC ¶ 34, further establishing that Watson's claims lack a "substantial basis."

Watson's.  The courts in Watson's cited cases refused to infer the existence of a conspiracy or of discriminatory intent from factual allegations that had more likely innocent explanations.  *See Iqbal*, 556 U.S. at 681–82 (alleged arrest and detention of Arab and Muslim men after September 11 more likely explained by Arab Muslims' involvement in September 11 attacks than by discriminatory policy); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567–69 (2007) (alleged failure of competitors to enter each others' territories more likely explained by historical conditions and competitors' self-interest than by antitrust conspiracy); *Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250, 255–56 (S.D.N.Y. 1995) (dismissing antitrust conspiracy claims where, based on alleged facts, defendants had no rational motive to conspire and merely engaged in "independent, parallel conduct . . . in their own self-interests").  Here, however, the facts alleged in the Counterclaim do not support the "alternative explanation" offered by Watson.  Watson's bald assertion that those alleged facts are not true is not an "obvious alternative explanation" permitting the Court to disregard them.

## II.   Rule 12(b)(6) Bars Consideration of Watson's Extrinsic Evidence.

Unable to mount a serious challenge to the sufficiency of the facts alleged in the Counterclaim, Watson improperly resorts to an extensive discussion of extrinsic evidence.  But it is black-letter law that under Rule 12(b)(6)—the only procedural standard applicable here—the Court may not consider that evidence at the motion to dismiss stage.

The purpose of a motion to dismiss under Rule 12(b)(6) is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).  "Because a Rule 12(b)(6) motion challenges the complaint as presented by the plaintiff, taking no account of its basis in evidence, a court adjudicating such a motion may review only a narrow universe of materials."

*Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). Those include "facts stated on the face of the complaint, documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken." *Id.* (alterations omitted) (quoting *Concord Assocs., L.P. v. Entm't Props. Tr.*, 817 F.3d 46, 51 n.2 (2d Cir. 2016). A court may also consider an extrinsic document that is "integral to the complaint" because "the complaint relies heavily upon its terms and effect." *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

The extrinsic evidence offered by Watson falls outside the scope of the materials the Court may consider on this motion. Watson asks the Court to consider a witness declaration and transcripts of depositions conducted in this case, Ayotte Decl. Exs. B–D, F; NY Doe 2's unsworn statement provided in Watson's lawsuit against CP+B, *id.* Ex. A; and a corporate record, a social media post, and text messages produced in discovery, *id.* Exs. E, G–H. Watson does not argue—nor could he—that any of this evidence is appended to or incorporated by reference in the Counterclaim, or that it is properly the subject of judicial notice. Instead, he claims that it is "integral to" the Counterclaim, but that limited exception to the rule against extrinsic evidence does not apply here.

First, all but three of the documents offered by Watson are not even mentioned in the Counterclaim and thus cannot be "integral to" it under any definition of that term. Although the Counterclaim does briefly mention Watson's and NY Doe 2's depositions, *see* CC ¶¶ 25, 35, 36, 38, and NY Doe 2's statement submitted in the CP+B litigation, *see* CC ¶ 31, "[m]erely mentioning a document in the complaint," or "even offering 'limited quotations' from the document," is not enough to make it "integral to" the complaint. *Goel*, 820 F.3d at 559 (alteration omitted). Rather,

the question is whether the Counterclaim "relies heavily upon [their] terms and effect." *Id.*
Watson makes no attempt to explain how that is the case here.

Second, courts typically recognize the exception for documents integral to the complaint
only where the document "is a contract or other legal document containing obligations upon which
the plaintiff's complaint stands or falls." *Id.* (quoting *Global Network Commc'ns, Inc. v. City of
New York*, 458 F.3d 150, 157 (2d Cir. 2016)). Indeed, it is hard to understand how a complaint
can rely on the "terms and effect" of a document unless it is a legal document. Watson's extrinsic
evidence, however, consists not of legal documents but of testimony, witness statements, and other
miscellaneous communications. These are precisely the type of materials that courts routinely
refuse to consider on a motion to dismiss. *See, e.g.*, *Goel*, 820 F.3d at 559 (deposition testimony
and affidavit); *Global Network Commc'ns*, 458 F.3d at 156–57) (witness testimony); *see
also Columbia Cas. Co. v. Neighborhood Risk Mgmt. Corp.*, 2015 WL 3999192, at *4 (S.D.N.Y.
June 29, 2015) (transcripts and emails obtained in discovery); *Polanco v. NCO Portfolio Mgmt.*,
23 F. Supp. 3d 363, 372–74 (S.D.N.Y. 2014) (allegations that specific facts were learned at
deposition did not make deposition transcript integral to complaint).

Third, the cases on which Watson relies are inapposite. In *I. Meyer Pincus & Assocs., P.C.
v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991), the court held that a prospectus was
integral to the complaint where the plaintiff's securities fraud claim was "based *only* on an alleged
written misrepresentation appearing within the prospectus." The case thus involved a claim based
entirely on the text of a legal document—a far cry from this case. Watson also relies on *In re J.P.
Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340 (S.D.N.Y. 2011), but simply quotes language from
that decision's "standard of review" section, *see id.* at 354–55, without explaining how that
standard was applied. Indeed, the court's ability to consider extrinsic materials does not even

appear to have been a disputed issue, and the opinion does not appear to rely on any testimony, communications, or other extrinsic evidence of the type Watson seeks to have the Court consider here.

In sum, Watson's extrinsic evidence, the majority of which is not even mentioned in the Counterclaim, is not "integral to" the Counterclaim and cannot be considered on this motion.  To hold otherwise "would stretch beyond reason the meaning of integral in this context." *Global Network Commc'ns*, 458 F.3d at 157.[9]

---

[9] Further, although beyond the scope of this Motion, Watson's description of the supposed facts is so riddled with misstatements and inaccuracies that it should be entirely disregarded, as illustrated by the following non-exhaustive examples:

- Watson repeatedly claims that the "objective evidence" establishes that he did not harass or assault NY Doe 2.  *See, e.g.*, Mot. 1, 3, 7.  But he has no such "objective evidence"—indeed, he concedes, for example, that "there were no witnesses to what occurred in Plaintiff's hotel room" on the night of the rape.  Mot. 13.  Watson's "evidence" that there was no rape consists entirely of cherry-picked social media posts and communications that he believes, based on nothing more than outdated and baseless stereotypes about how rape victims "should" behave, undermine NY Doe 2's credibility.  *See* Mot. 7.

- Citing nothing other than his attorney's declaration, Watson claims that NY Doe 2 "has now been revealed to be" "[t]he sole source" of the accusations against him.  Mot. 8.  Discovery has "revealed" nothing of the sort, and Watson is still actively pursuing third-party discovery to uncover the identities of his other accusers.  *See* ECF 185, 193, 196.

- Watson also claims (citing no support at all) that "[i]t is undisputed" that NY Doe 2's statements led to his termination.  Mot. 14.  NY Doe 2 *does* dispute this assertion; ███████████████

### III.   New York's Special Anti-SLAPP Motion to Dismiss Is Not Applicable in Federal Court.

Perhaps recognizing that he cannot prevail under Rule 12(b)(6), Watson argues in the alternative that his motion should be considered under the special anti-SLAPP motion to dismiss standard in CPLR 3211(g).  As explained above, that standard requires a court to dismiss a SLAPP unless the SLAPP plaintiff "demonstrates that the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law."  CPLR 3211(g)(1).  It also permits a court to consider "supporting and opposing affidavits stating the facts upon which the action or defense is based."  CPLR 3211(g)(2).  Watson argues that NY Doe 2's Counterclaim under the anti-SLAPP laws is *itself* a SLAPP, allowing *him* to use anti-SLAPP procedural devices.  *See* Mot. 18–19.[10]

The argument fails because, under controlling Second Circuit precedent, CPLR 3211(g) is inapplicable in federal court.  In *La Liberté v. Reid*, the Second Circuit considered the applicability of California's similar anti-SLAPP "special motion to strike," which "requires outright dismissal unless the plaintiff can 'establish a probability that he or she will prevail on the claim.'"  966 F.3d

───────────────

███████████████████████████████████████████████████

██████████████████████████████   *See* CC ¶¶ 27, 29.

- Again citing nothing, Watson speculates that NY Doe 2's attorneys' fees are being paid by "the Goliath ████████████████████████ Mot. 10.  That is incorrect; the undersigned attorneys are representing NY Doe 2 pro bono.

[10] Although the Court need not resolve the issue, Watson provides no support for the proposition that a claim under § 70-a(1) can itself be a SLAPP.  Nothing suggests that the legislature intended the anti-SLAPP laws to be wielded by SLAPP plaintiffs as a further weapon against the defendants whom they were enacted to protect.

79, 87 (2d Cir. 2020) (alteration omitted) (quoting Cal. Civ. Proc. Code § 425.16(b)(3)).  The court concluded that the special motion was inapplicable in federal court because it "'establishes the circumstances under which a court must dismiss a plaintiff's claim before trial,' a question that is already answered (differently) by Federal Rules 12 and 56."  *Id.* (quoting *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333–34 (D.C. Cir. 2015)).  The court explained that the special motion's requirement to demonstrate a probability of success on the merits conflicted both with Rule 12, under which "the pleading burden is to allege 'enough facts to state a claim to relief that is plausible on its face,'" *id.* (quoting *Twombly*, 550 U.S. at 570)), and with Rule 56, which "enables plaintiffs to proceed to trial by identifying any genuine dispute of material fact."  *Id.*

On this issue, California's special motion is indistinguishable from New York's.  Like California's "special motion to strike," CPLR 3211(g) heightens the standard for a motion to dismiss by requiring that the plaintiff in a SLAPP action demonstrate his claim "has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law."  CPLR 3211(g)(1).  The statute also instructs the court to consider both the pleadings and "supporting and opposing affidavits."  *Id.* 3211(g)(2).  These standards plainly conflict with Rule 12(b)(6), which requires no more than alleging "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  And the requirement to demonstrate that a claim has a substantial basis conflicts with Rule 56, which requires no more than "identifying any genuine dispute of material fact."  *La Liberté*, 966 F.3d at 87.

Because they conflict with the Federal Rules, the special motion to dismiss standards in CPLR 3211(g) are inapplicable in federal court.  *See Sweigert*, 2021 WL 1578097, at *3 (holding that "certain procedural aspects of CPLR 3211(g) conflict with Rules 12 and 56 of the Federal Rules of Civil Procedure").  Watson thus cannot shift the burden to NY Doe 2 to demonstrate, at

this stage, that her Counterclaim has a "substantial basis." Nor can Watson invoke CPLR 3211(g) as a basis for the Court to consider his extrinsic evidence.

**IV.   Watson's Motion Is Not a Proper Vehicle for a Request for Costs, Attorneys' Fees, or Damages.**

Watson concludes his Motion with a two-sentence request for costs, attorneys' fees, and unspecified "other damages" under § 70-a(1)(a). *See* Mot. 19–20. As an initial matter, the request should be denied because it is premised on Watson prevailing on his motion to dismiss, which is meritless. But even setting that aside, the request is procedurally improper and should be disregarded entirely. Section 70-a(1) contemplates that the person seeking relief will bring "an action, claim, cross claim or counterclaim" for damages, costs, or fees. N.Y. Civ. Rights Law § 70-a(1). It does not permit recovery based on two sentences at the tail end of an unrelated motion. *See Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.,* 2021 WL 3173804, at *9 (S.D.N.Y. July 27, 2021) ("A single sentence in a brief is not an appropriate basis on which to premise an award of attorney's fees or damages under [§ 70-a(1)] . . . . *[A] pleading* of some sort [must] be filed in order to collect attorney's fees."). Because he has not filed a pleading under § 70-a(1)(a), Watson cannot recover under that statute.

**CONCLUSION**

For the reasons set forth above, NY Doe 2 respectfully requests that this Court deny Watson's Motion in its entirety.

22

Dated: New York, New York
       December 21, 2021

Respectfully Submitted,

 /s/ Laura P. MacDonald_____

Laura P. MacDonald
Rémi J.D. Jaffré
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
Tel.: (212) 891-1600
LMacDonald@jenner.com
RJaffre@jenner.com

*Counsel for Defendant NY Doe 2*

23

**CERTIFICATION OF COMPLIANCE**

I hereby certify that this memorandum of law is in compliance with the word limit set forth in Rule II.D of the Court's Individual Practices.  According to the word processing program used to prepare this memorandum, the total number of words in the memorandum, excluding the cover page, certification of compliance, table of contents, table of authorities, and signature block, is 6,959.

Dated: December 21, 2021                  */s/ Rémi J.D. Jaffré*
                                          Rémi J.D. Jaffré

**CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2021, I electronically filed the foregoing with the

Clerk of Court, to be served on all parties of record via the CM/ECF system.

Respectfully Submitted,

 /s/ Laura P. MacDonald

Laura P. MacDonald
Rémi J.D. Jaffré
JENNER & BLOCK LLP
919 Third Avenue
New York, NY 10022
Tel.: (212) 891-1600
LMacDonald@jenner.com
RJaffre@jenner.com

*Counsel for Defendant NY Doe 2*