**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**RALPH M. WATSON,**

                              **Plaintiff,**                    **19-cv-533 (JGK)**

              **- against -**                          <u>**MEMORANDUM OPINION**</u>
                                                       <u>**AND ORDER**</u>
**NY DOE 1, ET AL.,**

                              **Defendants.**

---

**JOHN G. KOELTL, District Judge:**

        The plaintiff, Ralph M. Watson, brought this diversity
action against Illinois Doe 1, NY Doe 2, and various other Doe
defendants, asserting New York state-law claims for defamation
and other torts arising out of alleged statements that implicated
the plaintiff in several acts of workplace sexual misconduct. The
plaintiff alleges that these statements were false, and also that
the accusations against him caused substantial reputational harm
and prompted his termination from the advertising agency Crispin
Porter + Bogusky ("CP+B"). As relevant here, in 2020, this Court
dismissed most of the claims against Illinois Doe 1 and NY Doe 2
pursuant to Federal Rule of Civil Procedure 12(b)(6), leaving
only (1) a defamation claim against Illinois Doe 1, and (2) a
defamation claim and a related tortious interference with contract
claim against NY Doe 2. <u>See</u> <u>Watson v. NY Doe 1</u>, 439 F. Supp. 3d
152 (S.D.N.Y. 2020). The surviving claims concern only a subset of

the allegedly false and defamatory statements identified in the plaintiff's complaint. See id. at 162, 165.

In 2021, Illinois Doe 1 and NY Doe 2 (together, the "Counterclaimants") amended their respective answers to assert counterclaims against Watson pursuant to New York Civil Rights Law §§ 70-a et seq., the state's "anti-SLAPP" law -- i.e., a law enacted to curb "Strategic Lawsuits Against Public Participation," or "SLAPPs." See Ill. Doe 1 Answer & Counterclaim, ECF No. 195 ("IL Doe 1 Counterclaim"); NY Doe 2 Answer & Counterclaim, ECF No. 205 ("NY Doe 2 Counterclaim") (together, the "Counterclaims"). Watson has filed separate motions to dismiss each of those Counterclaims pursuant to Rule 12(b)(6). See ECF Nos. 206, 221. For the reasons set forth below, Watson's motions to dismiss the Counterclaims under New York's anti-SLAPP law are **denied.**

## I.

Unless otherwise indicated, the following facts are taken from the Counterclaims and are accepted as true for purposes of deciding this motion.

## A.

Illinois Doe 1, a resident of Illinois, is a "writer, social commentator, and blogger." IL Doe 1 Counterclaim ¶¶ 2, 7. Illinois Doe 1 is also the "founder and moderator of Girlsday," a platform on which members can post entries about "activities,

facts, and circumstances related to the advertising industry."
Id. ¶¶ 8-9. Users of Girlsday turn to the platform "to discuss
the #MeToo movement," and also "to share personal experiences
with . . . discrimination, harassment, and assault at work,"
which "are common experiences among Girlsday members." Id. ¶¶
13-14.

Watson was the Chief Creative Director of the advertising
agency CP+B from "April 2014 through CP+B's termination of [his]
employment." Id. ¶ 41. Illinois Doe 1 alleges that "[c]ertain
women were made vulnerable by [Watson's] position of power" at
CB+P, and that Watson's "potential role in a number of
questionable relationships with vulnerable women" and his
misconduct were "addressed on Girlsday and other online forums."
Id. ¶¶ 41, 40, 15.

On or about February 2, 2018, Illinois Doe 1 came across
"another person's public Facebook account, where an Adweek article
reporting on the termination of [Watson's] employment [with CP+B]
had been shared." Id. ¶ 16. In response, Illinois Doe 1 used her
own "public Facebook account" to "republish[] a post[] stating that
'9 women reported him,'" which "had originated with Diet Madison
Avenue[.]" on the other person's Facebook page. Id. Several
months later, on May 25, 2018, Illinois Doe 1 shared the
following post on her Instagram account, which linked to a
GoFundMe webpage for Diet Madison Avenue: "@DietMadisonAvenue

needs our help to fight Ralph Watson's defamation law suit. All
donations can be made anonymously. I figure it's the next best
thing to giving money directly to his victims.
https://www.gofundme.com/diet-madison-avenue-legal-defense." Id.
¶ 17. Illinois Doe 1 alleges that these "[p]ublications and
postings," like similar member posts on her platform Girlsday,
"are important and vitally necessary to the advertising
workplace specifically and to the public as a whole," because
they help to "ensure transparency" and to "root out the
mistreatment" of a "vulnerable" group, "specifically women in
the advertising sector." Id. ¶ 39.

Illinois Doe 1 alleges that Watson "did not want [Illinois
Doe 1] to continue with postings regarding his improper . . .
conduct." Id. ¶ 18. Accordingly, Watson allegedly commenced this
lawsuit "to harass and intimidate" Illinois Doe 1, and "to burden
[her] with the emotional toll and financial costs of a legal
defense" until she is "coerced into abandoning making truthful
statements regarding [Watson's] improper" actions. Id. ¶¶ 22-23,
24-25; see also id. ¶¶ 26-27, 33, 46. Based on these
allegations, Illinois Doe 1 claims that this lawsuit against her
is "exactly the type of conduct that the anti-SLAPP laws are
intended to prohibit and remedy," id. ¶ 33, and she seeks
punitive damages, compensatory damages, and attorney's fees and

costs pursuant to New York's anti-SLAPP provisions, N.Y. Civ. Rights Law §§ 70-a, 76-a, see id. ¶¶ 35-52.

**B.**

NY Doe 2, a resident of New York, was hired as a junior-level art director at the Boulder, Colorado office of CP+B in July 2015, at the age of 23. See NY Doe 2 Counterclaim ¶ 15. At the time, Watson, who is decades older than NY Doe 2, was CP+B's Chief Creative Officer. See id.

NY Doe 2 alleges that she was sexually harassed by Watson while she worked for him and while she was on probation based on his directive. See id. ¶¶ 16-17. Around this time, "CP+B Human Resources personnel reached out to NY Doe 2, and NY Doe 2 reported certain of Watson's inappropriate behavior that had occurred." Id. ¶ 18. Then, in March 2017, following a human resources investigation, Watson "was disciplined, including through a written warning and by being required to undergo 'ongoing harassment training.'" Id.

NY Doe 2 also alleges that Watson sexually assaulted and raped her in New York City, after she left CP+B. See id. ¶ 20.

Several months later, in October 2017, the hashtag #MeToo went viral, and hundreds of thousands of posts disclosing instances of sexual harassment and assault were published for the first time on the internet. See id. ¶ 21. "Around this time, a group of anonymous individuals started an Instagram account

called Diet Madison Avenue ("DMA") with an express purpose to collect stories of sexual abuse and discrimination in the advertising industry." Id. ¶ 22. In January 2018, NY Doe 2 reached out to DMA by direct message about Watson's sexual assault and harassment "in order to prevent [Watson] from hurting any other women." Id. ¶ 23. "In response, the DMA Instagram account told NY Doe 2 that she was the eighth person to contact DMA about [Watson]." Id.

On January 25, 2018, NY Doe 2 spoke with the new CP+B Director of Creative Management by telephone and told the director about the sexual harassment and assault. See id. ¶ 25. Also in January 2018, DMA published Instagram statements that Watson alleges defamed him. See id. ¶ 26. On February 2, 2018, CP+B fired Watson. See id. ¶ 27.

In the following year, Watson filed several lawsuits against CP+B and CP+B personnel. See id. ¶ 28. Despite previously having asked CP+B leadership for anonymity, NY Doe 2 agreed on October 22, 2018, to allow CP+B to reveal her identity to Watson in the context of his lawsuit against CP+B. See id. ¶ 31. Through that revelation, Watson brought this case against NY Doe 2, Illinois Doe 1, and others on January 17, 2019. See id. ¶¶ 31-32. Watson sued NY Doe 2 for defamation for, among other statements, a statement she made in a message to the DMA Instagram account on May 24, 2018, about Watson's California

6

lawsuit: "I'm so angry / Gloves are off. I don't care if the industry knows he raped me." Id. ¶ 29.

NY Doe 2 now alleges that Watson "has made allegations to and brought claims in this Court that lack any factual or legal basis, for the purpose of using the levers of litigation to silence [her] First Amendment-protected speech and to harass and punish her . . . ." Id. ¶ 39. NY Doe 2 alleges that Watson "threatened to publicly reveal [her] identity if she did not accede to various demands." Id. ¶ 33. For example, "during a meet and confer [on June 20, 2019], [Watson's] counsel said he would reveal NY Doe 2's name publicly if NY Doe 2 did not provide [Watson] a written statement or affidavit concerning allegations in [Watson's] Complaint." Id. "[T]his Court issued an order prohibiting the parties from disclosing the identity or contact information of certain defendants, including NY Doe 2." Id. NY Doe 2 also alleges that "[Watson's] counsel . . . asked [her] invasive and irrelevant questions about her prior sexual history with other people . . . to harass and attempt to embarrass [her]." Id. ¶ 35. Finally, NY Doe 2 alleges that "[n]either [her] testimony nor other discovery evince any shred of actual malice." Id. ¶ 36.

## II.

A motion to dismiss a counterclaim "is evaluated using the same standard as a motion to dismiss a complaint."[1] A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC, 131 F. Supp. 3d 196, 203 (S.D.N.Y. 2015). Accordingly, in deciding a motion to dismiss a counterclaim pursuant to Rule 12(b)(6), the allegations in the counterclaim are accepted as true, and all reasonable inferences must be drawn in the pleader's favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the [claim or counterclaim] is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). A counterclaim will survive a Rule 12(b)(6) motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A [claim] has facial plausibility when the [pleader] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

**III.**

Applying the Rule 12(b)(6) standard and crediting the allegations set forth in the Counterclaims, both Counterclaimants have stated plausible claims under New York's anti-SLAPP law, N.Y. Civ. Rights Law §§ 70-a et seq.

"Anti-SLAPP laws" -- that is, laws against "strategic lawsuits against public participation" -- "are intended to deter actions filed to punish or harass a defendant for participating in public life." Carroll v. Trump, 590 F. Supp. 3d 575, 580 (S.D.N.Y. 2022). "For [a counterclaimant] to state an affirmative cause of action based on [a] [d]efamation [c]omplaint, she must allege facts from which this Court can plausibly infer that the [d]efamation [c]omplaint (a) is based on a publicly made statement involving an issue of public interest; and (b) was commenced without a substantial basis in fact and law." Max v. Lissner, No. 22-cv-5070, 2023 WL 2346365, at *9 (S.D.N.Y. Mar. 3, 2023) (citing N.Y. Civ. Rights Law § 70-a(1)(a)).

As to the first element, the anti-SLAPP statute, as amended in November 2020,[2] defines an "action involving public petition and participation" as "any communication in a place open to the

---

[2] Courts in this District have found that the amendments apply retroactively to SLAPP lawsuits filed before the effective date of the amendments. See, e.g., Sweigert v. Goodman, 2021 WL 1578097, at *2 (S.D.N.Y. Apr. 22, 2021); Palin v. N.Y. Times Co., 510 F. Supp. 3d 21, 26-28 (S.D.N.Y. 2020).

public or a public forum in connection with an issue of public interest; or any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest, or in furtherance of the exercise of the constitutional right of petition." N.Y. Civ. Rights Law § 76-a(1)(a); see also Palin v. New York Times Co., 510 F. Supp. 3d 21, 25 (S.D.N.Y. 2020). It also provides that "[p]ublic interest shall be construed broadly, and shall mean any subject other than a purely private matter." N.Y. Civ. Rights Law § 76-a(1)(d). Courts have found "sexual impropriety and pressure in [a certain] industry[,]" especially "amid the rising tide of public concern over workplace sexual harassment known as the #MeToo movement[,]" to be matters of "public interest." Coleman v. Grand, 523 F. Supp. 3d 244, 259 (E.D.N.Y. 2021); see also Goldman v. Reddington, No. 18-cv-3662, 2021 WL 4099462, at *4 (E.D.N.Y. Sept. 9, 2021). Furthermore, courts have found "Facebook and LinkedIn posts accusing [an individual] of sexual assault" to be "communications concern[ing] an issue of public interest." Id.

     As to the second element, a counterclaim defendant's "claims of defamation and tortious interference would have a substantial basis in fact and law only if [the counterclaim defendant] had a substantial basis for contending that [the

counterclaimant's] allegations of sexual assault were false."
Id.

### A.

Accepting allegations in Illinois Doe 1's counterclaim as true as required by Rule 12(b)(6), Illinois Doe 1 stated a plausible anti-SLAPP claim.

Illinois Doe 1 demonstrated that Watson's complaint "is based on a publicly made statement involving an issue of public interest[.]" N.Y. Civ. Rights Law § 70-a(1)(a). A statement is publicly made when it is a "contribution to the larger discussions occurring[,]" such as "the #MeToo movement." Coleman, 523 F. Supp. 3d at 259 (noting that the defendant's statement was explicitly framed as her "joining the talk about sexism in the music industry"). Additionally, a statement is publicly made when it is a "communication in a public forum--specifically, . . . Facebook[.]" Goldman, 2021 WL 4099462, at *4. By these standards, Illinois Doe 1's statements were clearly publicly made. Illinois Doe 1's republishing DMA's post about the nine women who reported Watson, see IL Doe 1 Counterclaim ¶ 16, and posting a link to DMA's GoFundMe webpage for its legal defense fund along with the statement "it's the next best thing to giving money directly to [Watson's] victims[,]" id. ¶ 17, were her contributions to the larger discussions of the #MeToo movement, particularly within the advertising industry.

11

Moreover, Illinois Doe 1 made her statements on public fora, namely Facebook and Instagram. See id. ¶¶ 16, 17. Accordingly, Illinois Doe 1's statements were publicly made statements within the meaning of N.Y. Civ. Rights Law § 70-a(1)(a).

Illinois Doe 1's statements also involved an issue of public interest within the purview of the anti-SLAPP statute. Issues of public interest involve "[p]eople . . . engaging in widespread and difficult conversations[,]" such as "about what constitutes inappropriate behavior and professional settings and how to construe consent in sexual relationships between prominent industry players and those seeking opportunities within that industry." Coleman, 523 F. Supp. 3d at 259. Statements involving issues of public interest are notable in that they "contain extensive criticism" of the status quo or are clearly part of a larger narrative by, for example, "contain[ing] [a] hashtag[.]" Goldman, 2021 WL 4099462, at *4. Illinois Doe 1's statements fit these criteria. Her statements addressed the same issue of public interest recognized by the Coleman and Goldman courts: the #MeToo movement and the abuses that occur in the workplace due to gender and power dynamics. Illinois Doe 1 alleges that the "[p]ublications and postings," like similar posts on Girlsday (the platform she moderates), "are important and vitally necessary to the advertising workplace specifically and to the public as a whole," because

12

they help to "ensure transparency" and "root out the
mistreatment" of a "vulnerable" group, "specifically women in
the advertising sector." IL Doe 1 Counterclaim ¶ 39. Indeed,
Illinois Doe 1's statements can be read as a critique of Watson's
"potential role in a number of questionable relationships with
vulnerable women" and his "misconduct[.]" Id. ¶¶ 41, 40, 15. As
such, Illinois Doe 1's statements involved an issue of public
interest.

Finally, Illinois Doe 1 alleged that Watson's complaint
"was commenced without a substantial basis in fact and law."
N.Y. Civ. Rights Law § 70-a(1)(a). Watson's "claims of
defamation and tortious interference would have a substantial
basis in fact and law only if [Watson] had a substantial basis
for contending that [Illinois Doe 1's] allegations . . . were
false." Goldman, 2021 WL 4099462, at *4. Illinois Doe 1
republished statements that nine women reported Watson and that
there were "victims" of Watson's actions. Id. ¶¶ 16-27. Illinois
Doe 1 has plausibly alleged Watson had no substantial basis for
believing that these statements were false, much less that
Illinois Doe 1 had the requisite state of mind to be liable for
defamation or tortious interference. Therefore, Illinois Doe 1
has made a plausible showing that Watson commenced this action
without a substantial basis in fact and law.

In summary, applying the Rule 12(b)(6) standard and
crediting the allegations set forth in Illinois Doe 1's
counterclaim, Illinois Doe 1 has stated a plausible claim under
New York's anti-SLAPP law.

**B.**

NY Doe 2 also stated a plausible anti-SLAPP claim based on
the factual allegations in her counterclaim.

NY Doe 2 pleaded that Watson's complaint "is based on a
publicly made statement involving an issue of public interest"
pursuant to N.Y. Civ. Rights Law § 70-a(1)(a). A statement may
be publicly made even if it is made in correspondence, rather
than in a public forum. See Coleman, 523 F. Supp. 3d at 259-60
(finding the counterclaimant's "email" and "letter" to be a
publicly made statement). Such statements are nevertheless
publicly made when they are a "contribution to the larger
discussions" and an attempt to "speak up in part for the sake of
other[s]." Id. In this case, NY Doe 2's direct message on
Instagram to the DMA account, see NY Doe 2 Counterclaim ¶ 29,
was a publicly made statement. NY Doe 2 chose to speak up in
light of the #MeToo movement, see id. ¶¶ 21-23, and spoke to DMA
because its "express purpose was to collect stories of sexual
abuse and discrimination in the advertising industry," id. ¶ 22.
NY Doe 2 also shared her personal experience to "prevent
[Watson] from hurting any other women" and "because she was

14

afraid [Watson] might harass or assault someone else if he was not held accountable." Id. ¶¶ 23, 25.

Similarly, NY Doe 2's statements involved an issue of public interest. See Coleman, 523 F. Supp. 3d at 259; see also Goldman, 2021 WL 4099462, at *4. More specifically, the issue of public interest concerned "what constitutes inappropriate behavior and professional settings and how to construe consent in sexual relationships between prominent industry players and those seeking opportunities within that industry." Coleman, 523 F. Supp. 3d at 259. Those issues are present in this case. NY Doe 2's statements involved the alleged sexual abuse of a subordinate by a senior executive in the company. NY Doe 2 allegedly made statements to DMA shortly after the #MeToo movement began so that her personal experiences might "prevent [Watson] from hurting any other women." Id. ¶ 23; see also Coleman, 523 F. Supp. 3d at 260. Accordingly, NY Doe 2's messages to the DMA Instagram account involved an issue of public interest.

NY Doe 2 also plausibly alleged that Watson's complaint "was commenced without a substantial basis in fact and law." N.Y. Civ. Rights Law § 70-a(1)(a). Here, NY Doe 2 alleges in her counterclaim with concrete and detailed facts that Watson sexually harassed and assaulted her. See NY Doe 2 Counterclaim ¶¶ 16, 20. Furthermore, NY Doe 2 alleges that Watson was

disciplined after a March 2017 investigation into the
allegations, see id. ¶ 18, and terminated on February 2, 2018,
after a subsequent investigation and interview, see id. ¶¶ 24-
25, 27. The counterclaim therefore adequately pleads that Watson
lacked a substantial basis in fact and law for suing NY Doe 2
for defamation when he allegedly knew that her statements were
true.

Thus, applying the Rule 12(b)(6) standard and crediting the
allegations set forth in NY Doe 2's counterclaim, NY Doe 2 has
stated a plausible claim under New York's anti-SLAPP law.

**IV.**

The plaintiff appears to rely on a pleading standard
enacted by the anti-SLAPP statute, in which the party opposing a
motion to dismiss an anti-SLAPP claim in state court must show
that there is a "substantial basis" for that claim. N.Y.
C.P.L.R. § 3211(g)(1).[3] That is the incorrect standard in this
case. Because the state "substantial basis" standard and the
federal Rule 12(b)(6) standard conflict, the Rule 12(b)(6)
standard controls here.

The New York anti-SLAPP statute's "substantial basis
standard conflicts with the pleading standard articulated in
Federal Rule of Civil Procedure 12(b)(6)." Nat'l Acad. of

---

[3] The plaintiff appears to retreat from that standard in its reply brief and
concede that the appropriate standard is the Rule 12(b)(6) standard. See
Pl.'s Reply, ECF No. 228.

Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc., 551 F. Supp. 3d 408, 431–32 (S.D.N.Y. 2021). Under the New York anti-SLAPP statute, a court must grant a motion to dismiss unless the proponent of the action, claim, cross-claim, or counterclaim can demonstrate at the pleading stage that "the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification or reversal of existing law." N.Y. C.P.L.R. § 3211(g)(1). On the other hand, under Federal Rule of Civil Procedure 12(b)(6), a plaintiff, cross-claimant, or counterclaimant need only allege at the pleadings stage "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Therefore, New York's anti-SLAPP statute imposes a higher burden on the plaintiff, cross-claimant, or counterclaimant responding to a motion to dismiss than is imposed by the Federal Rules of Civil Procedure. Accord Ginx, Inc. v. Soho All., 720 F. Supp. 2d 342, 366 (S.D.N.Y. 2010) ("New York's legislature may have adopted the Anti-SLAPP law to elevate a plaintiff's burden at the pleading stage above 'plausibility' ... to 'substantial basis,' but the United States Congress has thus far declined to follow suit.").

When a Federal Rule of Civil Procedure and a state law address the same issue, the Federal Rule governs in federal court, unless the rule at issue violates the Rules Enabling Act.

17

See <u>Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.</u>,
559 U.S. 393, 398-99 (2010); <u>Hanna v. Plumer</u>, 380 U.S. 460, 463-
64 (1965). Here, the "substantial basis" standard in New York's
anti-SLAPP law conflicts with Federal Rule of Civil Procedure
12. Because Rule 12 complies with the Rules Enabling Act, the
"substantial basis" standard in the New York anti-SLAPP law is
inapplicable in federal court. Accordingly, the standard that
applies here is Rule 12(b)(6). <u>See</u>, <u>e.g.</u>, <u>Nat'l Acad. of
Television Arts & Scis.</u>, 551 F. Supp. 3d at 431-32; <u>Maron v.
Legal Aid Soc'y</u>, 605 F. Supp. 3d 547, 567 n.11 (S.D.N.Y. 2022);
<u>Carroll v. Trump</u>, 590 F. Supp. 3d 575, 582-85 (S.D.N.Y. 2022);
<u>Kesner v. Buhl</u>, 590 F. Supp. 3d 680, 700-01 (S.D.N.Y. 2022); <u>see
also</u> <u>La Liberte v. Reid</u>, 966 F.3d 79, 87 (2d Cir. 2020) (finding
a conflict between Rule 12 and California's anti-SLAPP law,
which is very similar to New York's).

　　　To the extent that the plaintiff relies the New York anti-
SLAPP pleading standard, that standard does not apply here, and
the appropriate standard is the Rule 12(b)(6) standard.

**V.**

　　　Additionally, the plaintiff relies on evidence and
evidentiary materials that the Court may not consider when
ruling on a motion to dismiss.

　　　The Court's function on a motion to dismiss is "not to
weigh the evidence that might be presented at a trial but merely

to determine whether the complaint itself is legally sufficient." Goldman, 754 F.2d at 1067. In considering a motion to dismiss, a court must limit its consideration to the factual allegations in the complaint, which are accepted as true, and matters of which judicial notice may be taken. See Calcutti v. SBU, Inc., 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (citing Brass v. American Film Techs., 987 F.2d 142, 150 (2d Cir. 1993)). Accordingly, courts generally cannot look beyond the four corners of the pleading in considering a motion to dismiss. See McCarthy, 482 F.3d at 191 (2d Cir. 2007).

A court may otherwise only consider documents attached to the complaint as an exhibit or incorporated in it by reference. See id. (citing Brass, 987 F.2d at 150; Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)). "A document not expressly incorporated by reference in the complaint is nevertheless integral to the complaint [and may be considered] . . . where the complaint relies heavily upon its terms and effect." Chambers, 282 F.3d at 153. "In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason . . . was not attached to the complaint." Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006).

**A.**

The plaintiff asks the Court to resolve issues of fact in deciding the plaintiff's motion to dismiss Illinois Doe 1's counterclaim, which the Court cannot do. In particular, the plaintiff argues that Illinois Doe 1's counterclaim should be dismissed because "Illinois Doe 1 erroneously contends that Watson cannot establish that she acted with actual malice[,]" and "Illinois Doe 1 failed to . . . oppose plaintiff's argument that her social media posts exhibited the 'hallmarks' of actual malice." Pl.'s Reply 6-8, ECF No. 228. However, when "much of [the] evidence is circumstantial, as is often the case when actual malice is at issue, and . . . there is arguably contrary evidence as well," that gives rise to "triable issues of fact." Palin v. New York Times Co., 482 F. Supp. 3d 208, 220 (S.D.N.Y. 2020); see also Goldfarb v. Channel One Russia, 18-cv-8128, 2023 WL 2586142, at *1 (S.D.N.Y. Mar. 21, 2023) ("And because the evidence disclosed in the record raises a genuine issue of fact as to whether Channel One acted with actual malice, the question of actual malice must be resolved at trial."). In this case, the record shows that there are similar issues of fact as to whether Illinois Doe 1 acted with actual malice -- namely whether Illinois Doe 1 knew that the allegations were false or entertained serious subjective doubts as to the truth of those

20

allegations. All of those issues concern issues of fact that the Court cannot resolve on a motion to dismiss.

The plaintiff also relies on evidentiary materials that are outside the scope of Illinois Doe 1's counterclaim and are therefore inappropriate to consider on a motion to dismiss. The plaintiff's counsel's declaration and attached exhibits, see Ayotte Decl., ECF No. 208, are neither incorporated by reference in Illinois Doe 1's counterclaim nor relied upon by the counterclaim so as to be integral. Additionally, Illinois Doe 1 "objects to the authenticity and accuracy of the[] documents[.]" Def.'s Opp'n 8, ECF No. 220. Accordingly, the Court cannot consider those evidentiary materials.

### B.

The plaintiff also asks the Court to resolve issues of fact in deciding the plaintiff's motion to dismiss NY Doe 2's counterclaim. In support of his motion, the plaintiff argues that "all the objective evidence demonstrates that [the plaintiff] did not sexually assault NY Doe 2 [and] an unbiased witness has provided sworn testimony directly contradicting NY Doe 2's account[.]" Pl.'s Mot. to Dismiss 15-18, ECF No. 222. On deciding a motion to dismiss, the Court's function is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman, 754 F.2d at 1067. Just as the Court was

unable to dismiss the defamation claim raised by the plaintiff against NY Doe 2, see Watson, 439 F. Supp. 3d at 165, the Court cannot dismiss NY Doe 2's counterclaim against the plaintiff. Whether the facts are as portrayed by NY Doe 2, or whether the denials of the plaintiff are true, depend on credibility determinations that cannot be made on this motion to dismiss.

The plaintiff also relies on evidentiary materials that are neither referenced by nor integral to NY Doe 2's counterclaim and therefore cannot be considered on a motion to dismiss. Only three of the documents in plaintiff's counsel's declaration and attached exhibits, see Ayotte Decl., ECF No. 223, are mentioned in NY Doe 2's counterclaim. See Def.'s Opp'n 17, ECF No. 237. With respect to the three documents that are mentioned in NY Doe 2's counterclaim, such as the plaintiff's and NY Doe 2's depositions, the counterclaim does not rely heavily upon their terms and effect so as to make them integral. See, e.g., Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016) (finding deposition testimony and an affidavit not integral); Global Network Commc'ns, 458 F.3d at 156–57 (finding witness testimony not integral); Columbia Cas. Co. v. Neighborhood Risk Mgmt. Corp., No. 14-cv-48, 2015 WL 3999192, at *4 (S.D.N.Y. June 29, 2015) (finding transcripts and emails obtained in discovery not integral). As a result, the Court does not consider those evidentiary materials.

## VI.

Finally, the plaintiff asks that the motions to dismiss the Counterclaims be converted into motions for summary judgment under Rule 56. A court may decide in its discretion whether to convert a motion to dismiss into a motion for summary judgment. See Fed. R. Civ. P. 12(d). The Court declines to convert the plaintiff's motions to dismiss the Counterclaims into motions for summary judgment. If the plaintiff chooses to bring a motion for summary judgment, the plaintiff should seek the appropriate pre-motion conference before bringing such a motion and would then be required to comply with the requirements for Rule 56 motions, including filing a Rule 56.1 Statement.

### CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the plaintiff's motions to dismiss the Counterclaimants' Counterclaims are **denied**. The Clerk is directed to close ECF Nos. 206 through 214 and 221 through 223.

**SO ORDERED.**

Dated:     **New York, New York**
           **October 6, 2023**

_____
           **John G. Koeltl**
     **United States District Judge**