1155 AVENUE OF THE AMERICAS, NEW YORK, NY 10036-2711                                     JENNER&BLOCK LLP

October 18, 2024

Laura MacDonald
Tel +1 212 891 1696
LMacDonald@jenner.com

**VIA ECF**

The Honorable Dale E. Ho
United States District Judge
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *Watson v. NY Doe 1 et al.*, No. 19 Civ. 533 (DEH) (VF)

Dear Judge Ho,

    Plaintiff and Counterclaim Defendant Ralph Watson ("Watson") and Defendants and Counterclaimants NY Doe 2 and Illinois Doe 1 ("Defendants") (collectively, the "Parties") recently completed summary judgment briefing, provisionally filed under seal. Pursuant to this Court's June 24, 2024 Order, Dkt. 270, the Parties respectfully request to maintain narrowly tailored portions of the Parties' summary judgment filings under seal, as specified herein.

    The Parties have met and conferred and are in broad agreement about the material to be redacted from their own and each other's public filings and jointly move to maintain this agreed material under seal. With respect to three categories of material over which there remain disagreements between NY Doe 2 and Watson, NY Doe 2 and Watson move separately, and their differing positions on those three categories are set forth herein.

    Together with this letter, the Parties are filing under seal via ECF unredacted copies of their summary judgment filings with the proposed redactions highlighted. *See* Order, Dkt. 319. Jointly proposed redactions are highlighted in blue; NY Doe 2's proposed redactions that Watson opposes are highlighted in red; and Watson's proposed redactions that NY Doe 2 opposes are highlighted in green.[1]

    While "a presumption of access attaches to documents filed in connection with a summary judgment motion in a civil case," district courts must "balance competing considerations," including but not limited to "the privacy interests of those resisting disclosure." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120, 122 (2d Cir. 2006) (internal citations omitted). "Documents may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 122

---

[1] Some exhibits have preexisting yellow highlighting, which does not reflect any parties' proposed redactions. Some exhibits were filed with preexisting redactions.

October 18, 2024
Page 2

hanks for (alteration and internal citation omitted). The Parties therefore propose the following narrowly tailored redactions to serve the privacy interests at stake.

I. **Joint Requests for Sealing**

A. **Identifying Information of NY Doe 2, Illinois Doe 1, and Anonymous Nonparty Witness 1**

The Parties seek to redact their summary judgment papers in order to maintain NY Doe 2's, Illinois Doe 1's, and Anonymous Nonparty Witness 1's anonymity. The Court has already found good cause to allow these individuals to proceed pseudonymously. *See* Dkts. 93, 265.[2] Protecting these individuals' anonymity is warranted given the "highly sensitive and . . . personal nature" of the allegations in this case. *Sealed Pl. v. Sealed Def.*, 537 F.3d 185, 190 (2d Cir. 2008) (citation omitted) (listing non-exhaustive factors for courts to take into account when allowing parties to proceed under a pseudonym). Specifically, this litigation concerns allegations that Watson sexually assaulted NY Doe 2. Courts routinely grant anonymity to parties in cases such as this "to protect against disclosure of . . . matters of the utmost intimacy, including sexual assault." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 196 (E.D.N.Y. 2006) (collecting cases).

Accordingly, the Parties jointly move to maintain under seal:

- NY Doe 2's, Illinois Doe 1's, or Anonymous Nonparty Witness 1's names, including partial names, nicknames, or initials;

- NY Doe 2's, Illinois Doe 1's, or Anonymous Nonparty Witness 1's contact information, including social media handles;

- Photos of NY Doe 2, Illinois Doe 1, or Anonymous Nonparty Witness 1;

- References to NY Doe 2's, Illinois Doe 1's, or Anonymous Nonparty Witness 1's current or former employers (aside from Crispin Porter + Bogusky ("CP+B"), NY Doe 2's and Watson's employer during the events at issue in this litigation); and

---

[2] The first protective order entered in this case, which is still in effect, provides that the Parties "shall NOT" disclose the "Identity and Contact Information" of any "Covered Defendant," which includes NY Doe 2 and Illinois Doe 1. Dkt. 93 ¶ 1. Identity and Contact Information is defined to mean "the name, home or work address(es) and telephone number(s), date of birth, social security number, email address(es), current employer(s), personal social media account name(s), and/or any such information of their family members or any individual who would make the Covered Defendant(s) identifiable." *Id.*

October 18, 2024
Page 3

- References to other individuals (or their contact information) who, by affiliation, process of elimination, or otherwise, could allow NY Doe 2, Illinois Doe 1, or Anonymous Nonparty Witness 1 to be identified.[3]

The Parties have proposed narrowly tailored redactions to limited categories of identifying information as required by the operative protective orders, Dkts. 93, 265, while making the substance of the Parties' claims and defenses public. Accordingly, the Parties respectfully request that the Court approve their proposed redactions to preserve NY Doe 2's, Illinois Doe 1's, and Anonymous Nonparty Witness 1's anonymity.

### B. Identities of Other Alleged Victims of Sexual Harassment, Discrimination, or Assault

Under the second protective order in this matter, the Parties may designate as confidential, among other things: (1) "any information of a personal or intimate nature regarding any individual"; (2) "any information about reports or investigations of sexual harassment or sexual violence, counseling, mental health, or medical treatment, including the name of the alleged perpetrator and/or alleged victim, and any information that could reveal the identity of the alleged perpetrator and/or alleged victim"; and (3) "the statements of any alleged victim of sexual misconduct, harassment, or assault." Dkt. 131 ¶ 2(a), (b), (d). Consistent with that protective order, the Parties jointly move to maintain under seal the identities of four individuals alleged to be victims of sexual harassment, discrimination, or assault.[4] These individuals are not parties to the litigation, were not deposed in the course of this litigation, and may not even be aware of the litigation. The Second Circuit has "reiterat[ed]" that "the privacy interests of innocent third parties should weigh heavily in a court's balancing equation." *Mirlis v. Greer*, 952 F.3d 51, 61 (2d Cir. 2020) (alteration omitted). Although the alleged sexual harassment, discrimination, or assault of third parties has some relation to the Parties' claims and defenses—and the Parties do not propose to redact the substance of the allegations—the "identity" of the four affected individuals is "not relevant to any issue [the Court] need[s] to decide." *Trump v. Deutsche Bank AG*, 940 F.3d 146, 151–52 (2d Cir. 2019) (denying motion to unseal). Therefore, the four other purported victims of sexual harassment, discrimination, or assault have an overriding privacy interest, and redaction of their names is necessary to protect that interest.

### C. Aspects of the Parties' Personal and Family Medical Histories

Finally, the Parties jointly move to maintain certain details of the Parties' personal and family medical histories under seal. "In determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally

---

[3] If requested, the Parties are prepared to provide, under seal, a list of these individuals and an explanation of why unsealing their identities could allow NY Doe 2, Illinois Doe 1, or Anonymous Nonparty Witness 1 to be identified.

[4] If requested, the Parties are prepared to provide the Court with the identities of these four individuals under seal.

considered private rather than public," such as "family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters." *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995). The summary judgment briefing contains fleeting references to such material, such as childhood trauma, the Parties' medical histories, and the medical histories of the Parties' family members uninvolved in this litigation. The Parties respectfully request that the Court approve a small number of proposed redactions of this private information (consistent with the second protective order, Dkt. 131 ¶ 2(a), which allows the Parties to designate as confidential "information of a personal or intimate nature regarding any individual"), which is irrelevant to the issues the Court needs to decide. *See Trump*, 940 F.3d at 151–52.

The Parties generally agree on the medical history material to be redacted, but Watson objects to certain proposed redactions concerning NY Doe 2's medical history, as addressed below in Section II.D.

## II.    Disputed Requests for Sealing

### A. NY Doe 2's Medical History

**NY Doe 2's Position:** As noted above, NY Doe 2 moves to maintain under seal information related to NY Doe 2's medical history in addition to the information Watson has agreed to maintain under seal. Under the second protective order in this case, the Parties may designate as confidential information regarding, among other things, "counseling, mental health, or medical treatment," as well as "medical records subject to the Health Insurance Portability and Accountability Act of 1996 ('HIPAA') or similar health privacy laws" and "psychological and/or psychiatric records or evaluations." Dkt. 131 ¶ 2(b), (e), (f). NY Doe 2's "right to privacy with respect to her personal medical information outweighs the public's qualified right of access." *Rizk v. Mehirdel*, No. 14-CV-06434 (HG), 2022 WL 2906773, at *1 (E.D.N.Y. July 22, 2022) (citation omitted). While Watson has agreed to some limited redactions of this information, those redactions are insufficient to maintain the privacy of NY Doe 2's personal medical history because they would reveal aspects of NY Doe 2's medical treatments and medical conditions. This information has no bearing on the issues the Court needs to decide, and, indeed, Watson's briefing does not mention it.

Watson's decision to nitpick NY Doe 2's proposed medical-history redactions, creating another dispute for the Court to resolve, is particularly egregious because he raised his objections nearly a week after the parties had already met and conferred on those proposed redactions and had agreed to jointly request redactions of all Parties' medical histories, including Watson's.[5] Moreover, at the same time Watson challenges NY Doe 2's redactions of her medical history, he seeks to maintain extensive redactions of his own medical history. There is no basis for such

---

[5] Contrary to Watson's suggestion below, NY Doe 2 sent Watson's counsel highlighted documents with proposed redactions five days before the Parties' meet-and-confer, for the very purpose of allowing the Parties to address those specific proposed redactions on their call.

October 18, 2024
Page 5

disparate treatment, which would only serve Watson's years-long litigation of strategy of attempting to harass and embarrass NY Doe 2.

**Watson's Position:** Watson disagrees with NY Doe 2's position that he is "nitpicking" on the redactions related to NY Doe 2's medical history that are directly relevant to the issues being decided by the Court. During meet and confer, the Parties only generally discussed the issues and did not discuss the specific proposed redactions by NY Doe 2, which Watson contends are over-redacted, especially given the importance and relevance of the proposed redacted material to any eventual rulings by the Court. Watson contends that according to the general presumption that the public is entitled to access of the information, the redactions should be as narrow as possible. Especially given the fact that NY Doe 2 is anonymous, Watson believes no sensitive information is at risk of being disclosed with his proposed redactions.

### B. NY Doe 2's Sexual History

**NY Doe 2's Position:** NY Doe 2 moves to maintain under seal details of NY Doe 2's sexual history with individuals other than Watson, because Federal Rule of Evidence 412 prohibits the unsealing of this information without an *in camera* hearing. Rule 412 provides that, in a case "involving alleged sexual misconduct" such as this one, evidence of a victim's "other sexual behavior" or "sexual predisposition" is generally inadmissible. Fed. R. Evid. 412(a). In a civil case, such evidence may be admitted only "if its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party, Fed. R. Evid. 412(b)(2), a finding a court may make only in response to a standalone motion by the party seeking to offer the evidence at issue, Fed. R. Evid. 412(c)(1)(A), and only after an *in camera* hearing at which the victim has an opportunity to be heard, Fed. R. Evid. 412(c)(2). Critically, "***unless the court orders otherwise, the motion, related materials, and the record of the hearing must be and remain sealed***." *Id.* (emphasis added).

Rule 412 thus requires Watson to overcome demanding procedural hurdles before evidence of NY Doe 2's sexual history can be made public. Moreover, "the requirements of Rule 412 must be applied to summary judgment proceedings." *Dunegan v. City of Council Grove, KS*, 189 F.R.D. 649, 652 (D. Kan. 1999). As Watson has not attempted to comply with Rule 412, all of this information must be redacted from the Parties' public summary judgment filings. While Watson has agreed to some limited redactions of this material, they are insufficient, because the piecemeal portions Watson seeks to make public would allow the public to infer (or in some cases, cause the public to misinterpret) information about NY Doe 2's sexual behavior or sexual predisposition. *See, e.g.*, Watson's Opp. Br. at 8 & 8 n.2.

In addition, sealing this information is justified under *Lugosch*, 435 F.3d at 120. A person's sexual history is one of the most traditionally private matters there is, *cf. Amodeo*, 71 F.3d at 1051, and additionally implicates "the privacy interests of innocent third parties," *Mirlis*, 952 F.3d at 61. Moreover, NY Doe 2's sexual history with other people has no bearing on or relevance to the central question at summary judgment, namely, whether NY Doe 2 had actual malice when she spoke about Watson.

**Watson's Position:** Again, Watson agrees that the names and acts themselves should remain redacted. However, he contends that NY Doe 2 has over-redacted the record on areas that are not sensitive and are highly relevant to Watson's right to establish that NY Doe 2 admitted lying to her employer about similar acts with others that she is claiming Watson committed against her, and that her definition of consent arbitrarily differed in connection with two substantially similar situations during the same time frame. The probative value of this evidence outweighs any unfair prejudice to NY Doe 2, especially given that her identity is, and will remain, unknown to the public.

### C. Contents of Watson's Emails

**Watson's Position:** Watson's third-party emails are entirely irrelevant to the case at hand because none of the emails at issue relate in any way to NY Doe 2 and are merely an improper and prejudicial attempt to smear Watson's character. Further, Watson has provided objective evidence that his employer did not rely on any of those emails in making the decision to terminate him "for Cause." See ECF 301 (Watson's objections to NY Doe 2's evidence), pp. 12-14; ECF 315, pp. 33-36; ECF 316, p. 32 (Watson's employer's counsel stated on April 6, 2020: "Moreover, we do not anticipate relying on emails from [Watson's] inbox . . . [and] we have not relied on any emails to or from Watson in support of our case.").

**NY Doe 2's Position:** Watson's emails to coworkers should be unsealed because they are directly relevant to NY Doe 2's request for summary judgment dismissing Watson's tortious interference with contract claim. An "essential element" of that claim is that the relevant breach of contract (here, CP+B's termination of Watson's employment) "would not have occurred but for the activities of [NY Doe 2]." *Cantor Fitzgerald Assocs. L.P. v. Tradition N. Am., Inc.*, 749 N.Y.S.2d 249, 249 (1st Dep't 2002). It is undisputed, however, that CP+B told Watson's attorney that its decision to terminate Watson was based on its "in-depth investigation of allegations of misconduct by several current and former employees," as well as "*identification of emails that were sent by Mr. Watson*." NY Doe 2's 56.1 Statement, Dkt. 276 ¶ 71 (emphasis added). The emails Watson seeks to redact, showing that Watson routinely used vulgar and highly inappropriate language with coworkers on company email, are directly relevant to whether NY Doe 2's allegedly defamatory statement to CP+B was the but-for cause of Watson's termination. Watson has identified no countervailing circumstances to overcome the presumption of access to these documents. Therefore, the contents of Watson's emails should be unsealed.

*/s/* Laura P. MacDonald
Laura P. MacDonald
Jenner & Block LLP
*Counsel for Defendant and Counterclaimant NY Doe 2*

*/s/* David J. Grech
David J. Grech
Gordon Rees Scully Mansukhani, LLP
*Counsel for Defendant and Counterclaimant Illinois Doe 1*

October 18, 2024
Page 7


*/s/* Michael W. Ayotte
Michael W. Ayotte
Law Offices of Michael W. Ayotte
*Counsel for Plaintiff and Counterclaim Defendant Ralph M. Watson*