UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RALPH M. WATSON, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>NY DOE 2, an individual; NY DOE 3, an individual; NY DOE 4, an individual; ILLINOIS DOE 1, an individual; DOE COMPANY, an unknown business entity; DOE 1, an individual; and DOES 2 through 100, whose true names and capacities are unknown,<br><br>    Defendants. | Case No. 1:19-cv-533 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT NY DOE 2's
MOTION FOR ATTORNEY'S FEES AND COSTS**

Kara V. Brandeisky
JENNER & BLOCK LLP
1099 New York Avenue
Washington, DC 20001
(202) 639-6000

Laura P. MacDonald
Rémi J.D. Jaffré
Anna M. Windemuth
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600
LMacDonald@jenner.com

*Counsel for Defendant NY Doe 2*

**TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................ii

TABLE OF AUTHORITIES.............................................................................................i

INTRODUCTION............................................................................................................1

BACKGROUND..............................................................................................................2

LEGAL STANDARD......................................................................................................5

ARGUMENT...................................................................................................................6

        I.      The Proposed Hourly Rates Are Reasonable ......................................................6

        II.     The Number of Hours Expended Is Reasonable..................................................9

        III.    The Requested Costs Are Reasonable ...............................................................12

CONCLUSION..............................................................................................................12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*600 W. 115th St. Corp. v. Von Gutfeld*,
  603 N.E.2d 930 (N.Y. 1992) ............................................................................................... 1

*Adelson v. Harris*,
  No. 12 CIV. 6052 (JPO), 2018 WL 1585676, at *3 (S.D.N.Y. Mar. 29, 2018) ................... 10

*An v. Despins*,
  No. 22-CV-10062, 2024 WL 1157281 (S.D.N.Y. Mar. 18, 2024) ................................... 7, 8

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany
  Cnty. Bd. of Elections*,
  522 F.3d 182 (2d Cir. 2008) ............................................................................................... 7

*Bobulinski v. Tarlov*,
  No. 24-CV-2349 (JPO), 2025 WL 872178 (S.D.N.Y. Mar. 20, 2025) ............................ 8, 10

*Castricone v. Vaught*,
  86 Misc. 3d 1266(A), 238 N.Y.S.3d 922 (N.Y. Sup. Ct. 2025) ........................................ 10

*Dowdell v. Imhof*,
  676 F. App'x 46 (2d Cir. 2017) .......................................................................................... 5

*Exp. Dev. Canada v. E. Coast Power & Gas, LLC*,
  754 F Supp. 3d 511 (S.D.N.Y. 2024) ................................................................................. 9

*Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*,
  2023 WL 112429 (S.D.N.Y. Jan. 5, 2023) ........................................................................ 11

*Grant v. Martinez*,
  973 F.2d 96 (2d Cir. 1992) ................................................................................................. 9

*Johnson v. Ga. Highway Exp.*,
  Inc., 488 F.2d 714 (5th Cir. 1974) ...................................................................................... 7

*Kassim v. City of Schenectady*,
  415 F.3d 246 (2d Cir. 2005) ............................................................................................. 11

*Kindle v. Dejana*,
  308 F. Supp. 3d 698 (E.D.N.Y. 2018) ................................................................................ 5

*Lawtone-Bowles v. City of New York*,
  No. 16CV4240AJNOTW, 2021 WL 1326865 (S.D.N.Y. Apr. 8, 2021) .......................... 10

*Lilly v. City of New York*,
    934 F.3d 222 (2d Cir. 2019) ............................................................................... 6, 7, 8

*Millea v. Metro-North R. Co.*,
    658 F.3d 154 (2d Cir. 2011) ......................................................................................... 5

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*,
    711 F.2d 1136 (2d Cir. 1983) ...................................................................................... 9

*Perdue v. Kenny A. ex rel. Winn*,
    559 U.S. 542 (2010) ..................................................................................................... 5

*Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*,
    818 F.2d 278 (2d Cir. 1987) ......................................................................................... 5

*Reiter v. MTA*,
    457 F.3d 224 (2d Cir. 2006) ......................................................................................... 7

*Wells Fargo Tr. Co., N.A. v. Fast Colom. S.A.S.*,
    No. 23-CV-603, 2023 WL 8591953 (S.D.N.Y. Oct. 16, 2023) ................................... 7

*White v. Apple Bank for Sav.*,
    658 F. Supp. 3d 151 (S.D.N.Y. 2023) .......................................................................... 8

*Zimmerman v. Portfolio Recovery Assocs., LLC*,
    No. 09 CIV. 4602 PGG, 2013 WL 6508813 (S.D.N.Y. Dec. 12, 2013) .................... 12

**Statutes**

N.Y. Civ. Rights Law § 70-a(1) ..................................................................................... 1, 5

**Other Authorities**

Federal Rule of Civil Procedure 11 ............................................................................. 4, 11

Federal Rule of Civil Procedure 35 .................................................................................. 3

Press Release, New York State Legislature, Senate and Assembly Majorities
    Advance Anti-SLAPP Legislation to Protect Free Speech (July 22, 2020),
    https://nyassembly.gov/Press/files/20200722a.php ................................................... 11

**INTRODUCTION**

In 2018, at the height of the #MeToo movement, Defendant NY Doe 2 accused her former supervisor Plaintiff Ralph Watson of raping her. In response, Watson sued her. Watson has spent the years since dragging NY Doe 2 through the legal system, subjecting her to invasive discovery, badgering questioning, and threats to reveal her identity. Ultimately, this Court granted summary judgment in NY Doe 2's favor, finding that Watson "has abused the judicial process and waged a protracted legal battle over baseless claims." Dkt. 348 ("SJ Order") at 35.

In November 2020, while this litigation was ongoing, New York amended its anti-SLAPP statute to stop plaintiffs such as Watson from weaponizing the legal system in this very manner. So-called "Strategic Lawsuits Against Public Participation" ("SLAPPs") are lawsuits that have "little legal merit but are filed nonetheless to burden opponents with legal defense costs and the threat of liability and to discourage those who might wish to speak out in the future." *600 W. 115th St. Corp. v. Von Gutfeld*, 603 N.E.2d 930, 933 n.1 (N.Y. 1992). To deter plaintiffs from bringing litigation to harass and silence their critics, New York's anti-SLAPP statute allows a defendant in a SLAPP suit to recover attorney's fees and costs "from any person who commenced or continued such action." N.Y. Civ. Rights Law § 70-a(1). The November 2020 amendments broadened the scope of the statute to include all lawsuits, like this one, that target speech on an issue of public interest. In granting NY Doe 2's summary judgment motion, the Court found that NY Doe 2 is entitled to an award of attorney's fees and costs under the amended statute and directed NY Doe 2 to file a motion for such an award. SJ Order at 34–35, 38.

NY Doe 2 now moves to recover $1,417,600 in attorney's fees and $71,498 in costs. Given almost seven years of hard-fought litigation, NY Doe 2's request is eminently reasonable, and reflects a significant discount from Jenner & Block LLP's ("Jenner & Block") standard rates, the

1

hours actually billed, and the fees actually incurred in NY Doe 2's case. And while Jenner & Block represented NY Doe 2 on a *pro bono* basis—meaning it did not charge NY Doe 2, but reserved the right to seek fees or expenses under any applicable rule or statute—a fee award that approximates the true cost of this litigation serves the anti-SLAPP statute's purpose, which is to discourage retaliatory lawsuits brought to silence free speech. Accordingly, NY Doe 2 respectfully requests that the Court award $1,417,600 in attorney's fees and $71,498 in costs.

## BACKGROUND

On January 17, 2019, Watson sued NY Doe 2 and others for damages of least $10 million based on a long list of claims targeting the defendants' alleged statements about sexual harassment and rape: defamation, intentional infliction of emotional distress, civil conspiracy, tortious interference with contract, tortious interference with prospective economic advantage, and negligent interference with prospective economic advantage. Dkt. 1.

Although Watson did not identify NY Doe 2's real name in his complaint, shortly after filing suit, his counsel repeatedly threatened to make public NY Doe 2's identity if she refused to submit to his demands. Dkt. 31, at 1; Declaration of Laura MacDonald ("MacDonald Decl.") ¶ 4. Given the lawsuit's sensitive subject matter and counsel's threats, NY Doe 2 moved the Court for a protective order maintaining her identity (and the identities of other known defendants) confidential, *id.* at 2–3, which the Court entered following further time-consuming obstruction by Watson's counsel, *see* Dkt. 92, at 1 (describing Watson's counsel's conduct); Dkt. 93 (protective order); MacDonald Decl. ¶ 5. The sensitive subject matter at issue also required careful redactions and motions to seal throughout the litigation. *E.g.*, Dkts. 205, 270, 320; MacDonald Decl. ¶ 17.

After Watson amended his complaint on July 19, 2019, Dkt. 47, NY Doe 2 moved to dismiss all of Watson's claims against her, *see* Dkts. 57–59. Following oral argument, the Court

granted NY Doe 2's motion in part, dismissing all claims except those for defamation and tortious interference with contract, Order, Dkt. 99. NY Doe 2 answered the operative complaint on February 25, 2020. Dkt. 102.

Discovery was protracted and contentious. MacDonald Decl. ¶ 7. The parties attempted to negotiate another protective order to govern the exchange of discovery materials. *Id.* Those negotiations were complicated by Watson's request that the protective order accommodate his desire to use materials from this case in other proceedings, Dkt. 117, and again the parties required Court intervention, Dkts. 120–23, 131; MacDonald Decl. ¶ 7. Watson and NY Doe 2 each served over 30 document requests, negotiated purported deficiencies, made multiple document productions, served at least one expert report, and served third-party subpoenas. MacDonald Decl. ¶¶ 10–12. To minimize costs, Jenner & Block engaged a discovery vendor that offered a significant discount for pro bono matters. *Id.* ¶ 11. Four fact witnesses and two experts were deposed. *Id.* ¶ 13. The parties briefed numerous discovery disputes, *e.g.* Dkts. 154, 157, 170, 188, including NY Doe 2's successful motion for a mental exam under Federal Rule of Civil Procedure 35 to explore the basis for Watson's request for emotional distress damages, Dkts. 149–51, 177. As a result of these complexities and of the Covid-19 pandemic, the discovery schedule was extended multiple times. Dkts. 116, 132 145, 148, 153, 190; MacDonald Decl. ¶ 14.

Throughout the litigation, Watson repeatedly violated the Court's protective orders, requiring NY Doe 2 to intervene each time to prevent further dissemination of her confidential information. MacDonald Decl. ¶ 8. In February 2021, Watson violated the second protective order by discussing NY Doe 2's confidential discovery material in an arbitration brief. Dkt. 134. Watson violated the order a second time in March 2021 by filing one of NY Doe 2's confidential documents in opposition to a motion to quash in another litigation. Dkt. 141. In October 2021,

3

Watson once again filed confidential documents on a public docket—this time in support of his motion to dismiss another defendant's counterclaim. Dkt. 211; *see also* MacDonald Decl. ¶ 8.

On June 24, 2021, NY Doe 2 moved for leave to assert a counterclaim pursuant to New York's newly-amended anti-SLAPP law. Dkt. 167. After the Court granted that request, NY Doe 2 filed an amended answer and counterclaim on October 8, 2021. Dkt. 204. In response, Watson not only moved to dismiss NY Doe 2's counterclaim, Dkts. 221–23, but also threatened NY Doe 2's counsel with Rule 11 sanctions for filing the motion, Dkt. 215. NY Doe 2 successfully opposed the motion to dismiss. Dkts. 231–32, 249. At that time, Watson failed to answer NY Doe 2's counterclaim. *See* Dkt. 286.

After discovery was substantially complete, the parties requested a referral to mediation in the hopes of avoiding costly summary judgment briefing. Dkt. 253. Mediation took place on January 17, 2024, but was unsuccessful. Dkt 259; MacDonald Decl. ¶ 16.

Following mediation, Watson once again threatened to seek Rule 11 sanctions against NY Doe 2, this time because a motion for summary judgment would supposedly be frivolous. MacDonald Decl. ¶ 15. The parties briefed NY Doe 2's motion for summary judgment dismissing Watson's claims against her and in favor of her counterclaim against Watson, including the effect of Watson's failure to answer the counterclaim. Dkts. 274–86, 288. Summary judgment was particularly labor-intensive for NY Doe 2 because Watson "submitted a seventy-seven-page counterstatement of facts" in response to NY Doe 2's fifteen-page statement of material facts, as well as "thirty-eight pages of evidentiary objections," requiring additional analysis and responses from NY Doe 2. SJ Order at 2, 4. Watson also submitted "plainly inadmissible" purported evidence of NY Doe 2's sexual history, *id.* at 6 n.4, which again took time to address. MacDonald

4

Decl. ¶¶ 11, 17. The parties' summary judgment filings also required extensive redactions and related conferrals. Dkts. 320–47.

On September 17, 2025, the Court granted NY Doe 2's motion for summary judgment in full, dismissing all claims against NY Doe 2 and finding Watson liable for NY Doe 2's attorney's fees and costs pursuant to her anti-SLAPP counterclaim. *See generally* SJ Order.

## LEGAL STANDARD

Successful SLAPP counterclaimants are entitled to "costs and attorney's fees." N.Y. Civ. Rights Law § 70-a(1)); *see also* SJ Order at 34.

To determine whether a claim for attorney's fees is reasonable, courts use the "lodestar" approach. The lodestar is the product of a reasonable hourly rate and a reasonable number of hours required by the case; this model establishes a "presumptively reasonable fee" from which courts should deviate only in "extraordinary circumstances." *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011). The lodestar method "is intended to 'produce an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case.'" *Dowdell v. Imhof*, 676 F. App'x 46, 48 (2d Cir. 2017) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010)).

Further, courts "typically award 'those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients.'" *Kindle v. Dejana*, 308 F. Supp. 3d 698, 705 (E.D.N.Y. 2018) (quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)).

5

# ARGUMENT

The Court has already determined that NY Doe 2 is entitled to an award of attorney's fees and costs resulting from Watson's "protracted legal battle over baseless claims"—the pursuit of which constituted an "abuse[]" of "the judicial process." SJ Order at 35. NY Doe 2 now requests $1,417,600 in fees for 2,004 hours of legal work, and $71,498 in costs. MacDonald Decl. ¶ 30. NY Doe 2's requested fees and costs are reasonable and should be granted.

## I. The Proposed Hourly Rates Are Reasonable

NY Doe 2 is seeking reasonable fees for the work of seven attorneys and one paralegal at Jenner & Block. Specifically, NY Doe 2 is seeking between $800 and $1,000 per hour for work performed by partners, between $400 and $600 per hour for work performed by associate attorneys, and $100 per hour for work performed by the paralegal, as follows:

| Name | Position | Requested Hourly Rate |
|---|---|---|
| Laura P. MacDonald | Partner | $1,000 |
| Rémi J.D. Jaffré | Partner (2023–2025) | $800 |
|  | Associate (2020–2022) | $600 |
| Susanna D. Evarts | Associate | $600 |
| Ethan C. Wong | Associate | $600 |
| Kara V. Brandeisky | Associate | $500 |
| Emily S. Mannheimer | Associate | $500 |
| Anna M. Windemuth | Associate | $400 |
| Tyler N. Stilley | Paralegal | $100 |

Reasonable hourly rates are determined based on "all case-specific variables." *Lilly v. City of New York*, 934 F.3d 222, 230 (2d Cir. 2019) (internal citation and quotation marks omitted).

Courts consider the "*Johnson* factors," including but not limited to "the time and labor required," "the novelty and difficulty of the questions," "the level of skill required to perform the legal service properly," "the attorney's customary hourly rate," "the results obtained," "the experience, reputation, and ability of the attorneys," "the nature and length of the professional relationship with the client," and "awards in similar cases." *Id.* at 228 (citing *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974)). A presumptively reasonable rate is the "prevailing hourly rate in the district where [the court] sits." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182, 183 (2d Cir. 2008). "The rates used by the court should be current rather than historic hourly rates." *Reiter v. MTA*, 457 F.3d 224, 232 (2d Cir. 2006) (citations omitted).

The rates requested by NY Doe 2 are presumptively reasonable because they are consistent with—or below—rates approved by courts within this District for law firms of similar caliber. Founded in 1914, Jenner & Block is an internationally recognized law firm with more than 500 lawyers across the United States and United Kingdom. *See* MacDonald Decl. ¶ 18. Jenner & Block's precedent-setting legal work has shaped the direction of law, business, and policy for decades, including significant Supreme Court battles. *See id.* ¶ 18. Alongside its contributions to today's greatest legal controversies, Jenner & Block has prioritized a robust and varied tradition of *pro bono* that has consistently received national and international recognition. *See id.* ¶ 19. The requested rates are on par with those courts in this District have recently awarded to comparably esteemed law firms. *See, e.g.*, *An v. Despins*, No. 22-CV-10062, 2024 WL 1157281, at *2 (S.D.N.Y. Mar. 18, 2024) (approving up to $1,760 per hour for partners and $895 per hour for associates at Davis Polk & Wardwell LLP in light of "rates charged by similarly situated law firms of equivalent skill, status, and reputation"); *Wells Fargo Tr. Co., N.A. v. Fast Colom. S.A.S.*, No.

7

23-CV-603, 2023 WL 8591953, at *6–9 (S.D.N.Y. Oct. 16, 2023), *report & recommendation adopted*, No. 23-CIV-603, 2023 WL 8433128 (S.D.N.Y. Dec. 5, 2023) (approving $1,400 per hour for lead partner, over $1,000 per hour for more junior partners, over $900 per hour for associates, and over $400 per hour for a legal assistant at White & Case LLP in light of rates charged by "large firms working on complex matters for willing clients"). They are also on par with rates awarded to smaller firms in similar cases. *See Bobulinski v. Tarlov*, No. 24-CV-2349 (JPO), 2025 WL 872178, at *2 (S.D.N.Y. Mar. 20, 2025) (approving $1,338.75 per hour for lead partner, over $600 per hour for associates, and close to $300 per hour for paralegal at litigation boutique Torridon Law PLLC in New York anti-SLAPP case).

The rates requested by NY Doe 2 are also reasonable given "the experience, reputation, and ability of the attorneys." *Lilly*, 934 F.3d at 228 (citation omitted). As detailed in the declaration accompanying this Motion, the attorneys for whose work NY Doe 2 seeks fees graduated from top law schools and have substantial experience litigating complex, precedent-setting disputes. *See* MacDonald Decl. ¶¶ 21–27. Multiple attorneys on this matter completed clerkships in this District and the Second Circuit. *See id.* ¶¶ 22, 25, 27. Several specialize in matters of First Amendment law. *See id.* ¶¶ 22, 25. The requested rates are reasonable given counsel's experience and credentials. *See, e.g.*, *Bobulinski*, 2025 WL 872178, at *2 (rates charged by defense counsel were reasonable based in part on impressive resumes, clerkship experience, and lengthy careers); *White v. Apple Bank for Sav.*, 658 F. Supp. 3d 151, 157 (S.D.N.Y. 2023) (rates reasonable because attorneys were "experienced litigators with impressive credentials").

Indeed, the rates requested reflect a steep discount from the standard rates Jenner & Block charges paying clients. *See id.* ¶¶ 29, 31, 32; *see also An*, 2024 WL 1157281, at *2 (large law firm

8

rates reasonable because "discounted"); *Exp. Dev. Canada v. E. Coast Power & Gas, LLC*, 754 F Supp. 3d 511, 516 (S.D.N.Y. 2024) (rate was "all the more reasonable" given discounts).

Counsel's credentials, expertise, and steep discounts thus readily justify the requested rates.

## II. The Number of Hours Expended Is Reasonable

NY Doe 2 seeks fees for 2,004 hours of legal work. Hours are reasonable if they reflect the amount of time a reasonable attorney would have spent on the activities in question, at the time the activities were conducted. *See Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). Courts review "contemporaneous records" to determine whether the number of hours expended was reasonable. *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147 (2d Cir. 1983). NY Doe 2 has provided these records as Exhibit A to the MacDonald Declaration.

At the outset, NY Doe 2 does *not* request fees for:

- Any time spent on the case in the nearly two years before New York's anti-SLAPP statute was amended to cover this action on November 10, 2020. This includes all time spent working on NY Doe 2's motion to dismiss (including oral argument), answering Watson's complaint, negotiating both protective orders (and addressing Watson's related threats), and issuing and responding to initial discovery requests;

- Any time spent on the matter by attorneys or staff who billed fewer than 40 hours total to the case;

- Any time spent on the matter by law clerks who had not yet gained admission to a state bar when working on the case;

- Any time spent preparing this Motion;

- Extensive time spent reviewing filings to ensure their compliance with the protective orders and otherwise prevent the disclosure of sensitive information;

- Time spent strategizing about the case during team meetings;

- Time spent researching and strategizing for a potential summary judgment motion prior to and in preparation for the ultimately unsuccessful mediation in January 2024; and

9

- Other time spent on the matter that falls outside the categories noted above, including extensive time spent researching and drafting NY Doe 2's anti-SLAPP counterclaim.

MacDonald Decl. ¶¶ 31, 32. These extensive write-offs further reinforce the reasonableness of NY Doe 2's Motion. *See, e.g., Bobulinski*, 2025 WL 872178, at *2 (noting that counsel voluntarily applied 15% discount when approving fee request); *cf. Castricone v. Vaught*, 86 Misc. 3d 1266(A), 238 N.Y.S.3d 922 (N.Y. Sup. Ct. 2025) (awarding SLAPP defendant 100% of attorney's fees without reducing lodestar).

The number of hours spent on this case is also commensurate with its complexity. Courts routinely find it reasonable to expend considerable hours drafting and responding to discovery demands, managing expert witnesses, and engaging in complex motion practice. *See, e.g., Lawtone-Bowles v. City of New York*, No. 16CV4240AJNOTW, 2021 WL 1326865, at *3 (S.D.N.Y. Apr. 8, 2021). Here, the time spent on this matter reflects that NY Doe 2 filed multiple successful discovery motions, sought expert discovery that played no small part in her victory at summary judgment, attempted mediation to avoid needless costs, and fully briefed summary judgment. *See supra* 2–4.

Additionally, when determining reasonable fees, courts in this District have acknowledged the particular importance and complexity of litigating novel anti-SLAPP issues. For example, in *Adelson v. Harris*, the Court awarded almost $2 million in attorney's fees to counsel who achieved dismissal of a defamation case at the pleading stage pursuant to Nevada's anti-SLAPP law and successfully litigated the appeal, because of "complex and intricate issues" that required "multiple rounds of briefing," including regarding the anti-SLAPP law's "scope." No. 12 CIV. 6052 (JPO), 2018 WL 1585676, at *3 (S.D.N.Y. Mar. 29, 2018). Similarly, in *Bobulinski v. Tarlov*, the Court concluded that it was reasonable for counsel to have spent over 350 hours on a motion to dismiss

an anti-SLAPP case given "complicated and underdeveloped question of the applicability of Section 70-a of New York's anti-SLAPP statute in federal courts." 2025 WL 872178, at *3. Counsel in this matter similarly engaged with complex legal questions regarding the application of New York's anti-SLAPP statute, including in their opposition to Watson's motion to dismiss NY Doe 2's anti-SLAPP counterclaim. *Supra* 4.

Moreover, in evaluating fee awards, the Second Circuit recognizes that "an attorney is in part reacting to forces beyond the attorney's control, particularly the conduct of opposing counsel." *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005). Courts consider the time required to "defend against frivolous motions and to make motions to compel compliance with routine discovery demands." *Fleetwood Servs., LLC v. Ram Cap. Funding, LLC*, 2023 WL 112429, at *8 (S.D.N.Y. Jan. 5, 2023). The number of hours spent on this matter also reflects opposing counsel's efforts to harass and intimidate NY Doe 2 at every turn, including by threatening to reveal her confidential information to extract strategic advantages, threatening to seek Rule 11 sanctions against her counsel, failing to cooperate during discovery, and blatantly violating local rules by filing voluminous additional filings and extraneous information about NY Doe 2's alleged sexual history in support of summary judgment. *See supra* 2–4. Responding to these tactics took significant attorney time.

Finally, an award reflecting the entirety of the reasonable hours expended serves the interests of the anti-SLAPP statute. The legislative sponsors of the November 2020 amendment to the statute explained that SLAPP suits "chill free speech" "by threatening an individual or entity with liability for personal damages, as well as having to hire a lawyer themselves."[1] Accordingly,

---

[1] Press Release, New York State Legislature, Senate and Assembly Majorities Advance Anti-SLAPP Legislation to Protect Free Speech (July 22, 2020), https://nyassembly.gov/Press/files/20200722a.php.

11

one said, "the best remedy" against this weaponization of the legal system is "to require those who bring these lawsuits to pay the legal fees and costs of those who they have wrongfully sued."[2] A fee award that accurately reflects the immense cost of this litigation will act as a deterrent against other would-be plaintiffs who seek to silence speech through SLAPP suits and, for plaintiffs who are not deterred, will encourage able lawyers to represent defendants who might not otherwise be able to afford to defend themselves.

### III. The Requested Costs Are Reasonable

NY Doe 2 requests $71,498 in costs based on Jenner & Block's incursion of court fees, copying costs, messenger costs, deposition expenses, legal research costs, and discovery vendor costs. MacDonald Decl. ¶ 33. Such expenses are detailed in Exhibit B to the MacDonald Declaration and routinely deemed recoverable. *See Zimmerman v. Portfolio Recovery Assocs., LLC*, No. 09 CIV. 4602 PGG, 2013 WL 6508813, at *12–13 (S.D.N.Y. Dec. 12, 2013) (noting that recoverable costs include, among other things, "filing fees, process server expenses, travel expenses, court reporting fees, . . . postage and copying expenses[,] . . . witness, and deposition fees, as well as computerized legal research costs," and collecting cases). Jenner & Block's request is particularly reasonable because it secured a significant discount on discovery vendor expenses (the largest cost category for which NY Doe 2 seeks recovery). MacDonald Decl. ¶ 11.

### CONCLUSION

For the foregoing reasons, NY Doe 2 respectfully request that the Court award NY Doe 2 $1,489,098 in attorney's fees plus costs, and any other such relief as the Court deems just and proper.

---

[2] *Id.*

Dated: New York, New York
October 17, 2025

Respectfully submitted,

By: */s/ Laura P. MacDonald*

Kara V. Brandeisky
JENNER & BLOCK LLP
1099 New York Avenue
Washington, DC 20001
(202) 639-6000

Laura P. MacDonald
Rémi J.D. Jaffré
Anna Windemuth
JENNER & BLOCK LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 891-1600
LMacDonald@jenner.com

*Counsel for Defendant NY Doe 2*

13

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2025, I electronically filed the foregoing with the Clerk of Court, to be served on all parties of record via the CM/ECF system.

                                          */s/ Laura P. MacDonald*

                                           Laura P. MacDonald